UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE 2U, INC., SECURITIES CLASS ACTION | Master File No. 1:19-cv-7390-RA-DCF |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE 2U INVESTOR GROUP'S MOTION FOR APPOINTMENT
## AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................................1

PROCEDURAL HISTORY ..................................................................................................................2

FACTUAL BACKGROUND.................................................................................................................2

ARGUMENT.......................................................................................................................................4

   I. THE COURT SHOULD APPOINT THE 2U INVESTOR GROUP AS LEAD
      PLAINTIFF ............................................................................................................................4

     A.   The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff.......................4

     B.   Movant Satisfies the Lead Plaintiff Provisions of the PSLRA .........................................6

       1.   Movant Filed a Timely Motion ...............................................................................6

       2.   Movant Has the Largest Financial Interest in the Relief Sought by the Class..............7

       3.   Movant Meets Rule 23's Typicality and Adequacy Requirements..............................8

          (i)   Movant's Claims Are Typical of the Claims of the Class .........................................9

          (ii)  Movant Will Fairly and Adequately Protect the Interests of the Class....................10

  II.   MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED ...............................12

CONCLUSION....................................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.,*
  No. 08 MDL 1963 (RWS), 2008 U.S. Dist. LEXIS 106327 (S.D.N.Y. Dec. 29, 2008) .............9

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,*
  252 F.R.D. 188 (S.D.N.Y. 2008) ................................................................................................8

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.,*
  No. 18-CV-3608 (VSB), 2019 U.S. Dist. LEXIS 14860 (S.D.N.Y. Jan. 30, 2019) .....................6

*In re Drexel Burnham Lambert Grp., Inc.,*
  960 F.2d 285 (2d Cir. 1992)........................................................................................................9

*In re eSpeed, Inc. Sec. Litig.,*
  232 F.R.D. 95 (S.D.N.Y. 2005) ..............................................................................................1, 7

*Foley v. Transocean Ltd.,*
  272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................................5, 7

*In re GE Sec. Litig.,*
  No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) .....................10

*Gen. Tel. Co. of the SW v. Falcon,*
  457 U.S. 147 (1982)....................................................................................................................9

*Hom v. Vale, S.A.,*
  No. 1:15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863 (S.D.N.Y. Mar. 7, 2016) ....................2

*Kaplan v. Gelfond,*
  240 F.R.D. 88 (S.D.N.Y. 2007) .................................................................................................7

*In re Milestone Sci. Sec. Litig.,*
  183 F.R.D. 404 (D.N.J. 1998)...................................................................................................11

*In re Orion Sec. Litig.,*
  No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008).......................9

*In re Oxford Health Plans, Inc. Sec. Litig.,*
  182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................................8

ii

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
    275 F.R.D. 187 (S.D.N.Y. 2011) ..............................................................................................10

*Reimer v. Ambac Fin. Grp., Inc.*,
    No. 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) ....................10

*Richman v Goldman Sachs Grp., Inc.*,
    274 F.R.D. 473 (S.D.N.Y. 2011) ................................................................................................9

*Strougo v. Brantley Capital Corp.*,
    243 F.R.D. 100 (S.D.N.Y. 2007) ................................................................................................8

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
    No. 05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006)........................7

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................................................7

**Statutes**

Private Securities Litigation Reform Act,
    15 U.S.C. § 78u-4, *et seq*. ................................................................................................ passim

**Rules**

Fed. R. Civ. P.,
    Rule 23 .......................................................................................................................... passim

Movants Edward Hackman and Herbert Saunders (together, the "2U Investor Group" or "Movant"), on behalf of itself and all similarly situated persons and entities, hereby respectfully submits this Memorandum of Law in support of Movant's Motion for Appointment as Lead Plaintiff and Approval of Selection of Bragar Eagel & Squire, P.C. ("BES") as Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## PRELIMINARY STATEMENT

