**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In Re 2U, Inc. Securities Class Action | No. 1:19-cv-07390-RA <br><br> <u>CLASS ACTION</u> <br><br> <u>ORAL ARGUMENT REQUESTED</u> |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF PUBLIC
SCHOOL TEACHERS' PENSION & RETIREMENT FUND OF CHICAGO FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF
LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOVANTS**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 4

    A.    PIRANI DOES NOT SATISFY BASIC PSLRA AND RULE 23 LEAD PLAINTIFF REQUIREMENTS AND HIS MOTION SHOULD BE DENIED ................................................................................................................... 5

    B.    DISPROPORTIONATE POST-DISCLOSURE PURCHASES INDEPENDENTLY MANDATE DENIAL OF PIRANI'S MOTION .................. 8

    C.    CHICAGO TEACHERS IS THE PRESUMPTIVE LEAD PLAINTIFF ............ 11

        1.    Chicago Teachers Readily Satisfies Rule 23 ............................................ 11

        2.    The PSLRA Preference for Institutional Investors ................................... 13

CONCLUSION ....................................................................................................................... 14

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)...........................................................................................................10

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)...........................................................................................................10

*Bovee v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003)......................................................................................10

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
137 S. Ct. 2042 (2017).....................................................................................................4, 8

*Camp v. Qualcomm Inc.*,
No. 18-cv-1208-AJB-BLM, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019).....................2, 6, 7, 8

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ............................................................................................11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................................1

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018)....................................................................................................4, 8

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009).....................................................................................9, 10

*Darvin v. Int'l Harvester Co.*,
610 F. Supp. 255 (S.D.N.Y. 1985)......................................................................................6

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)..............................................................................................12

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)..........................................................................................................10

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002).......................................................................................11

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11 Civ. 3658 (SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) .....................3, 9, 10, 11

*GAMCO Inv'rs v. Vivendi, S.A.*,
  917 F. Supp. 2d 246 (S.D.N.Y. 2013)...................................................................................10

*Gary Plastic Packaging Corp. v. Merril Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990)...................................................................................................10

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ......................................................................................13, 14

*Harris v. Vector Mktg. Corp.*,
  753 F. Supp. 2d 996 (N.D. Cal. 2010) .....................................................................................6

*Karp v. Diebold Nixdorf, Inc.*,
  No. 19 Civ. 6180(LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ......................3, 7, 8, 14

*In re KIT Digital, Inc. Sec. Litig.*,
  293 F.R.D. 441 (S.D.N.Y. 2013) .............................................................................................14

*Micholle v. Ophthotech Corp.*,
  No. 17-CV-1758 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)..................................12

*Nakamura v. BRF S.A.*,
  No. 18-CV-2213 (PKC), 2018 WL 3217412 (S.D.N.Y. July 2, 2018)......................................5

*In re NYSE Specialists Sec. Litig.*,
  240 F.R.D. 128 (S.D.N.Y. 2007) ...............................................................................................7

*Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
  No. 16 Civ. 8260 (PAE), 2017 WL 775850 (S.D.N.Y. Feb. 28, 2017)...................................14

*In re Party City Sec. Litig.*,
  189 F.R.D. 91 (D.N.J. 1999)......................................................................................................7

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015)......................................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) .....................................................................................2, 4, 6, 7

*Plaut* v. *The Goldman Sachs Grp., Inc.*,
  No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ..............................12

*Randall v. Fifth St. Fin. Corp.*,
  No. 15-cv-7759(LANK), 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016).....................................14

*Reitan v. China Mobile Games & Entm't Grp. Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014)........................................................................................14

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
219 F.R.D. 343 (D. Md. 2003)................................................................................................11

*Smith v. Suprema Specialties*,
206 F. Supp. 2d 627 (D.N.J. 2002) ........................................................................................4, 5

*Tomaszewski v. Trevena, Inc.*,
383 F. Supp. 3d 409 (E.D. Pa. 2019) ........................................................................................6

*In re Valence Tech. Sec. Litig.*,
No. C 95-20459 JW, 1996 WL 119468 (N.D. Cal. Mar. 14, 1996) ....................................9, 10

*Villella v. Chem. & Mining Co. of Chile Inc.*,
No. 15 Civ. 2106 (ER), 2015 WL 6029950 (S.D.N.Y. Oct. 14, 2015)....................................14

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
No. 07-177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 6, 2007)..................................................6

