

**Emma Gilmore**

Partner

<u>**VIA ECF**</u>                                                                                January 31, 2022

The Honorable Theodore D. Chuang
U.S. District Court for the District of Maryland
6500 Cherrywood Lane, Suite 245A
Greenbelt, Maryland 20770

> *Re:*   Plaintiffs' Notice of Intent to File Motion to Compel
> *In Re 2U, Inc. Securities Class Action*, 8:19-cv-03455-TDC (D. Md.)

Dear Judge Chuang:

In accordance with the Court's Case Management and Scheduling Orders (ECF Nos. 66, 193), this letter serves as Plaintiffs' Notice of Intent to file a Motion to Compel pursuant to Rules 26(e) and 37 of the Federal Rules of Civil Procedure. Plaintiffs intend to seek an order compelling the 2U Defendants to fully and completely respond to Plaintiffs' discovery requests and produce all responsive documents for the relevant time period from January 1, 2017, to August 30, 2019. Given the impending deadline for the parties to substantially complete fact discovery (February 28, 2022), it is imperative at this time that Plaintiffs file this Motion to Compel the 2U Defendants to comply with their discovery obligations.



Redacted

## I.      Procedural Posture

Plaintiffs propounded and served discovery requests on the 2U Defendants via electronic mail on October 13, 2021. The 2U Defendants served their responses on November 12, 2021. Upon receipt, Plaintiffs engaged in several meet-and-confer conference calls with the 2U Defendants.

{00475887;9 }

The Honorable Theodore D. Chuang
January 31, 2022
Page 2

Despite several such meet-and-confers on November 22, 2021, December 1, 2021, and January 14, 2022, the parties were unable to reach an agreement on the relevant time period for discovery.

## II.      Defendants Are Improperly Attempting to Limit the Relevant Time Period

The 2U Defendants objected to Plaintiffs' proposed relevant time period for discovery, severely curtailing the universe of relevant documents by more than one year and refusing to produce any documents from January 1, 2017 to December 31, 2017. Defendants insist that evidence from this period is wholly irrelevant to the claims asserted because such information pre-dates the start date of the putative class period (February 26, 2018). But "[i]t is…beyond dispute that discovery is not limited to the class period" and "[t]he proposed class period dates function only to define the plaintiff class, not to restrict the universe of relevant or actionable facts in [a] case." *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *4 (C.D. Cal. Mar. 12, 2012) (internal quotation marks omitted) (collecting cases). Indeed, courts around the country routinely permit discovery beyond the class period where, as here, such discovery is relevant to the claims that are at the heart of the complaint. *See*, *e.g.*, *In re Peanut Farmers Antitrust Litig.*, No. 2:19CV00463, 2020 WL 9216019, at *2 (E.D. Va. July 24, 2020) (finding information that precedes the class period discoverable where it was relevant to establishing motive and to plaintiffs' damages calculation); *In re Scholastic Corp. Secs. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (pre-class period data was relevant to show what the defendants knew at the beginning of the class period).

Here, discovery for the year 2017 is highly relevant to establish Defendants' knowledge of their failing business model (including declining enrollments in its graduate division, which comprised the lion's share of Defendants' revenues) and to demonstrate the falsity of Defendants' representations. Several significant events, which directly impact the claims asserted, occurred in 2017. The Complaint alleges that unbeknownst to investors, 2U started experiencing decreased enrollment figures for its graduate degree program "beginning in 2017." *See*, *e.g.*, Dkt. No 92 ¶215(a): "beginning in 2017, and continuing through the Class Period, the Exchange Act Defendants saw projected enrollment numbers declining across the board…." Former employee ("FE") 2 specifically explained that Defendant Mokkarala became stressed about enrollment numbers after enrollment projections began to slowly stall in 2017. *Id*. ¶¶358, 472. Corroborating FE-2, a report based on information subpoenaed from some of 2U's university partners explained that 2U launched its short course segment in mid-2017 in order to conceal 2U's slowing growth in the graduate segment. *Id*. ¶¶55, 147(c). According to the report, starting with its Form 10Q for the third quarter of 2017, 2U stopped disclosing an important metric called "Platform Revenue Retention Rate" that had allowed investors to compare changes in revenue across 2U's graduate programs. *Id*. ¶150. Defendants denied the information in the report, publicly projecting unstoppable growth and touting 2U's supposedly winning business model, information on which the unsuspecting investors relied to their detriment. *See*, *e.g.*, *id*. ¶¶139-41.

Moreover, the first alleged material misstatements made by Defendants during the Class Period (in a 2U press release and on a corresponding conference call on February 26, 2018) directly relate to 2U's performance for the full year 2017 and for the fourth quarter of 2017. *See* Dkt. No 92 ¶136-40 and 216-26. At that time, Defendant Graham explicitly stated that 2U's results

{00475887;9 }

The Honorable Theodore D. Chuang
January 31, 2022
Page 3

"strongly validate[d]" the Company's business model and made the Company "very comfortable that increasing [its] investment in new programs to drive growth is a wise, strategic decision." *See Id.* at ¶139. This unequivocally establishes that the 2U Defendants relied on the Company's 2017 performance to justify its business model—which, in reality, was failing—and to instill confidence in the market.

Without discovery into 2017, Plaintiffs' ability to meaningfully interpret the "new" enrollment numbers and projections provided by the 2U Defendants will be severely prejudiced because they obscure the decreased trends in enrollment for the Company's graduate programs, as Defendants were experiencing them first-hand.

### III.   Defendants Are Improperly Attempting to Limit Document Custodians and Search Terms

Plaintiffs have received Defendants' letter of January 30, 2022, concerning the issues of custodians and search terms and are endeavoring to negotiate in good faith the list of custodians and search terms to be employed. Given the impending deadline for substantial completion of document production, coupled with the timing requirements of Local Rule 104(8)(a) for filing motions to compel, Plaintiffs thought it prudent to raise these additional issues to the Court's attention. Plaintiffs anticipate moving to compel Defendants to add the additional custodians and apply Plaintiffs' proposed search terms if an agreement is not reached without undue delay.

The 2U Defendants made a severely deficient proposal of merely fourteen custodians, a list that failed to include many key custodians likely to possess highly relevant evidence to Plaintiffs' claims. Specifically, Defendants' proposal failed to include custodians with information highly relevant to 2U's graduate programs (including marketing, admissions, enrollments and investor relations) that are the subject of the Complaint, and failed to include the seventeen former employees cited as confidential witnesses in the Complaint. Redacted

Additionally, the 2U Defendants sent a deficient search term proposal. Defendants' proposed search terms are so limited that the search is all but guaranteed to miss relevant documents. Plaintiffs' proposed search terms, on the other hand, are reasonable and designed to produce search results that will capture relevant documents to which Plaintiffs are entitled. Redacted

Respectfully submitted,

*/s/Emma Gilmore*
  Emma Gilmore

**POMERANTZ LLP**

{00475887;9 }

The Honorable Theodore D. Chuang
January 31, 2022
Page 4

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
egilmore@pomlaw.com

cc:     All counsel (via ECF)

{00475887;9 }