**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE 2U, INC. SECURITIES CLASS ACTION | Consolidated Case No. 8:19-cv-03455-TDC |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND................................ 3

I.      PROCEDURAL HISTORY................................................ 3

II.     NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE PROPOSED SETTLEMENT ................................ 5

ARGUMENT........................................................... 6

III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL 6

     A.     Standards for Preliminary Approval of a Proposed Class Action Settlement .................................................. 6

     B.     The Court Will Likely Be Able to Approve the Proposed Settlement Under Rule 23(e)(2) ........................................ 8

           1.     Plaintiffs and Lead Counsel Have Zealously Represented the Settlement Class.............................................. 8

           2.     The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel ................. 10

           3.     The Settlement Provides Significant and Certain Benefits and Is Well Within the Range of Approval ........................... 12

                a)     The Effective Process for Distributing Relief to the Class 15

                b)     The Settlement Does Not Excessively Compensate Class Counsel .......................................... 16

                c)     The Relief Provided in the Settlement Is Adequate, Taking Into Account All Agreements Related to the Settlement .. 17

           4.     Class Members Are Treated Equitably Relative to One Another . 18

     C.     The Court Will Likely Be Able to Certify the Settlement Class ............. 18

           1.     The Settlement Class Satisfies the Requirements of Rule 23(a)... 19

                a)     Numerosity.................................... 20

                b)     Commonality................................... 20

i

c)       Typicality ........................................................................ 21

d)       Adequate Representation ................................................... 22

2.       Rule 23(b)(3) Is Satisfied ............................................................. 23

D.       Notice to the Settlement Class Should Be Approved ............................. 24

IV.       PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................... 27

CONCLUSION ............................................................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)....................................................................................19, 23, 24

*Arthur v. SunTrust Bank (In re LandAmerica 1031 Exch. Servs. Inc. IRS 1031 Tax
    Deferred Exch. Litig.)*,
    2012 WL 13124593 (D.S.C. July 12, 2012) ........................................................25

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..............................................................................................24

*Beaulieu v. EQ Indus. Servs.*,
    2009 WL 2208131 (E.D.N.C. Apr. 20, 2009)........................................................24

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.,
    HQ*,
    322 F. Supp. 3d 676 (D. Md. 2018) ......................................................................24

*Curtis v. Genesis Eng'g Sols., Inc.*,
    2022 WL 1062024 (D. Md. Apr. 8, 2022)................................................................6

*Donaldson v. Primary Residential Mortg., Inc.*,
    2021 WL 2187013 (D. Md. May 28, 2021)........................................9, 10, 11, 12

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 3366 (2005)............................................................................................13

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)........................................................................................24, 25

*In re BankAtlantic Bancorp, Inc.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd*, 688 F.3d 713 (11th Cir.
    2012) ......................................................................................................................14

*In re BearingPoint Inc. Sec. Litig.*,
    232 F.R.D. 534 (E.D. Va. 2006) ...............................................................20, 21, 23

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ......................................................17

*In re Comput. Scis. Corp. Sec. Litig.*,
    288 F.R.D. 112 (E.D. Va. 2012) ...............................................................21, 24

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ..................................................16

*In re Jiffy Lube Securities Litigation*,
    927 F.2d 155 (4th Cir. 1991) ....................................................8, 10, 12

*In re Kirschner Med. Corp. Sec. Litig.*,
    139 F.R.D. 74 (D. Md. 1991)...........................................................20

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales
    Pracs. & Prods. Liab. Litig.*,
    952 F.3d 471 (4th Cir. 2020) ...........................................................10

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................18

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) .................................................12

*In re The Mills Corp.*,
    257 F.R.D. 101 (E.D. Va. 2009) .................................................. *passim*

*In re Neustar Inc. Sec. Litig.*,
    2015 WL 5674798 (E.D. Va. Sept. 23, 2015).....................12, 19, 24, 26

*In re Titanium Dioxide Antitrust Litig.*,
    2013 WL 5182093 (D. Md. Sept. 12, 2013) ...........................................8

*Klein v. Altria Grp., Inc. et al*,
    No. 3:20-cv-00075 (E.D. Va. Mar. 31, 2022), ECF No. 320..................23

*La. Wholesale Drug Co. v. Bristol-Meyers Squibb Co. (In re Buspirone Antitrust
    Litig.)*,
    2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003)......................17

*Landmen Partners Inc. v. The Blackstone Grp., L.P.*,
    2013 WL 11330936 (S.D.N.Y. Dec. 13, 2013) ....................................16

*Longman v. Food Lion, Inc.*,
    1994 WL 686624 (M.D.N.C. Oct. 17, 1994)...................................20, 22

*Miller v. Asensio & Co., Inc.*,
    364 F.3d 223 (4th Cir. 2004) ...........................................................14

*Miller v. Central Chinchilla Grp., Inc.*,
    66 F.R.D. 411 (S.D. Iowa 1975) .......................................................22

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)............................................................................................24, 26

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*,
   2021 WL 1659848 (E.D. Va. Apr. 23, 2021) .........................................................16

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .............................................................................14

*S.C. Nat'l Bank v. Stone*,
   139 F.R.D. 325 (D.S.C. 1991) ..........................................................................22, 23

*S.C. Nat'l Bank v. Stone*,
   749 F. Supp. 1419 (D.S.C. 1990)..............................................................................6

*Winingear v. City of Norfolk*,
   2014 WL 3500996 (E.D. Va. July 14, 2014) ...............................................8, 11, 15

**Statutes**

15 U.S.C. § 78u...................................................................................................18, 22, 25