Presently pending before the Court is a consolidated securities class action lawsuit (the "Action") brought on behalf of a class consisting of all persons and entities, other than defendants, that purchased or otherwise acquired 2U, Inc. ("2U" or the "Company") securities between February 26, 2018 and July 30, 2019, inclusive (the "Class Period"). The Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), as well as U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

The PSLRA, as amended, 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (quotations omitted). Movant has lost $40,032.74 as a result of the alleged fraud during the Class Period.[1] Movant believes that it has the largest financial interest in

---

[1] The PSLRA certifications of the members of the 2U Investor Group identifying their transactions in 2U, as well as a chart identifying their losses, and a joint declaration executed by the movants evidencing their intention to pursue

the outcome of this Action. Moreover, Movant satisfies the requirements of Rule 23 in that its claims are typical of the claims of the Class (defined herein), and in that it will fairly and adequately represent the interests of the Class.

For the reasons summarized herein and as discussed more fully below, Movant's Motion should be approved in its entirety.

## PROCEDURAL HISTORY

Plaintiff Aaron Harper ("Harper") commenced this action against 2U on August 7, 2019 (the "*Harper* Action"). That same day, counsel for Harper published a notice on *Business Wire* announcing a securities class action had been initiated against Defendants (defined herein). The *Harper* Action alleged a class period of February 25, 2019 through July 30, 2019, inclusive.

On August 9, 2019, plaintiff Anne M. Chinn commenced a substantially similar action in this District asserting the same claims against the same defendants, Case No. 1:19-cv-07479 (the "*Chinn* Action"). The *Chinn* Action alleged a class period of February 26, 2018 through July 30, 2019, inclusive.[2]

On August 26, 2019, the parties to the *Harper* Action and the *Chinn* Action filed a Joint Stipulation which, among other things, agreed to consolidation of the actions. ECF No. 9-1. The Court ordered the actions consolidated on August 27, 2019. ECF No. 10.

## FACTUAL BACKGROUND

This is a federal securities class action on behalf of all persons or entities, other than Defendants, that purchased or otherwise acquired 2U securities during the Class Period (the

the action in a cohesive and collaborative manner, are attached to the Declaration of W. Scott Holleman, dated October 4, 2019 ("Holleman Decl."), as Exhibits A, B, and C, respectively.

[2] Movant adopts the longer class period proposed in the *Chinn* Action, February 26, 2018 through July 30, 2019, inclusive, because it is the "larger, most inclusive class period." *Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 U.S. Dist. LEXIS 28863, at *12-13 (S.D.N.Y. Mar. 7, 2016) (collecting cases).

2

"Class"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, against the Company; Chief Executive Officer Christopher J. Paucek ("Paucek"); and, Chief Financial Officer Catherine A. Graham (collectively, "Defendants").

2U, headquartered in Lanham, Maryland, is an educational technology company that partners with nonprofit colleges and universities to offer online degree programs using a cloud-based "software-as-a-service" platform. ¶ 2.[3] 2U operates in two segments. ¶ 18. The "Graduate Program" segment targets students seeking a full graduate degree and its revenues are primarily derived from a contractually specified percentage of the amounts 2U's university clients receive from their students using the 2U program. *Id.* The "Alternative Credential" segment, initially known as the "Short Term" segment, targets working professionals seeking career advancement through skills attainment and its revenues are derived directly from students for the tuition and fees paid for 2U's short courses. ¶ 19.

During the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and financial condition. Specifically, Defendants made false and/or misleading statements and failed to disclose that: (i) 2U's business model was fundamentally flawed because the Company's costs were growing disproportionately as it grew in size and complexity; (ii) the Company could not take advantage of promised economies of scale because its cost to attract each marginal student were actually increasing, not decreasing, as represented; (iii) 2U was facing heightened competitive headwinds as alternative offerings flooded the marketplace and universities developed their own online courses; (iv) 2U's growth rate in

---

[3]  Citations to "¶ __" are to paragraphs in the Complaint for Violations of the Federal Securities Laws (the "Complaint") filed in the *Chinn* Action, ECF No. 1. Unless otherwise defined, capitalized terms shall have the same meaning as set forth in the Complaint. The facts set forth in the Complaint are incorporated herein by reference.

student enrollment was decelerating and was poised to decline as the Company reached market saturation; (v) the Company's growth strategy was unsustainable, as 2U faced accelerating costs and had insufficient capital to achieve positive cash flows, improve margins, or continue its revenue growth; and (vi) as a result, Defendants lacked any reasonable basis to issue 2U's projections and financial forecasts. ¶ 37.