## Rules & Statutes

Fed. R. Civ. P. 23...................................................................................................... *passim*

15 U.S.C. § 78u-4(a)(2) .............................................................................................................5

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ..............................................................................................1

## Docketed Cases

*Desilvio v. Lion Biotechnologies, Inc.*,
No. 17-cv-02086 (N.D. Cal. July 7, 2017)..............................................................................3, 7

*Eastwood Enters., LLC v. WellCare Health Plans, Inc.*,
No. 07-cv-1940 (M.D. Fla.) ....................................................................................................13

*In re Huron Consulting Grp., Inc. Sec. Litig.*,
No. 09-cv-4734 (N.D. Ill.) ......................................................................................................13

*In re Snap, Inc. Sec. Litig.*,
No. 17-cv-03679 (C.D. Cal. Sept. 18, 2017) .........................................................................8, 9

## Other Authorities

H.R. Conf. Rep. No. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730 ...........................................13

Pursuant to the Court's August 12, 2019 Order (ECF No. 5), proposed Lead Plaintiff

Chicago Teachers respectfully submits this memorandum of law in further support of its motion

for appointment as Lead Plaintiff and approval of selection of Labaton Sucharow as Lead

Counsel for the Class (ECF No. 21),[1] and in opposition to all competing lead plaintiff motions.[2]

## PRELIMINARY STATEMENT

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the "court

shall adopt a presumption that the most adequate plaintiff" is the movant with "the largest

financial interest in the relief sought by the class" that "otherwise satisfies the requirements of

Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Chicago

Teachers, a sophisticated institutional investor with more than *$2.1 million* in losses in

connection with its Class Period transactions in 2U securities, respectfully submits that it is the

*only* remaining candidate that satisfies these requirements.

Based on losses claimed by each respective movant, Pirani may appear well-positioned to

argue he should be the presumptive Lead Plaintiff.  However, financial interest alone is not

dispositive.  The PSLRA "does not permit courts simply to 'presume' that the movant with 'the

largest financial interest in the relief sought by the class' satisfies the typicality and adequacy

requirements." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).  It is well-

---

[1]	All definitions and abbreviations used herein remain unchanged from Chicago Teachers' previous submissions before the Court.  *See* ECF Nos. 21, 23.

[2]	The other lead plaintiff motions were filed by: (i) Fiyyaz Pirani ("Pirani") (ECF No. 39); (ii) National Elevator Industry Pension Fund (ECF No. 31); (iii) Anders-Christian Moeller (ECF No. 17); (iv) DeKalb County Employees Retirement Plan (ECF No. 24); (v) Erik Fjellborg (ECF No. 11); (vi) Edward Hackman and Herbert Saunders (ECF No. 35); (vii) Aaron Harper (ECF No. 13); and (viii) Employees Retirement System of the Puerto Rico Electric Power Authority (ECF No. 27).  Following the filing of the nine lead plaintiff motions, all competing movants beside Chicago Teachers and Pirani have since withdrawn their motions.  *See* ECF Nos. 44, 49, 50, 51, 52, 53, 54.  Therefore, the only two movants presently before the Court are Chicago Teachers and Pirani.  ECF Nos. 21, 39.

established that courts, in the exercise of their gatekeeping function on behalf of absent class members, have an "ultimate obligation to appoint as lead plaintiff the [movant] . . . most capable of representing the interests of the class members." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 407 n.19 (S.D.N.Y. 2004) (citing cases). The PSLRA therefore provides courts great latitude to determine whether a proposed lead plaintiff can fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. Pirani fails to satisfy these bedrock PSLRA requirements.

Pirani's lead plaintiff application is fatally flawed for multiple reasons. As an initial matter, Pirani's certification was executed via a boilerplate form on *August 6, 2019* (before the filing of either complaint in the Action, neither of which were filed by Pirani's counsel),[3] and purports to incorporate his "transactions in 2U securities during the Class Period." ECF No. 43-3. However, *no complaint* had been filed on August 6, 2019, and therefore no class period or class effectively defined. Based on this chronology and the record evidence before the Court, it is entirely unclear as to whether Pirani *even knows* his counsel filed the instant motion for lead plaintiff appointment on his behalf, or whether he correctly incorporated the relevant transactions during the filed Class Period. *See Camp v. Qualcomm Inc.*, No. 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (dismissing individual lead plaintiff movant for claiming to have "reviewed the complaint and *authorized its filing* [when] there was no complaint filed in his name") (citation and internal quotations omitted).