Private Securities Litigation Reform Act of 1995 ...............................................................3

Securities Act of 1933................................................................................................18, 22

Securities Exchange Act of 1934.........................................................................................3

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Lead Plaintiff Fiyyaz Pirani ("Pirani" or "Lead Plaintiff") and Additional Named Plaintiff Oklahoma City Employee Retirement System ("OCERS" or "Additional Named Plaintiff") (collectively, "Plaintiffs"),[1] on behalf of themselves and all other members of the Settlement Class, respectfully submit this memorandum of law in support of their unopposed motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for preliminary approval of the proposed Settlement reached in the above-captioned class action (the "Action"). The terms of the proposed Settlement are set forth in the Stipulation, which was entered into by all Parties to the litigation.[2]

## PRELIMINARY STATEMENT

Pursuant to the proposed Settlement, 2U has agreed to pay, or cause to be paid, the Settlement Amount of $37,000,000 for the benefit of the Settlement Class in exchange for the settlement of all claims asserted in the Action, the dismissal with prejudice of the Consolidated Class Action Complaint filed on July 30, 2020 (the "Complaint"), and the release of all Released Plaintiffs' Claims by Plaintiffs and the other members of the Settlement Class as against Defendants and Defendants' Releasees.

The Settlement—which is more than four times the median recovery in securities class action settlements in 2021—will bring to a close this intense and hard-fought litigation, which

---

[1] All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 31, 2022 (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of Jeremy A. Lieberman ("Lieberman Decl."), filed herewith.

[2] Defendants are 2U, Inc. ("2U"), Christopher J. Paucek, Catherine A. Graham, Harsha Mokkarala, Paul A. Maeder, Robert M. Stavis, Gregory K. Peters, Timothy M. Haley, Valerie B. Jarrett, Earl Lewis, Coretha M. Rushing, Sallie L. Krawcheck, John M. Larson, Edward S. Macias, and Mark J. Chernis (with 2U, the "2U Defendants"), and Goldman Sachs & Co. LLC, Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Compass Point Research & Trading, LLC, KeyBanc Capital Markets Inc., and Macquarie Capital (USA) Inc. (collectively, the "Defendants," and with Plaintiffs, the "Parties").

1

included partial denial of Defendants' motion to dismiss, extensive fact discovery from both Defendants and subpoenaed third parties, and a mediation session and protracted mediation negotiations. As discussed below, the Settlement is the product of vigorous good-faith, arm's-length negotiations between experienced counsel, including significant mediation efforts by Greg Lindstrom of Phillips ADR, a nationally recognized mediator. The Settlement represents a very favorable recovery that falls well within the range of possible approval, and it meets all of the factors required by Federal Rule of Civil Procedure 23(e) and Fourth Circuit precedent. Notably, it secures millions of dollars now from a corporate defendant that has rapidly expended its cash resources and seen its share price decline significantly during the course of this Action, thus avoiding the danger that Plaintiffs would have to obtain and enforce a future judgment against an insolvent entity.

Should the Court grant this unopposed motion for preliminary approval, Plaintiffs will provide notice of the Settlement's terms and conditions to potential Settlement Class Members in the manner provided for by the proposed Preliminary Approval Order attached as Exhibit A to the Stipulation. A final approval hearing (the "Settlement Fairness Hearing") will then be conducted so that the Parties may present arguments in favor of the Settlement, and objectors will be provided with the opportunity to oppose it. The Court will then be asked to make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to Settlement Class Members and to consider Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.

The proposed Preliminary Approval Order has been negotiated by the Parties and will, among other things: (1) preliminarily approve the Settlement on the terms set forth in the

Stipulation; (2) certify the Settlement Class for settlement purposes; (3) approve the form and content of the (A) Notice of (i) Proposed Settlement, (ii) Motion for an Award of Attorneys' Fees and Litigation Expenses, and (ii) Settlement Fairness Hearing ("Notice"), (B) the Proof of Claim and Release Form ("Claim Form"), and (C) the Summary Notice, attached as Exhibits 1, 2, and 3 to the Preliminary Approval Order; (4) find that the procedures for distribution of the Notice and Claim Form, and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (5) set deadlines for Settlement Class Members to request exclusion from the Settlement Class or object to the Settlement; (6) set a date and time for the Settlement Fairness Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and Litigation Expenses, including reimbursement of costs and expenses to Plaintiffs pursuant to the PSLRA; and (7) appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Claims Administrator") as the claims administrator, which was selected by Lead Counsel to administer the notice and claims administration process.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. PROCEDURAL HISTORY

This is a securities class action brought on behalf of all persons and entities who purchased or otherwise acquired publicly traded 2U securities between February 26, 2018 through July 30, 2019, both dates inclusive, and who were allegedly damaged thereby.

The operative Complaint, filed on July 30, 2020 (ECF No. 92), asserts claims against Defendants under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against Defendants 2U Inc, Christopher J. Paucek, Catherine A. Graham, and Harsha Mokkarala, and sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") against all

Defendants except Harsha Mokkarala. The Complaint alleges, *inter alia*, that Defendants made materially false and misleading statements about 2U's growth and business model that artificially inflated the price of 2U's common stock. Plaintiffs also allege that 2U's Preliminary Prospectus Supplement dated May 21, 2018 and Prospectus Supplement filed with the U.S. Securities Exchange Commission ("SEC") on May 23, 2018, which are part of 2U's Registration Statement on Form S-3, were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein. Plaintiffs allege that the misrepresentations or omissions concerning the true state of 2U's business artificially inflated the price of 2U common stock and that, when the true facts were revealed, the artificial inflation was removed from the price of 2U common stock, causing the price to drop and to damage members of the class. Plaintiffs allege that the truth was revealed in a series of public disclosures by Defendants exposing poor enrollment and a broken business model. These disclosures caused 2U's stock price to significantly decline. Defendants deny any and all allegations of wrongdoing and deny that they have committed any act or omission giving rise to any liability or violation of law.