On May 7, 2019, 2U disclosed declining average enrollments, reporting disappointing first quarter 2019 financial results, and lowering the Company's financial guidance. ¶¶ 38-39. While Paucek admitted he should have "taken some air out of the balloon" on the Company's growth story, Defendants failed to reveal the true state of 2U's business and prospects, insisting, for example, that the Company's business model had no fundamental defects. ¶¶ 39-40. On this news, 2U's share price declined over 25%, to close at $44.77 per share on May 8, 2019. ¶ 40.

On July 30, 2019, after the close of trading, the Company shocked the market by revealing that the Company's growth plans were failing and needed to be abandoned as costs ballooned, significantly reducing its 2019 guidance with a 300% year-over-year increase in projected losses. ¶¶ 42-44. On this news, 2U's share price declined 65%, to close at $12.80 per share on July 31, 2019. ¶ 45.

## ARGUMENT

### I.   THE COURT SHOULD APPOINT THE 2U INVESTOR GROUP AS LEAD PLAINTIFF

#### A.   The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

The PSLRA mandates that the Court decide the lead plaintiff issue "as soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a) and (a)(3)(B).

4

First, the PSLRA provides that within 20 days after the date on which the first class action is filed, the plaintiff to that action shall publish, in a widely circulated national business publication or wire service, a notice advising members of the proposed class of the pendency of the action and their right to move for appointment as lead plaintiff within 60 days of the notice publication. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by any purported class member in response to the notice and appoint as lead plaintiff the movant that the court determines to be "most capable of adequately representing the interests of class members." *Id.* The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)   has either filed the complaint or made a motion in response to a notice;

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by another class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and has, what is to the best of its knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff. Movant is also unaware of any unique defenses against it that Defendants could raise. Therefore, Movant is entitled to the

presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in this Action.

**B.      Movant Satisfies the Lead Plaintiff Provisions of the PSLRA**

As described in further detail below, Movant should be appointed lead plaintiff because it satisfies all of the requirements of the PSLRA.  Movant filed a timely motion to be appointed lead plaintiff, holds the largest financial interest in the relief sought by the Class, and satisfies the typicality and adequacy requirements of Rule 23.

**1.      Movant Filed a Timely Motion**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the *Harper* Action published notice of the action on August 7, 2019, within 20 days of the filing of the first-filed complaint, through *Business Wire*, a widely circulated national business-oriented wire service.  *See* Holleman Decl., Ex. D; *see also City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-CV-3608 (VSB), 2019 U.S. Dist. LEXIS 14860, at *12 (S.D.N.Y. Jan. 30, 2019) (noting that *PRNewswire* is "a widely-circulated national business-orientated wire service, fulfilling the PSLRA requirements").  Consequently, any member of the proposed Class was required to seek appointment as lead plaintiff within 60 days after publication of that notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Therefore, the time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on October 7, 2019.  Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movant timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

### 2.      Movant Has the Largest Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial interest in the relief sought by the Action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Holleman Decl., Ex. B. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001); *Foley*, 272 F.R.D. at 128 (stating "[a]lthough courts have differed on how much weight to assign to each of the factors, [the Second Circuit], as have other courts, shall place the most emphasis on the last of the four factors:  the approximate loss suffered by the movant."). *See also Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (same); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *13-14 (S.D.N.Y. Jan. 24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period").