---

[3]    The *Harper* Action was filed on August 7, 2019, and the *Chinn* Action was filed on August 9, 2019.

The concerns surrounding the discrepancies in Pirani's certification are emblematic of issues that have prompted courts to "require[] more information about the various movants" beyond the "skeletal" information required by the PSLRA's certification provision. *See* Order re: Proposed Lead Plaintiffs, *Desilvio v. Lion Biotechnologies, Inc.*, No. 17-cv-02086 (N.D. Cal. July 7, 2017), ECF No. 35 (Supplemental Declaration of Francis P. McConville ("Supp. McConville Decl.") Ex. A). Requiring basic information about how a movant retained counsel and whether that movant understands its responsibilities and obligations to the Class may eliminate movants that are less than fully committed to protecting the Class. Here, Pirani has failed to provide *any* requisite information concerning his sophistication, fiduciary experience, if any, or resources necessary to serve as lead plaintiff, making it impossible to determine whether he can properly represent the Class. *See Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180(LAP), 2019 WL 5587148, at *5 (S.D.N.Y. Oct. 30, 2019) (rejecting individual lead plaintiff movant for failing to provide requisite information). For these reasons, his motion must be denied.

Finally, Pirani's Class Period trading pattern independently warrants denial of his motion. Significantly, over *60 percent* of Pirani's Class Period purchases occurred *after* the May 7, 2019 partial disclosure, rendering him atypical and subject to unique reliance-based defenses which threaten the Class. *See Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658 (SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (rejecting lead plaintiff movant where over half of class period purchases occurred after a partial disclosure). Ensuring that the lead plaintiff is capable of satisfying PSLRA and Rule 23 requirements is essential to minimizing potential class certification issues as the litigation progresses, which is vital given recent Supreme Court authority finding that statutes of repose for federal securities claims cannot be tolled and the pendency of a class action does toll the statute of limitations for claims filed in any subsequent

3

class action.[4]  Thus, lead plaintiff movants must demonstrate Rule 23 compliance at the outset of the litigation in order to avoid the severe consequences for absent Class members of later withdrawal or class certification denial.  Pirani's atypical trading pattern unnecessarily subjects the Class to potentially fatal reliance arguments unique to Pirani.

Chicago Teachers does not expose the Class to these unnecessary risks.  Chicago Teachers is an experienced fiduciary and tested lead plaintiff, having directed numerous securities class actions to settlement, several with Labaton Sucharow as lead counsel.  The disparity between Chicago Teachers and Pirani thus underscores the importance of entrusting Class leadership to a sophisticated institution, such as Chicago Teachers.  Accordingly, Chicago Teachers respectfully submits that it is not only the presumptive Lead Plaintiff under the PSLRA, but the only candidate with the experience and resources necessary to zealously protect the interests of the Class.  Chicago Teachers' motion should be granted.

## ARGUMENT

It is well-established that courts, in the exercise of their gatekeeping function on behalf of absent class members, have an "ultimate obligation to appoint as lead plaintiff the member or members of the purported plaintiff class . . .  'most capable of representing the interests of the class members.'" *LaBranche & Co.*, 229 F.R.D. at 407 n.19 (citation omitted).  Chicago Teachers, a sophisticated institutional investor, experienced fiduciary, and seasoned lead plaintiff, is the only movant able to claim a substantial financial interest while also satisfying the statutory Rule 23 requirements under the PSLRA.  *See Smith v. Suprema Specialties,* 206 F. Supp. 2d 627,

---

[4]      *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2055 (2017) (holding that the statute of repose period is not tolled for absent class members during the pendency of a class action); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807-08 (2018) (holding that the pendency of a class action does not toll the statute of limitations period for a subsequent class action).

639–41 (D.N.J. 2002) (appointing institutional investor as lead plaintiff because "its extensive experience in acting as a fiduciary will benefit the Class"). Chicago Teachers is therefore not only the presumptively most adequate plaintiff, but the most qualified to oversee counsel and vigorously pursue recovery on behalf of absent Class members.

### A.    PIRANI DOES NOT SATISFY BASIC PSLRA AND RULE 23 LEAD PLAINTIFF REQUIREMENTS AND HIS MOTION SHOULD BE DENIED

The PSLRA was passed, in large part, to reduce lawyer-driven litigation and "ensure that plaintiffs with expertise in the securities markets control the litigation, as opposed to lawyers." *Nakamura v. BRF S.A.*, No. 18-CV-2213 (PKC), 2018 WL 3217412, at *2 (S.D.N.Y. July 2, 2018). Here, Pirani has failed to provide sufficient record evidence establishing that he is the type of movant that the PSLRA was enacted to appoint as lead plaintiff.