On October 27, 2020, Defendants moved to dismiss the Complaint. ECF No. 144. Plaintiffs filed their opposition to the motion to dismiss on December 18, 2020. ECF No. 155. Defendants filed a reply in support of their motion to dismiss on February 9, 2020. ECF No. 157. The Court issued a memorandum and order denying in part the motion to dismiss the Complaint on August 5, 2020. ECF Nos. 166-67.

Before reaching the agreement in principle to settle the Action, Lead Counsel conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action, and completed substantial discovery. This process included, among

other things, analyzing: (i) documents filed publicly by 2U with SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Defendants; (iii) research reports issued by financial analysts concerning 2U; (iv) other publicly available information and data concerning 2U; (v) hundreds of thousands of pages of documents produced by Defendants and third parties during discovery; and (vi) the applicable law governing the claims and potential defenses. Lead Counsel contacted dozens of former 2U employees (seventeen of whom were cited in the Complaint as confidential witnesses). Plaintiffs also filed a motion for class certification with supporting papers, including an expert report concerning the efficiency of the market for 2U's common stock, and were in the process of preparing an expert report concerning damages. Plaintiffs served numerous document requests, interrogatories, and notices of depositions on Defendants, served over twenty subpoenas on relevant third parties (university partners of 2U), and participated in numerous meet and confer sessions with both Defendants and the subpoenaed third parties. Prior to settlement, Plaintiffs also filed a notice of intent to file a motion to compel against the 2U Defendants.

## II.    NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE PROPOSED SETTLEMENT

Lead Counsel and 2U Defendants' Counsel participated in a full-day mediation session before Greg Lindstrom of Phillips ADR. In advance of that session, Plaintiffs and the 2U Defendants exchanged and provided to Mr. Lindstrom detailed mediation statements and reply mediation statements with numerous exhibits providing evidentiary support for their positions. The mediation briefs addressed issues of both liability and damages. That mediation session ended without any agreement being reached, however the process was productive and informed negotiations in the following weeks.

Settlement discussions resumed later and the mediator worked closely with the parties to achieve a settlement in this matter. These negotiations were protracted, complex, and challenging. After extensive further discussions and negotiations, with the involvement of the mediator, the parties reached an agreement-in-principle to settle the case for $37 million and executed a memorandum of understanding on April 28, 2022 (the "MOU"), which memorialized the agreement-in-principle, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers. The Stipulation (together with its exhibits) constitutes the final and binding agreement between the Parties.

In light of the substantial benefit of the $37 million secured for the Settlement Class, the significant costs and risks of continuing litigation, including class certification, summary judgment, *in limine* motions, trial, appeals, uncertainty regarding 2U's future solvency, and the fact that the proposed Settlement is the result of thorough arm's-length negotiations by experienced counsel and a well-respected mediator, Plaintiffs respectfully submit that the Settlement warrants preliminary approval so that notice may be provided to the Settlement Class.

## ARGUMENT

## III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. Standards for Preliminary Approval of a Proposed Class Action Settlement

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class-action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate in class actions." *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990); *see also Curtis v. Genesis Eng'g Sols.,*

*Inc.*, 2022 WL 1062024, at *2 (D. Md. Apr. 8, 2022*)* ("There is an overriding public interest in favor of settlement, particularly in class action suits.").[3]

District court review of a class action settlement proposal is a two-step process. WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §13:12 (5th ed. 2015). The first step is a preliminary, pre-notification determination of whether notice of the proposed settlement should be sent to the class. *Id*. at §13:13; Fed. R. Civ. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the Court determines whether to actually approve the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Rule 23(e) was amended to, among other things, specify that the focus of a court's preliminary approval evaluation is whether notice should be provided to the class after considering the likelihood that the court will be able to finally approve the settlement, given the factors enumerated in Rule 23(e)(2), and be able to certify the class. Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

    (A)    class representatives and counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

---

[3] Internal quotation marks and citations within quotations are omitted throughout unless otherwise specified.

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Rule 23 amendments, which became effective in December 2018, have not changed the overall standard for approving a settlement, *i.e.*, whether the settlement is fundamentally fair, adequate, and reasonable.

"Once the Court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing to determine if the proposed settlement is fair, reasonable, and adequate." *Winingear v. City of Norfolk*, 2014 WL 3500996, at *2 (E.D. Va. July 14, 2014); *see also In re Titanium Dioxide Antitrust Litig.*, 2013 WL 5182093, at *3 (D. Md. Sept. 12, 2013).

At final approval, the Court will also consider the Fourth Circuit's traditional fairness and adequacy factors set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 159 (4th Cir. 1991), which are consistent with the Rule 23(e)(2) factors.[4]

**B.     The Court Will Likely Be Able to Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.     Plaintiffs and Lead Counsel Have Zealously Represented the Settlement Class**

In determining whether to approve a class action settlement, the Court considers whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ.