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

Within the Class Period, Movant purchased 2U securities in reliance upon the materially false and misleading statements issued by the Defendants and was injured thereby. Movant has suffered substantial losses of $40,032.74 under a last-in-first-out ("LIFO") analysis as a result of Defendants' alleged fraudulent statements. *See In re eSpeed*, 232 F.R.D. at 101 (noting that courts

7

prefer losses to be calculated under LIFO); *see also* Holleman Decl., Ex. B (Loss Chart).[4] Movant, thus, has a significant financial interest in the outcome of this case. To the best of Movant's knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 3.        Movant Meets Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). *See also Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation,

---

[4]   Movant purchased a total of 1,413 shares, expended net funds of $63,889.83 on its securities during the Class Period, retained 1,413 shares through the close of the Class Period, and suffered $40,032.74 in losses.

the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### (i)      Movant's Claims Are Typical of the Claims of the Class

Under Rule 23 (a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the plaintiff has: (a) suffered the same injuries as the absent class members; (b) the injuries are as a result of the same course of conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "However, the claims of the class representative need not be identical to those of all members of the class." *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, No. 08 MDL 1963 (RWS), 2008 U.S. Dist. LEXIS 106327, at *29 (S.D.N.Y. Dec. 29, 2008); *see also In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (quotations omitted). A finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with, the claims of the other Class members. *See Richman v Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("The typicality requirement is satisfied when the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise."). Movant, like the other members of the Class, acquired

9

2U securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. Thus, Movant's claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and its losses were a result of Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Reimer v. Ambac Fin. Grp., Inc.*, No. 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729, at *12 (S.D.N.Y. May 9, 2008) ("Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

Movant therefore satisfies the required *prima facie* showing of the typicality requirements of Rule 23 for purposes of this Motion.

### (ii)     Movant Will Fairly and Adequately Protect the Interests of the Class

Movant is also an adequate representative for the Class. Under Rule 23(a)(4), representative parties must "fairly and adequately protect the interests of the class." Adequate representation will be found if the representative has: (a) retained able and experienced counsel and (b) the representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *15 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because his interests are aligned with those of the putative class, and he has retained competent and experienced counsel."). The PSLRA directs the

10

Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B).

Movant meets the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative Class. Not only is there no evidence of conflict between the interests of Movant and those of the other members of the putative Class, but Movant has a significant and compelling interest in prosecuting the Action based on the large financial loss it has incurred as a result of the wrongful conduct alleged therein. *See In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (plaintiff's "financial stake in the litigation provides an adequate incentive for [plaintiff] to vigorously prosecute the action"). Indeed, Movant has already taken steps which demonstrate that it both recognizes and will protect the interests of the Class, including: (1) executing a certification detailing each member's Class Period transactions and expressing their willingness to serve as Class representative; (2) moving this Court to be appointed lead plaintiff; and (3) retaining competent and experienced counsel, who, as shown below, are experienced in class action litigation such as this involving allegations of securities fraud. Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and therefore satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant sustained the largest amount of losses from Defendants' alleged wrongdoing, Movant is the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead this Action.

## II.   MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Here, Movant has selected and retained BES as the proposed Lead Counsel for the Class.

As set forth in its accompanying firm résumé (Holleman Decl., Ex. E), BES is highly accomplished in, and is currently acting as lead counsel in, a number of federal securities actions and has achieved many multi-million-dollar recoveries for investors.  The members of the firm have extensive experience in successfully prosecuting complex securities class actions such as this and are well-qualified to represent the Class.  Thus, this Court may be assured that in the event that the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court:  (1) appoint Movant as Lead Plaintiff on behalf the Class in the Action; (2) approve Movant's selection of BES as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

DATED: October 7, 2019                    Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, P.C.**

By: /s/ W. Scott Holleman
W. Scott Holleman
885 Third Avenue, Suite 3040
New York, NY 10022
Telephone:  (646) 860-9449
Facsimile:  (212) 214-0506
Email: holleman@bespc.com

12

*Counsel for Movant and Proposed*
*Lead Counsel for the Class*

13

## **CERTIFICATE OF SERVICE**

I, W. Scott Holleman, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 7th day of October, 2019.

*/s/ W. Scott Holleman*
W. Scott Holleman