Proof of Pirani's inadequacy is established by the documents he submitted in this case. Pirani's PSLRA certification, dated August 6, 2019, predates the filing of either complaint filed in the Action, neither of which were filed by Pirani's counsel. Based on this discrepancy, it is unclear whether Pirani is even ***aware*** of the current motion, whether he provided accurate transaction information, or whether his counsel unknowingly and inaccurately filed the motion on his behalf. Specifically, the certification indicates that Pirani "reviewed a Complaint . . . and[] authorize[d] the filing of a comparable complaint" and incorporated his "transactions in 2U securities during the Class Period." ECF No. 43-3 ¶¶ 2, 5; *see also* 15 U.S.C. § 78u-4(a)(2) (PSLRA certification requirement that "[e]ach plaintiff seeking to serve as a representative party . . . shall provide a sworn certification," which "states that the plaintiff has reviewed the complaint and authorized its filing" and "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint"). However, no complaint had been filed by that date, and therefore no class period or class had been defined.

5

Simply put, Pirani's certification makes declarations "under penalty of perjury," which based on the timing, cannot be true.  ECF No. 43-3 ¶ 8.  These incongruities materially undermine Pirani's credibility, as well as his involvement in the litigation to date, and underscore his inadequacy to represent the Class.  *See Qualcomm Inc.*, 2019 WL 277360, at *3 (rejecting individual lead plaintiff movant for claiming to have "reviewed the complaint and *authorized its filing* [when] there was no complaint filed in his name") (citation and internal quotations omitted); *In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. 07-177 (FLW),  2007 WL 2683636, at *8 & n.8 (D.N.J. Sept. 6, 2007) (rejecting lead plaintiff movant for falsely claiming he had "reviewed the complaint" and "authorize[ed] its filing"); *Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 256 (S.D.N.Y. 1985) (rejecting proposed class representative for "demonstrat[ing] a serious lack of familiarity with the suit").[5]  Based on Pirani's submission, there is no indication that he personally spoke to his attorneys before the motion was filed, that he accurately and fully included his Class Period transactions in 2U securities, or that he fully understands the role a lead plaintiff must play in securities class actions.

Pirani, as an unknown individual, has also failed to provide this Court with ***any*** information sufficient to address his typicality or adequacy.  While the "size, available resources, or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of

---

[5]     *See also, e.g.*, *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414–15 (E.D. Pa. 2019) (finding that errors in sworn statements "speak to a level of carelessness," and "cause[d] the Court to doubt whether [movant] possesse[d] the necessary adequacy and sophistication to be lead plaintiff"); *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) ("[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.") (citation and internal quotation marks omitted).

adequately protecting the interests of the class." *LaBranche & Co.*, 229 F.R.D. at 417–18.[6]  It is no surprise, therefore, that courts in this District and across the country have begun demanding more than "skeletal" information required in PSLRA certifications to assist in the lead plaintiff selection process. *See, e.g., Qualcomm Inc.*, 2019 WL 277360, at *3 (rejecting lead plaintiff movant that failed to provide "any basic details about himself, including where he lives or who he is specifically in his motion").[7]

Under remarkably similar facts, Judge Preska recently held that lead plaintiff movants "***need*** to provide enough information to make a preliminary showing of adequacy under Rule 23." *Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *5 (emphasis added).  In *Diebold*, Judge Preska rejected individual investors in favor of an institutional investor claiming a smaller loss on these very grounds, finding that the individuals "ha[d] provided the Court with little to go on with respect to their alleged capacity to manage this litigation." *Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6.  The court also noted that because the individuals' certification indicated "they have not served as a lead plaintiff . . . within the past three years"—just as in Pirani's certification—that the court had "no knowledge as to whether the [movants] have ever had any experience serving as lead plaintiff prior to that." *Id.*  "Given this lack of information," Judge

---

[6]     *See also In re Party City Sec. Litig.*, 189 F.R.D. 91, 114 (D.N.J. 1999) ("a court must be mindful that the lead plaintiff has significant responsibilities and duties, including the management of the direction of the case"); *accord In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 133 (S.D.N.Y. 2007).