---

[4] Under *Jiffy Lube*, to assess the threshold factor of the fairness of a settlement, courts consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation." 927 F.2d at 159. Analyzing these factors enables the Court to determine that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id.* Under the second *Jiffy Lube* threshold factor of the adequacy of the proposed settlement, courts consider: (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Id.*

P. 23(e)(2)(A). "The adequacy of representation requirement involves two inquiries: 1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *Donaldson v. Primary Residential Mortg., Inc.*, 2021 WL 2187013, at \*6 (D. Md. May 28, 2021)

In appointing Lead Plaintiff and Lead Counsel to their positions, the Court found each adequate to lead the Action under the PSLRA. *See* ECF No. 86. Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class in their vigorous prosecution of the Action and their negotiation and achievement of the Settlement. Lead Counsel have also been assisted by able and experienced additional counsel, Labaton Sucharow LLP ("Labaton"). Plaintiffs have been active and informed participants in the litigation and were consulted on, and approved, the terms of the Settlement.

Likewise, Lead Counsel, with Labaton's assistance, developed a deep understanding of the facts of the case and the merits of the claims through: (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding 2U and interviews with dozens of former 2U employees (seventeen of whom were cited in the Complaint as confidential witnesses); (ii) briefing on Defendants' motion to dismiss; (iii) engaging in extensive discovery efforts that included serving numerous document requests and interrogatories to Defendants and third parties and analyzing the production of over hundreds of thousands of pages of documents; (iv) briefing on class certification; (v) preparing an expert report; and (vi) serving over twenty subpoenas to relevant third parties (university partners of 2U), and participating in numerous meet and confers with both Defendants and the subpoenaed third parties. Plaintiffs also filed a notice of intent to file a motion to compel prior to settlement. In consultation with its damages expert, Lead Counsel evaluated the potential damages in the case

and negotiated vigorously to secure the $37 million recovery. Accordingly, and consistent with the Court's determination during the lead plaintiff process, Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

### 2. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In weighing a class action settlement at final approval, the Court considers whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Similarly, under *Jiffy Lube*, the Court's analysis of whether the settlement was reached through good faith bargaining at arm's length includes considering the following four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class actions litigation."' *Donaldson*, 2021 WL 2187013, at *4 (quoting *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020)). Consideration of all of these factors demonstrates that the Settlement here was reached through arm's length negotiations after vigorous litigation and with no hint of collusion.

In particular, the advanced posture of this case and the significant amount of discovery that was conducted before the Parties' agreement in principle dispel any concerns of possible collusion. *See Jiffy Lube*, 927 F.2d at 159 (settlement "reached at a very early stage in the litigation and prior to any formal discovery, rais[es] questions of possible collusion"). Here, the Settlement was not reached until the litigation was at an advanced stage. *See* Section I above. The Parties had progressed deeply into fact discovery, including the review of hundreds of thousands of pages of documents produced by Defendants and dozens of meet and confer sessions between Plaintiffs' counsel and Defendants, and between Plaintiffs' counsel and third parties. Plaintiffs also filed

their class certification motion and market efficiency expert report, and were in the process of preparing a damages expert report. *See Winingear*, 2014 WL 3500996, at *2 ("When discovery has been largely completed, this factor weighs in favor of approving the settlement."). Moreover, as discussed above, the Parties had already litigated Defendants' motion to dismiss and began briefing the motion for class certification, and Plaintiffs also filed a notice of intent to file a motion to compel discovery from the 2U Defendants. When "discovery has been substantial and several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) ("*Mills II*"); *see also Donaldson*, 2021 WL 2187013, at *4 ("parties were able to assess accurately the merits of the case, the defenses, and their respective positions" following pre-suit investigation, briefing of a motion to dismiss, discovery, and mediation). The extensive discovery and motion practice in this case provided each side with the necessary insight to evaluate the merits of the Parties' claims and defenses and, as discussed below, laid the groundwork for the arm's-length negotiations that ultimately resulted in the Settlement.

The lengthy settlement negotiations were conducted at arm's-length by experienced class-action litigators with the assistance of an experienced mediator. On April 5, 2022, Plaintiffs and the 2U Defendants participated in a full-day mediation session with Greg Lindstrom of Phillips ADR, one of the preeminent mediators for complex litigation. They then participated in extensive negotiations after the mediation with the assistance of the mediator. They provided multiple detailed mediation statements and exhibits to the mediator, which addressed issues of both liability and damages. During the mediation session, counsel for Plaintiffs and the 2U Defendants zealously negotiated on behalf of their clients' best interests and the Settlement was only reached after Greg Lindstrom presented the parties with a "mediator's recommendation" to settle for $37

million. Lead Counsel, who are very experienced in prosecuting complex class actions (*see* Lieberman Decl., Ex. 2), had a clear view of the strengths and risks of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. Courts recognize that the opinion of experienced and informed counsel favoring a settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See In re MicroStrategy*, *Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001); *see also Donaldson*, 2021 WL 2187013, at *5 (finding plaintiffs' counsel experienced and thus "able to evaluate the merits of the Class claims and the risks associated with litigation"). Moreover, Plaintiffs actively supervised this litigation and recommended that the Settlement be approved.

These factors favor preliminary approval.

### 3. The Settlement Provides Significant and Certain Benefits and Is Well Within the Range of Approval

The proposed Settlement readily satisfies Rule 23(e)(2)(C). To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. *See, e.g.*, *In re Neustar Inc. Sec. Litig.*, 2015 WL 5674798, at *11 (E.D. Va. Sept. 23, 2015) (the *Jiffy Lube* adequacy analysis "weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement"). The $37 million recovery, which is over four times the median recovery in securities class actions in 2021,[5] is objectively an excellent result for the Settlement Class. In light of the risks of continued litigation and potential outcomes at trial, Plaintiffs believe that the Settlement falls well within the range of possible approval. While Plaintiffs believe that the claims asserted against Defendants were strong and that substantial evidence to

---

[5] *See* Lieberman Decl., Ex. 3 at 4 (finding that median securities class action settlement in 2021 was $8.3 million).

support the allegations has been adduced, they recognize that there are significant risks to establishing both liability and damages. Furthermore, the settlement secures $37 million for the Settlement Class from a company that has significantly increased its debt load since the date of the filing of the Complaint.