[7]     *See also* Order re: Proposed Lead Plaintiffs, *Desilvio v. Lion Biotech., Inc.*, No. 17-cv-02086 (N.D. Cal. July 7, 2017), ECF No. 35 (Supp. McConville Decl. Ex. A) (court *sua sponte* ordered all individual lead plaintiff applicants to file a declaration setting forth: "(i) each individual's city and state of residence; (ii) each individual's occupation; (iii) whether and to what extent the moving individuals are familiar with one another; (iv) how each individual came to retain his/her respective lawyer(s); and (v) the general nature of each individual's investment in the [company]").  Tellingly, shortly after the court's order requiring more information in *Lion Biotech.*, the investor group movant withdrew its motion.  *See* Notice of Withdrawal of Motion, *Lion Biotech.*, No. 17-cv-02086 (N.D. Cal. July 17, 2017), ECF No. 37.

Preska was "skeptical that the [individual movants] [were] equipped to serve as lead plaintiff," and denied their motion while electing to appoint a sophisticated institutional investor. *Id.*

As with the movants in *Qualcomm* and *Diebold*, Pirani has provided virtually no meaningful information to establish his qualifications as a fiduciary to the Class or that he can adequately control counsel and protect the Class. Given the importance of selecting a qualified lead plaintiff at the outset of the litigation, and the impact of such selection on absent class members,[8] Chicago Teachers respectfully submits that Pirani cannot serve as lead plaintiff in this litigation.

### B.   DISPROPORTIONATE POST-DISCLOSURE PURCHASES INDEPENDENTLY MANDATE DENIAL OF PIRANI'S MOTION

Pirani's disproportionate post-disclosure purchases independently warrant denial of his lead plaintiff application. Following the May 7, 2019, partial disclosure (adopted by Pirani in his motion, *see* ECF No. 41 at 2), which resulted in nearly a 26 percent decline in the price of 2U stock, Pirani more than ***doubled*** his 2U holdings with the purchase of 49,614 additional shares, or ***62 percent*** of his total Class Period purchases. *See* ECF No. 43-3 (Pirani certification). Moreover, approximately 80 percent of these purchases were made within two days following the partial disclosure. *See id.* Pirani's disproportionate post-disclosure trading, therefore, exposes him to reliance-based defenses not generally faced by Class members, including Chicago Teachers, and renders him atypical and unfit to serve as lead plaintiff. *See* Lead Plaintiff Order, *In re Snap, Inc. Sec. Litig.*, No. 17-cv-03679 (C.D. Cal. Sept. 18, 2017), ECF No.

---

[8]   *See China Agritech*, 138 S. Ct. at 1807–08 (explaining that Rule 23 and the PSLRA encourage the selection of adequate class representatives and lead plaintiffs during the early stages of litigation, particularly where the pendency of one class action does not toll the statute of limitations period for a subsequent class action); *ANZ*, 137 S. Ct. at 2055 (holding that statute of repose period is not tolled for absent class members during pendency of a class action).

54 (Supp. McConville Decl. Ex. B) (movant who purchased "more than 60%" of his class period holdings following a corrective disclosure subject "to unique defenses regarding whether [he] actually relied on any alleged misrepresentations"); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 598 (C.D. Cal. 2009) (concluding that "typicality is defeated where 'there is a danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it'") (citation omitted).

On May 7, 2019, 2U shocked the market by materially lowering its guidance, attributing the surprising negative news to lower enrollment volumes in its graduate programs coupled with increased spending, causing the price of 2U shares to plummet by approximately 26 percent. *See Harper* Action, ECF No. 1 ¶¶ 21–22; *Chinn* Action, ECF No. 1 ¶¶ 38–40; *see also* ECF No. 41 at 2 (Pirani motion). Importantly, ***every complaint*** in the Action has identified the May 7, 2019 disclosure as a partial revelation of fraud.[9] Nevertheless, Pirani more than ***doubled*** his holdings ***in spite*** of this partial revelation of fraud. Should he be appointed lead plaintiff, Defendants will attack Pirani's reliance on Defendants' alleged materially false and misleading statements and omissions at class certification and/or trial. Given the timing and magnitude of Pirani's post-disclosure transactions, Defendants would obviously attempt to elicit testimony "suggest[ing] that [he] invested in [2U] securities notwithstanding notice of [D]efendants' misstatements and omissions," thereby undermining his ability to "assert the fraud-on-the-market presumption" of reliance. *Faris*, 2011 WL 4597553, at \*8; *see also In re Valence Tech. Sec. Litig.*, No. C 95-20459 JW, 1996 WL 119468, at \*5 (N.D. Cal. Mar. 14, 1996) (rejecting as atypical a proposed

---

[9] *See Harper* Action, ECF No. 1 ¶ 21 ("The truth began to emerge on May 7, 2019, when the Company disclosed declining average enrollments in some of its largest graduate programs."); *accord Chinn* Action, ECF No. 2 ¶¶ 37–38.

class representative who disproportionally increased his holdings after the first of two disclosures).