As an initial matter, Plaintiffs would face challenges in proving to the ultimate fact finder that the statements made by Defendants were materially false and misleading and that Defendants acted with scienter. Defendants strenuously argued at the motion to dismiss, and would continue to maintain at summary judgment and trial, that (among other things) Plaintiffs would not be able to prove that Defendants' statements were materially false and misleading. For example, Defendants would likely seek to present evidence that Defendants' alleged misstatements did not materially misrepresent 2U's enrollment and marketing dynamics.

Defendants would have also likely argued that even if the alleged misstatements were found to be misleading, Defendants did not act intentionally or recklessly (*i.e.*, with scienter). Defendants would likely seek to present testimonial evidence that the Individual Defendants did not believe that 2U had engaged in any wrongful conduct.

Plaintiffs would also have continued to confront considerable challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Defendants likely would have asserted that Plaintiffs cannot prove loss causation or damages because they cannot identify a correction of an alleged misstatement that caused 2U's stock price to decline. In particular, Defendants would have continued to argue that the disclosures by 2U were materializations of risks fully known to investors (and disclosed by Defendants) prior to their purchases during the Class Period.

The fact that Plaintiffs overcame Defendants' motion to dismiss was not a guarantee of ultimate success. Plaintiffs faced ongoing risks associated with their pending motion for class certification as well as Defendants' forthcoming summary judgment motions, *in limine* motions, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery or no recovery at all. The Court's denial of class certification or granting of summary judgment in Defendants' favor would have resulted in zero recovery for the Settlement Class.

Even surviving summary judgment in full and prevailing at trial would not have guaranteed a recovery larger than the $37 million Settlement. *See Miller v. Asensio & Co., Inc.*, 364 F.3d 223, 235 (4th Cir. 2004) (affirming judgment on jury verdict determining liability but awarding zero damages to plaintiffs); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following jury verdict for plaintiffs on liability, district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence of loss causation), *aff'd*, 688 F.3d 713 (11th Cir. 2012).

Furthermore, 2U's ability to satisfy a future judgment, in the absence of the Settlement, is uncertain. As of December 31, 2020 (when Defendants' motion to dismiss was pending), 2U reported cash and cash equivalents of over $500 million. *See* Lieberman Decl., Ex. 4 (Annual Report on Form 10-K for fiscal year ending December 31, 2021 for 2U, Inc.) at 65. By March 31, 2022, that figure had declined to less than $217 million. *See* Lieberman Decl., Ex. 5 (Quarterly Report on Form 10-Q for period ending March 31, 2022 for 2U, Inc.), at 4. Furthermore, 2U's market capitalization has nosedived from approximately $3.1 billion to only approximately $675 million during the past ten months (from August 5, 2021 to June 1, 2022), a decline of nearly 80%.

Thus, there is no guarantee that, even if Plaintiffs obtained a judgment, 2U would be capable of contributing to it. Furthermore, any applicable insurance policies could be depleted by the costs of litigating this action through summary judgment and trial (as well as related derivative actions), potentially leaving next to nothing for Plaintiffs and class members.

The Settlement eliminates these challenges and other risks and achieves a fair and certain result. The fact that the Settlement eliminates substantial delay and expense strongly weighs in favor of preliminary approval. *See Winingear*, 2014 WL 3500996, at *2.

In sum, the proposed Settlement would satisfy Rule 23(e)(2)(C)(i).

### a)      The Effective Process for Distributing Relief to the Class

The Net Settlement Fund, like the vast majority of securities class action settlements, will be distributed to Authorized Claimants with the assistance of an established and experienced claims administrator. The Claims Administrator will employ well-tested protocols and procedures for the processing of claims. Namely, a potential class member will submit, either by mail or online, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determining each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶27. Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to remedy any deficiencies or contest the rejection of their claims. Preliminary Approval Order at ¶31. Any claim disputes that cannot be resolved will be presented to the Court for a final determination.

After the Settlement reaches its Effective Date (Stipulation at ¶38) and the claims process is completed, Authorized Claimants will be issued payments. If there are unclaimed funds after

the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a subsequent distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).

    **b)**   **The Settlement Does Not Excessively Compensate Plaintiffs' Counsel**

   The reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files their motion for attorneys' fees and expenses in advance of the Settlement Fairness Hearing. The Settlement does not contemplate any specific award; nor is it the subject of any agreement between the Parties. Plaintiffs' Counsel will be compensated out of the Settlement Amount, under the common fund doctrine, and will not be compensated by Defendants. The Notice to potential Settlement Class Members states that in connection with Lead Counsel's attorneys' fee and litigation expense application, Lead Counsel will seek no more than 33.4% of the Settlement Fund. Courts routinely award attorneys' fees at that percentage of a settlement fund for similar and *even higher* recoveries. *See, e.g., Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (awarding one-third of $25 million settlement fund); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.33% of $510 million settlement fund); *Landmen Partners Inc. v. The Blackstone Grp., L.P.*, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 13, 2013) (awarding 33.33% of $85 million settlement fund); *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank N.A.*, No. 0:10-cv-04372, ECF No. 686, at 8 (D. Minn. Aug. 18, 2014) (awarding 33.33% of $62.5 million settlement fund); *Grae v. Corrections Corp. of Am.*, No. 3:16-cv-02267, ECF No. 478, at 1 (M.D. Tenn. Nov. 8, 2021)

(awarding 33.33% of $56 million settlement fund); *La. Wholesale Drug Co. v. Bristol-Meyers Squibb Co. (In re Buspirone Antitrust Litig.)*, 2003 U.S. Dist. LEXIS 26538, at *11 (S.D.N.Y. Apr. 11, 2003) (awarding 33.3% of $220 million settlement fund).