Critically, the fraud-on-the-market presumption of reliance is the bedrock of securities class action certification.[10] Indeed, "[w]ithout the benefit of the presumption of reliance, 'requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would [prevent plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones.'" *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 603 (S.D. Ohio 2003) (quoting *Basic*, 485 U.S. at 242). For these reasons, courts in this District and across the country frequently hold that "post-disclosure purchases *can* defeat the typicality requirement for class certification when plaintiffs made a disproportionally large percentage of their purchases post-disclosure." *GAMCO Inv'rs v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 261 (S.D.N.Y. 2013) (footnote and internal quotation marks omitted); *see also In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (Rakoff, J.) (rejecting movant because its post-corrective disclosure "transactions raise serious questions regarding [the movant's] reliance on the alleged misrepresentations and omissions").[11]

Under analogous circumstances, Judge Scheindlin in *Faris* denied one movant's motion for appointment as lead plaintiff because it had purchased over half of its shares after a corrective

---

[10] Under Section 10(b) of the Exchange Act, reliance must be proven. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005); *Basic, Inc. v. Levinson*, 485 U.S. 224, 243 (1988). Plaintiffs may use the fraud-on-the-market theory, which entitles them to a rebuttable presumption of reliance. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 461 (2013).

[11] *See also, e.g.*, *Gary Plastic Packaging Corp. v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990) (concluding that a plaintiff "was an inappropriate class representative since its claim is subject to several unique defenses including its continued purchases . . . despite having notice of, and having investigated, the alleged fraud."); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. at 603 ("Of course, *unusual* post-disclosure trading patterns present typicality problems.") (emphasis in original).

disclosure. *See Faris*, 2011 WL 4597553, at *8. Judge Scheindlin held there was "no reason to subject the class to this potential defense where there is another movant . . ., that purchased the vast majority of [company] shares before the first corrective disclosure was made." *Id.* The situation here is no different. Appointing Pirani as lead plaintiff threatens to saddle the Class with an unfit representative subject to potentially fatal reliance arguments unique to Pirani. *See In re Royal Ahold N.V. Sec. & ERISA Litig.,* 219 F.R.D. 343, 352–53 (D. Md. 2003) ("It is difficult to see how Union, if appointed lead plaintiff, would be able to avoid devoting a large portion of its time and efforts to proving it is not subject to . . . unique defense[s] . . . ."); *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 455–56 (S.D. Tex. 2002) (court was unwilling to "endanger th[e] litigation" by appointing a presumptive lead plaintiff with unique defenses).

Accordingly, the PSLRA mandates the denial of any lead plaintiff movant who threatens cornerstone class certification principles at the outset of litigation. Pirani's motion should accordingly be denied.

## C.  CHICAGO TEACHERS IS THE PRESUMPTIVE LEAD PLAINTIFF

Based on Pirani's failure to satisfy the typicality and adequacy requirements of Rule 23, Chicago Teachers is the presumptive Lead Plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002) (discussing sequential process for selecting a lead plaintiff). With losses of *$2,137,518.06* on its Class Period transactions in 2U securities, Chicago Teachers has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' violations of federal securities laws.

### 1.  Chicago Teachers Readily Satisfies Rule 23

Chicago Teachers is typical to the Class as a whole and not subject to any potentially disqualifying unique defenses. *See* ECF No. 23 at 9–10. "With respect to typicality, courts

11

consider whether the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'" *Plaut* v. *The Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *3 (S.D.N.Y. Sept. 19, 2019) (quoting *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  As applied, Chicago Teachers' claims are typical to the class as a whole.  Chicago Teachers: (i) suffered losses on its investments in 2U securities; (ii) as a result of its reliance on Defendants' alleged misstatements; (iii) therefore, the claims of Chicago Teachers are based on the same course of events as the claims of the Class; and (iv) as a result thereof, Chicago Teachers' claims will rely upon the same legal theories as the Class as a whole.  Therefore, the typicality requirement is satisfied as to Chicago Teachers.  *See Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *6 (S.D.N.Y. Mar. 13, 2018).  Accordingly, Chicago Teachers is typical to the Class.