Plaintiffs' Counsel will also seek payment of litigation expenses incurred during the prosecution of the Action, in an amount not to exceed $425,000. Plaintiffs will also seek awards of no more than $60,000 in the aggregate to reimburse Plaintiffs for their time and expense in representing the Settlement Class, as provided in 15 U.S.C. § 78u-4(a)(4). Accordingly, the proposed Settlement would satisfy Rule 23(e)(2)(C)(iii).

      c)      **The Relief Provided in the Settlement Is Adequate, Taking Into Account All Agreements Related to the Settlement**

Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. On April 28, 2022, the Parties entered into the MOU and on May 31, 2022 they entered into the Stipulation and a confidential Supplemental Agreement regarding requests for exclusion (the "Supplemental Agreement"). Stipulation at ¶40. The Supplemental Agreement provides that 2U has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class. *See, e.g.*, *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental

Agreement, Stipulation, and MOU are the only agreements concerning the Settlement entered into by the Parties.

### 4.     Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to Plaintiffs or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Plaintiffs, will receive a *pro rata* distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[6] The proposed plan was created by Plaintiffs' damages expert and is consistent with Plaintiffs' theories of damages under the Exchange Act and Securities Act. All Settlement Class Members that were allegedly harmed as a result of the alleged misstatements and omissions, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. Notice at p. 29. *See, e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

### C.     The Court Will Likely Be Able to Certify the Settlement Class

Certification of the proposed Settlement Class for purposes of the Settlement is appropriate under Rules 23(a)(1)-(4), 23(b), and 23(e) of the Federal Rules of Civil Procedure. Certification of a settlement class is not disputed. As set forth in the Stipulation, "For purposes of the Settlement and for no other purpose, Defendants stipulate and agree to certification of the Action as a class action pursuant to Rules 23(a)(1)-(4), 23(b), and 23(e) of the Federal Rules of Civil Procedure." Stipulation at ¶2.

---

[6] Plaintiffs will seek reimbursement of their reasonable costs and expenses directly related to their participation in the Action, pursuant to the PSLRA. This does not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

As set forth in paragraphs 1(qq) and 2 of the Stipulation, the Parties have stipulated to the following Settlement Class:

> all persons and entities who purchased or otherwise acquired publicly traded 2U Securities during the period from February 26, 2018 through July 30, 2019, both dates inclusive, and were allegedly damaged thereby.

Defendants and certain of their related parties, and any persons who exclude themselves by submitting a valid and timely request for exclusion that is accepted by the Court, are excluded from the Settlement Class. Stipulation at ¶1(qq).

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See, e.g.*, *NeuStar,* 2015 WL 5674798, at *2; *Mills II*, 265 F.R.D. at 266. A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (explaining that, when determining whether to certify a settlement class, courts need not consider the last factor, "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citation omitted); *NeuStar*, 2015 WL 5674798, at *8.

Here, the requirements for certifying a class are met, as discussed below and in Plaintiffs' previously filed motion for class certification, *see* ECF No. 210.

### 1.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### a)    Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). A "class of as few as 25 to 30 members raises the presumption that joinder would be impracticable." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991). "[P]laintiffs need not demonstrate with precision the number of persons in the purported class to satisfy the requirement that joinder is impracticable where such a conclusion is clear from reasonable estimates." *Id.* The numerosity requirement is "seldom disputed in securities fraud cases." *In re BearingPoint Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006); *In re The Mills Corp.*, 257 F.R.D. 101, 104-105 (E.D. Va. 2009) ("*Mills I*") (same). In cases involving publicly listed companies, "the numerosity requirement has been met by a showing that a large number of shares were outstanding and traded during the relevant period." *Longman v. Food Lion, Inc.*, 1994 WL 686624, at *2 (M.D.N.C. Oct. 17, 1994).

The proposed Settlement Class consists of tens of thousands of members, if not more. 2U's common stock actively trades on the NASDAQ. The Company's Form 10-K for 2021 reported that there were approximately seventy-five million shares of 2U stock outstanding as of December 31, 2021. Investors are geographically dispersed, with some purchasing only a few shares. Accordingly, the joinder of this vast number of investors would be impractical, and the "numerosity" requirement is satisfied.

### b)    Commonality

Rule 23's "commonality" requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not "'require that members of the class have identical factual and legal claims in all respects.'" *BearingPoint*, 232 F.R.D. at 538. Where "various of defendants' acts and omissions are at the center of th[e] case, it follows that there are a number of questions of both law and fact common to all members of the proposed

class." *Id.* at 539. "Members of a proposed class in a securities case are especially likely to share common claims and defenses." *Mills I*, 257 F.R.D. at 105.