Chicago Teachers also satisfies Rule 23's adequacy requirement.  *See* ECF No. 23 at 10–11.  "In considering the adequacy of a proposed lead plaintiff," courts in this District "consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *The Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *3 (quoting *Reitan v. China Mobile Games & Entm't Grp. Ltd.*, 68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014)).  Here, no antagonism exists between Chicago Teachers' interests and those of the absent Class members, and any arguments to the contrary should be disregarded as purely speculative.  Chicago Teachers suffered the substantial loss of

$2,137,518.06 due to Defendants' alleged misconduct and, therefore, has a sufficient interest in the outcome of the Action to ensure its vigorous prosecution.

Finally, Chicago Teachers has selected experienced and competent counsel with which it has previous experience serving as lead plaintiff. Labaton Sucharow, a nationally recognized securities litigation law firm, has settled countless large and noteworthy securities class actions across the country on behalf of injured investors. *See* ECF No. 26-4. Indeed, Chicago Teachers' selection of Labaton Sucharow is based on its own first-hand experience bringing securities class actions to settlement with Labaton Sucharow as lead counsel. *See Eastwood Enters., LLC v. WellCare Health Plans, Inc.*, No. 07-cv-1940 (M.D. Fla.) (securing a settlement valued at $200,000,000 as co-lead plaintiff with Labaton Sucharow serving as co-lead counsel); *In re Huron Consulting Grp., Inc. Sec. Litig.*, No. 09-cv-4734 (N.D. Ill.) (securing a settlement valued at $38,000,000 as co-lead plaintiff with Labaton Sucharow as co-lead counsel). Therefore, Chicago Teachers has already demonstrated its ability to efficiently and effectively manage and oversee Labaton Sucharow in the course of fulfilling its role of lead plaintiff. Chicago Teachers respectfully submits that it presents the class with a tested winning team, and is thus the most adequate to represent the Class.

Based on the foregoing, Chicago Teachers, having established that it has the largest financial interest while also satisfying the typicality and adequacy requirements of Rule 23, is entitled to appointment as Lead Plaintiff.

### 2.      The PSLRA Preference for Institutional Investors

Chicago Teachers, unlike Pirani, is also a transparent and experienced institutional investor, the archetypal lead plaintiff as envisioned by the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34-35, *reprinted in* 1995 U.S.C.C.A.N. 730, 733-34; *Glauser v. EVCI Ctr. Colls. Holding Corp.,* 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed . . . to increase

13

the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments, Inc.,* 233 F.R.D. 330, 332–33 (S.D.N.Y. 2005)); *Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (noting PSLRA preference for institutional investors).  Because of this clear statutory intent to entrust securities class actions to institutions possessing an abundance of experience and resources, an overwhelming number of courts in this District "have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs." *Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (citation omitted).[12]

Thus, Chicago Teachers is precisely the type of experienced, transparent, and sophisticated institutional investor that Congress intended to lead securities class actions.  Based on this notable contrast between the quality of movants, Chicago Teachers is accordingly the presumptive most adequate plaintiff in this litigation.  Chicago Teachers should be appointed.

## CONCLUSION

For the foregoing reasons, Chicago Teachers respectfully requests that the Court grant its motion and enter an Order: (i) appointing Chicago Teachers as Lead Plaintiff; (ii) approving Chicago Teachers' selection of Labaton Sucharow as Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

DATED:  November 15, 2019                                   Respectfully submitted,

                                                                    */s/ Francis P. McConville*

---

[12]     *See, e.g.*, *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting the "statutory preference for institutional lead plaintiffs"); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759(LANK), 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016) (same); *Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*, No. 16 Civ. 8260 (PAE), 2017 WL 775850, at *5 (S.D.N.Y. Feb. 28, 2017) (same); *Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 Civ. 2106 (ER), 2015 WL 6029950, at *6 (S.D.N.Y. Oct. 14, 2015) (same).

Christopher J. Keller
Eric J. Belfi
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Lead Plaintiff Movant*
*Public School Teachers' Pension &*
*Retirement Fund of Chicago, and*
*Proposed Lead Counsel for the Class*

15