Here, Plaintiffs' and proposed Settlement Class Members' claims arise out of similar misstatements and omissions, raising a host of common questions, such as:

1. whether Defendants' alleged acts and omissions violated the federal securities laws;

2. whether Defendants disseminated any public statements during the Class Period that contained material misrepresentations or omitted material facts;

3. whether Defendants acted knowingly, or with recklessness, in misrepresenting or omitting those material facts;

4. whether the market price of 2U's stock was artificially inflated during the Class Period due to the alleged false and misleading statements or omissions;

5. whether the Registration Statement and the Prospectus Supplement were inaccurate and misleading, contained untrue statements of material facts or omitted to state other facts necessary to make the statements therein not misleading; and

6. whether Plaintiffs and other members of the Settlement Class suffered damages, as well as the appropriate measure thereof.

Courts have repeatedly held that these exact types of common questions satisfy Rule 23(a)(2)'s requirement of common issues. *See, e.g., BearingPoint,* 232 F.R.D. at 539; *Mills I*, 257 F.R.D. at 105.

### c) Typicality

Rule 23(a)'s "typicality" requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As with commonality, the "typicality" requirement "does not mean that members of the class must have 'identical factual and legal claims in all respects.'" *Mills I*, 257 F.R.D. at 105. Rather, it "'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Comput. Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 117-18 (E.D. Va. 2012). "Typicality is rarely lacking in

securities class actions." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991) (citing *Miller v. Central Chinchilla Grp., Inc.*, 66 F.R.D. 411, 414 (S.D. Iowa 1975)).

Plaintiffs and members of the Settlement Class all purchased 2U common stock during the Class Period and assert the same Section 10(b) claims under the Exchange Act and/or Section 11 and 12(a)(2) claims under the Securities Act based on the same misstatements and omissions, and assert the same Section 20(a) and Section 15 allegations of "control person" liability. The legal and factual arguments Plaintiffs advance are the same arguments that other Settlement Class Members would advance in support of their claims. Accordingly, Plaintiffs satisfy the "typicality" requirement.

### d)      Adequate Representation

Rule 23's "adequacy" requirement is met when the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The requirements for adequate representation under Rule 23(a)(4) are that the named plaintiffs have no conflict of interest with the class and that a qualified and experienced attorney is obtained for the purpose of litigation." *Longman*, 1994 WL 686624, at *2-3.

Plaintiffs are unquestionably adequate. They purchased 2U securities during the Class Period and were injured by the same material misrepresentations and omissions that injured the other Settlement Class Members. They have demonstrated their commitment to monitor and supervise the prosecution of this Action on behalf of the Settlement Class. They have, among other things, reviewed the pleadings and motions in this Action, provided documents and maintained regular communications with Lead Counsel, made themselves available for deposition preparation and depositions (which did not occur due to settlement), and remained actively involved in settlement negotiations.

Finally, Plaintiffs have protected the interests of the Settlement Class by retaining Lead Counsel to represent the class. *S.C. Nat'l Bank*, 139 F.R.D. at 331 ("[C]ourts generally hold that the employment of competent counsel assures vigorous prosecution."). Plaintiffs respectfully submit that their counsel satisfy the adequacy requirement of Rule 23(a)(4). Lead Counsel are nationally recognized for their work prosecuting large, complex securities class actions such as this one. As discussed above, Lead Counsel are among the most experienced class action law firms in the country, with proven track records of success, including within this Circuit. *See, e.g., Klein v. Altria Grp., Inc. et al*, No. 3:20-cv-00075 (E.D. Va. Mar. 31, 2022), ECF No. 320 (approving $90 million dollar settlement, certifying settlement class, and finding Pomerantz LLP as adequate lead counsel).

### 2.     Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614-15 (internal quotations and citations omitted). Certification of the Settlement Class for settlement serves these purposes. Courts in this District have explained that "[s]ecurities fraud actions typically meet the Rule 23(b)(3) requirement because the claims relate to acts or omissions of the same defendants and damages of individual class members might be too small to provide incentive for the individuals to sue." *Mills I*, 257 F.R.D. at 109; *BearingPoint,* 232 F.R.D. at 542 (same).

The predominance and superiority requirements are readily satisfied. Questions common to all Settlement Class Members predominate over any questions affecting only individual Settlement Class Members. As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud. *Amchem*, 521 U.S. at 625; *see also NeuStar*, 2015 WL 5674798, at *5. When, as here, securities traded in an efficient market, class-wide reliance is presumed.[7]

Proceeding as a class action is also superior to other available methods for resolution of the Settlement Class Members' claims. *See, e.g., City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 685–86 (D. Md. 2018) ("Securities fraud cases are thought to be particularly appropriate for treatment under Rule 23(b)(3) because the elements of the claim tend to relate to the conduct of the defendants, not to the individual plaintiffs.").

### D.       Notice to the Settlement Class Should Be Approved

The threshold requirement for the approval of class notice is whether the proposed notice program is reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, and the class members' rights to opt out of the Settlement Class or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the discretion of the Court. *See Beaulieu v. EQ Indus. Servs.*, 2009 WL 2208131, at * 28 (E.D.N.C. Apr. 20, 2009) ("While [Rule 23] does not spell out the required contents of the settlement notice, it must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'").

---

[7] *See Basic Inc. v. Levinson,* 485 U.S. 224 (1988); *see also, e.g., NeuStar,* 2015 WL 5674798, at *7 ("Trading volume of this magnitude on a prominent national exchange . . . is sufficient to justify a strong presumption of market efficiency.") (citing *Computer Scis.,* 288 F.R.D. at 119).

The contents of the notice should describe the settlement and class members' ability to seek exclusion "clearly and concisely . . . in plain, easily understood language." *Arthur v. SunTrust Bank (In re LandAmerica 1031 Exch. Servs. Inc. IRS 1031 Tax Deferred Exch. Litig.*), 2012 WL 13124593, at *7 (D.S.C. July 12, 2012). A long-form notice must also satisfy the requirements set forth in the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7).

The proposed long-form notice to the Settlement Class more than satisfies these requirements. The Notice is written in simple language and includes: (i) basic information about the lawsuit and the definition of the Settlement Class; (ii) a description of the benefits provided by the Settlement; (iii) an explanation that any claims against Defendants that could have been litigated in the Action will be released if the Settlement Class Member does not opt out and the Settlement is approved; (iv) contact information for Lead Counsel; (v) an explanation of how Settlement Class Members can obtain the Settlement benefits; (vi) an explanation of how Settlement Class Members can exercise their right to opt-out or object to the Settlement; (vii) information regarding Lead Counsel's application for attorneys' fees and expenses, specifically that they will seek no more than 33.4% of the Settlement Fund in attorneys' fees and no more than $425,000 in litigation expenses; (viii) the Settlement Fairness Hearing date; (ix) an explanation of how to submit a notice of appearance for the Settlement Fairness Hearing; and (x) the Settlement website and a toll-free number where additional information can be obtained. *See* Lieberman Decl., Ex. 1 (Stipulation), Ex. A thereto (Proposed Preliminary Approval Order), and Ex. A-1 thereto (proposed long-form notice). Thus, the Notice satisfies the content requirements of Rule 23 and the PSLRA.

Additionally, the proposed dissemination program for notice satisfies due process. *See Eisen*, 417 U.S. at 173 (finding notice program to be the "best notice practicable under the

circumstances" where it includes "individual notice to all members who can be identified through reasonable effort."). As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator[8] will mail the Notice and Claim Form to all Settlement Class Members who can be identified with reasonable effort, including through 2U's transfer records. The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. After entry of the proposed Preliminary Approval Order, the Stipulation and its exhibits, the Preliminary Approval Order, and the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) will be posted on the Claims Administrator's website. Additionally, the Summary Notice (Exhibit 3 to the Preliminary Approval Order) will be published in *Investor's Business Daily* and transmitted online over a national newswire service.

The proposed notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

This combination of individual first-class mailed notice to all potential Settlement Class Members who can be identified with reasonable effort and publication of notice in *Investor's Business Daily* and online over a national newswire service meets all the requirements of Rule 23 and due process. *See, e.g., Neustar*, 2015 WL 5674798, at *12.

---

[8] Plaintiffs respectfully request that the Court approve retention of Epiq as the Claims Administrator for this case. It is a nationally recognized notice and claims administration firm and has extensive relevant experience. Its staff consists of experienced CPAs, IT specialists and various other professionals with substantial experience in notice and claims administration. *See* Lieberman Decl., Ex. 6.

Accordingly, Plaintiffs respectfully submit that the proposed Notice, Claim Form, and Summary Notice, and the related procedures, are appropriate and should be approved.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the schedule below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Fairness Hearing is scheduled. If the Court agrees with the proposed schedule, Plaintiffs respectfully request that the Court schedule the Settlement Fairness Hearing for a date approximately 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Fairness Hearing | 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Mailing of Notice and Proof of Claim | No later than 20 calendar days after entry of the Preliminary Approval Order ("Notice Date") |
| Publication of Summary Notice | No later than 10 calendar days after the Notice Date |
| Deadline for requests for exclusion or objections | Received no later than 21 calendar days prior to the Settlement Fairness Hearing |
| Date for Plaintiffs to file and serve papers in support of final approval the Settlement, the Plan of Allocation and for application for attorneys' fees and expenses | No later than 35 calendar days prior to the Settlement Fairness Hearing |
| Date for Plaintiffs to file reply papers in support of final approval of the Settlement, the Plan of Allocation and for application for attorneys' fees and expenses | Seven (7) calendar days prior to the Settlement Fairness Hearing |
| Date for Claims to be submitted | Postmarked no later than 90 calendar days after the Notice Date |
| Affidavit or declaration of mailing and publishing notice, and list of all who have submitted a timely Request for Exclusion and determinations as to whether any Request for Exclusion was not submitted timely | No later than seven (7) calendar days before the Settlement Fairness Hearing |

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant the requested relief. The Parties' agreed-upon form of proposed Preliminary Approval Order, with exhibits, is attached to the accompanying Motion.

DATED: June 2, 2022                     Respectfully submitted,


**POMERANTZ LLP**

_By: /s/ Jeremy. A. Lieberman_

Jeremy A. Lieberman (admitted _pro hac vice_)
Emma Gilmore (admitted _pro hac vice_)
Villi Shteyn (admitted _pro hac vice_)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com
vshteyn@pomlaw.com

_Counsel for Lead Plaintiff Fiyyaz Pirani and Lead Counsel for the Class_

**GOLDMAN & MINTON, P.C.**

Thomas J. Minton – No. 03370
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
Telephone: (410) 783-7575
Facsimile: (410) 783–1711
Email: tminton@charmcitylegal.com

_Counsel for Lead Plaintiff Fiyyaz Pirani_

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484

Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for Lead Plaintiff Fiyyaz Pirani*

**LABATON SUCHAROW LLP**

James W. Johnson (admitted *pro hac vice*)
Michael H. Rogers (admitted *pro hac vice*)
Lara Goldstone (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
lgoldstone@labaton.com
jchristie@labaton.com

*Counsel for Additional Named Plaintiff*
*Oklahoma City Employee Retirement System*

29

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 2, 2022, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: */s/ Jeremy. A. Lieberman*
Jeremy A. Lieberman