IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

```
- - - - - - - - - - - - - - - - - x
                                  :
IN RE:                            :
                                  :      Civil No. 19-3455-TDC
2U INC., SECURITY CLASS ACTION,   :
                                  :
            Debtor.               :
                                  :
- - - - - - - - - - - - - - - - - x      Greenbelt, Maryland

                                         June 17, 2022
```

**CASE MANAGEMENT CONFERENCE**


BEFORE:   THE HONORABLE THEODORE D. CHUANG, Judge


APPEARANCES:                    JEREMY A. LIEBERMAN, ESQ.
                                ADAM L. ROSENBLOOM, ESQ.
                                Pomerantz, LLP
                                600 3rd Avenue
                                20th Floor
                                New York, New York  10016
                                  On Behalf of the Plaintiffs

                                THOMAS J. MINTON, ESQ.
                                ADAM ROSENBLOOM, ESQ.
                                Goldman and Minton, PC
                                3600 Clipper Mill Road
                                Suite 201
                                Baltimore, Maryland  21211
                                  On Behalf of the Plaintiffs

                                JAMES W. JOHNSON, ESQ.
                                Labaton Sucharow, LLP
                                140 Broad St.
                                New York, New York  10005
                                  On Behalf of the Plaintiffs


Proceeding recorded by electronic sound recording,
transcript produced by transcription service.

*CompuScribe*
*(301) 577-5882*

```
APPEARANCES (Continued):         WAYNE O'BRIEN, ESQ.
                                 DAVID E. CARNEY, ESQ.
                                 Skadden, Arps, Slate, Meagher &
                                 Flom, LLP
                                 1440 New York Avenue, N.W.
                                 Washington, D.C.  20005
                                   On Behalf of the Defendants

                                 J. CHRISTIAN WORD, ESQ.
                                 Latham and Watkins
                                 555 Eleven Street NW
                                 Washington, DC  20004
                                   On Behalf of the Defendants

                                 KEVIN BROUGHEL, ESQ.
                                 Paul Hastings, LLP
                                 200 Park Avenue
                                 New York, New York  10166
                                   On Behalf of the Defendants

Audio Operator:                  Dianne Solomon

Transcription Company:           CompuScribe
                                 P.O. Box 789
                                 Cheltenham, Maryland  20623-9998
```

## I N D E X

                                                                    Page

Preliminary Matters                                                    3

Discussion - Re: Claims Administrator Notice Deadline

   by Jeremy A. Lieberman, Esq.
   On Behalf of Plaintiff                                        6

   by James W. Johnson, Esq.
   On Behalf of the Plaintiff                                   19

Additional comments by Jeremy A. Lieberman, Esq.                     21

Decision by Judge Theodore D. Chuang                                 36

KEYNOTE:   "---" Indicates inaudible in transcript.
         "*" Indicates phonetic spelling in transcript.

P R O C E E D I N G S

(Whereupon, at 10:05 a.m., the proceeding began.)

THE COURT:  This is Judge Chuang.

THE CLERK:  The matter now pending before this Court is Civil Action Number TD-19-3455k In Re: 2U Inc., Securities Class Action.  We are here today for a case management conference.  Counsel, please identify yourselves for the record.

MR. LIEBERMAN:  Good morning, Your Honor.  Jeremy Lieberman, Pomerantz, LLP.  I will be speaking on behalf of Plaintiffs.

THE COURT:  Good morning.

MR. MINTON:  Good morning, Your Honor.  This is Thomas Minton, from Goldman and Minton, for the Plaintiffs. I am local Counsel.  I will just be listening in.

THE COURT:  Okay.  Good morning.

MR. MINTON:  Good morning.

THE COURT:  Anybody else for the defense?

MR. WORD:  Good morning, Your Honor.  This is Christian Word, from Latham and Watkins.  I represent the 2U Defendants, and I am with my colleague Adam Rosenbloom.

THE COURT:  Okay.  Anyone else --- to be identified?  Go ahead.

MR. BROUGHEL:  Good morning, Your Honor.  Kevin Broughel, Paul Hastings, LLP, on behalf of the underwriter

bek                                                                    5

Defendants.

MR.            :  Good morning, Your Honor.  --- and

David Carney as well from Skadden, Arps, Slate, Meagher, and

Flop, on behalf of the director Defendants.  And --

(Simultaneous discussion.)

THE COURT:  Can you just give your name again?

That was -- the connection wasn't very --- at the beginning

there.

MR. O'BRIEN:  Yes.  It is Wayne O'Brien from the

firm of Skadden, Arps, Slate, Meagher & Flom, LLP, along with

my colleague David Carney, on behalf of the director

Defendants.

THE COURT:  Okay.  So, I wanted to -- I saw in the

filling on the motion that the parties suggested we didn't

need a full blown hearing at this stage, and I don't disagree

with that.  I am going to -- and I did have a few questions

about the settlement and the proposed order that I thought it

was just be more efficient to talk to you about.

And I am not sure who it should be directed to.

So, you can decide among yourself who can answer the question

depending on what they are.  Just looking at the settlement

agreement itself, I wanted to get some clarification on a

couple things.  First off, on Page 3, the statement of the

settlement amount, it says, "The net settlement --- is the

settlement from net taxes and tax expenses, --- and

bek                                                                6

administration costs, and the --- litigation expenses and awards to the Plaintiffs." And I wanted to see if someone could explain to me what the taxes and tax expenses would be.

MR. LIEBERMAN: Sure, Your Honor. Jeremy Lieberman from Pomerantz, on behalf of Plaintiffs. You know, there will be a settlement fund that, you know, 30 days after preliminary approval order. That will be put into an escrow account and taxes will be paid on interest earned from that escrow account. And so, that -- you know, that is deducted from the ultimate distribution.

THE COURT: So, just the interested that is earned while the fund is sitting there waiting for things to happen?

MR. LIEBERMAN: Yes. There should -- --- should not be any other taxes, you know, put on it. But there -- the settlement fund does file returns and does pay taxes.

THE COURT: And tax expenses is what? Just whoever has to help process that?

MR. LIEBERMAN: Yes, exactly. Exactly.

THE COURT: So, would it be fair to conclude though that taxes and tax expenses, whatever those are, the --- on interest earned or whatever, that they will not take us below 37 million in terms of what the fund is?

MR. LIEBERMAN: No. It shouldn't, Your Honor.

THE COURT: So, the only -- that might do that would be the notice of administration costs, and then the

attorneys fees and expenses, correct?

MR. LIEBERMAN:  Correct.

THE COURT:  Okay.  And then relatedly, I think I saw somewhere that the expenses -- and this is something separate from the attorneys fees -- is expected to be about 425,000?  And it may have been --

MR. LIEBERMAN:  Yes.

THE COURT:  -- --- but could someone just summarize what that -- what does into that amount?

MR. LIEBERMAN:  Sure, Your Honor.  You know, we want it to be, you know, conservative in the notice to make sure that we had -- you know, in case there were bills and things that we didn't properly anticipate that we -- that the class is notified of the, you know, ultimate, you know, feeling for expenses.

But expenses will look like, you know, damages analysts, funds spent on investigators, any other exports that would have been employed with respect to prosecuting this litigation.  But that is the breadth of it.  The expenses for hosting the data and the documents that have been produced.  Along those lines.

THE COURT:  And these are all expenses --

MR. LIEBERMAN:  ---

THE COURT:  -- that Plaintiff has incurred up to now?

MR. LIEBERMAN:  That is correct, yes --

THE COURT:  And protected anything else remaining that is, for some reason, ---.

MR. LIEBERMAN:  That is correct.  We anticipate that number will be less than 425,000, but we don't want to be in a situation where we noticed something and then all of a sudden, somehow, we forgot about some bill.  And then, all -- then, we are put in a position where the class has not been notified about the, you know, potential exposure.

THE COURT:  What about the notice on administration costs?  Where --

MR. LIEBERMAN:  Okay.

THE COURT:  And it may be in there, but if you could just summarize for me -- I mean, I know what they would be, but in terms of what the projected amount would be, based on -- I mean, I already identified a potential contractor ---.

MR. LIEBERMAN:  Sure.  It would run between -- Your Honor, between $400,000 to $600,000, in our experience.  We don't have a, you know, direct amount but that is typically -- you know, based on the shares of our --- and the cost and notice cost, that is typically what that would run.

THE COURT:  Okay.  So, what you are projecting then is potentially -- although you are saying probably well less than this, $1 million for these expenses.  And we are talking

about 36 million.  And the taxes wouldn't effect it.  So, 36 million leftover for the class, not including the attorneys fees which is about a third, correct?

MR. LIEBERMAN:  That is correct, Your Honor.

THE COURT:  Okay.  And am I correct that before this final approval -- and maybe this is -- and maybe it is fair also for Plaintiff's Counsel that although it appears that the plan that the attorneys --- would be effectively a contingency --- the arrangement.  Will he provide me with sufficient information to do a lodestar analysis, or actually to do it for me, and then I could check it, to get a sense of how much actually was spent, in terms of the reasonableness of this amount?

MR. LIEBERMAN:  Sure.  The preliminary approval order contemplates -- I will make a fee application 35 days before the final hearing.  And as part of that application, we intend to provide Your Honor with the full detail of -- on the hours expended, how those hours were expended, and work done by the Plaintiffs' Counsel that would justify a fee request.

THE COURT:  And right now -- I mean, obviously, we are not done, but do you have a sense of what those fees are, just in raw billable hours?

MR. LIEBERMAN:  Oh, in raw billable hours, I am thinking -- my sense is somewhere between $8 to $10 million.

THE COURT: Okay. Okay. And I take it then that this 33 percent -- again, some of this may be in the -- elsewhere in the filing and I understand that, that 33 percent was agreed upon with the --- class Plaintiffs and so forth?

MR. LIEBERMAN: Yes. That is correct.

THE COURT: Okay. So then, getting to -- I believe it is on Page 19 of the settlement agreement, Paragraph 61. It says that, "Lead Counsel may apply for awards to Plaintiff in an amount not to exceed 60,000 in connection with their representation." So, I thought there would be a little more certainty about what the lead -- what the Plaintiffs would get. And so, maybe you can clarify for me why it is just not to exceed 50,000. I mean, it could be anywhere from zero to 60,000.

MR. LIEBERMAN: I mean, I think it is fair. I mean, we -- again, we want to have time to set the notice. We want to have time to look at the hours expended by the Plaintiffs. But it is fair to say that we have set that number and that is likely -- in all likelihood, we -- in our request, you know, we want to be -- flexibility --- -- and to see if, you know, we --- to get more of this information from our Plaintiffs as to how much time they spent on the case, as part of being -- actively Plaintiff, and the time and energy that they put it into it. And then, make sure that we ---

that it was justified.  So, the short answer to that, we anticipate, you know, requesting award for 60,000

THE COURT:  Well, I guess I am just trying to understand how that works in that -- remind me again.  How many named plaintiffs are there?

MR. LIEBERMAN:  There are two plaintiffs.

THE COURT:  Okay.  And was there any kind of arrangement with them?  You know, they said that they agreed to 33 percent on attorneys fees, or thereabouts.  Did you --

MR. LIEBERMAN:  Yes.

THE COURT:  -- have -- is there some contract where what they get is spelled out in some fashion?

MR. LIEBERMAN:  No, no.  We are not -- you know, it is -- the only thing is within the certification is that we can make an application, and it is subject to be -- approval of the Court, and it is based upon the time that they had expended in the litigation.

But there is no -- we don't make any representations as to -- at the outset of litigation or any point as to what the Court will give, or what we will request as we started to prepare for the settlement that we -- you know, obviously, that was -- there is typically a Plaintiff's award.  And so, that was discussed on the Plaintiff's side. We thought that was -- fell within the range of

bek                                                                    12

reasonableness, and that is what we thought was something

that we could request of the Court.

THE COURT:  Yes.  I guess I am just trying to

understand what does it mean.  Like, how much time?  I mean,

you are saying -- I mean, honestly, in these cases, I don't

think the named Plaintiffs usually do a whole lot.  Maybe

they get deposed, but other than that -- so, I am not sure

how that factors in.

And if you are talking about whether this is -- you

know, how much is leftover for the rest of the class.  I

mean, if that is a factor -- is that a factor?  Or what other

factors that go into this decision, rather than just having

it in the settlement agreement right now as to how much they

are going to get?

MR. LIEBERMAN:  No.  I mean, the factor -- well,

the factor is is that we didn't --- to, you know, review the

-- review our client's hours.  Typically, of course, you look

at the time spent in overseeing litigation and what -- we

didn't have that, you know, full information yet for making

the application for preliminary approval.

If Your Honor wants us to just state in the notice

explicitly that that will be the request, we can change that,

certainly.  At this stage we said, you know, let's say what

the outer limits will be and then we will make an application

to come 35 days before the final approval hearing.

bek                                                                            13

(Simultaneous discussion.)

THE COURT:  Sorry, go ahead.  You can finish.

MR. LIEBERMAN:  Yes.  The assumption is that it will likely be 60,000 --- to both Plaintiffs combined.

THE COURT:  Oh, combined?  So, only 30 per person?

MR. LIEBERMAN:  That is correct.  That is correct.

THE COURT:  Yes.  I mean, I guess I am still not understanding the concept of -- I mean, what did you expect them to do during the course of this case?  And what would justify saying, "Well, you haven't done a whole lot," or "You haven't done," -- and I don't know what their billable rate would be, so to speak.  But I mean, how you translate and how much time, into how much money?  Like, I don't understand what the analysis would be.

MR. LIEBERMAN:  Yes.  Well, you would look at -- let's say, for -- we have two lead plaintiffs here.  One is an institution.  One is an [sic] individual whose a -- actually runs a hedge fund.  Both are -- you know, both take resources -- time and resources into the case.  And you look at the time overseeing the case, multiplied by a reasonable billable hour.  And if that would translate into something that $30,000 made sense, that -- then, that would be justifiable application.  But that is the analysis.

THE COURT:  So, it is not that different from saying, well, you may have spent whatever, $8 to $10 million,

that you are going to get 12 or 13, and you think that is fair?  But for the named Plaintiffs, you are going to limit it whatever you think their actual value of their time was?  Because we are not --

MR. LIEBERMAN:  ---

THE COURT:  -- doing that on your attorneys fees arrangement.  At least that is not your proposal.

MR. LIEBERMAN:  Well, the attorneys fees arrangement will be based on -- or it will be based on a percentage of the award.  But there will be a lodestar cross-check, which will be based on hours, with some multiplier for the risk that was taken by Counsel.

It is somewhat different here because there is less risk taken by the actual Plaintiffs.  And so, it is a different analysis.  But there is -- certainly, there is authority for compensating the lead Plaintiff and named Plaintiff for their time.  And that is what -- essentially what this will be as a request to --- --

THE COURT:  I understand that.  I guess I would just be interested to find out whether -- you know, given how much you are planning to collect in this case, and how much more it is than the actual hours in time that you spent, I would be interesting to see whether -- you know, how you apply that to your request for the lead Plaintiffs here, you know?

Because it can't possibly be like, "Well, we are only going to give them what they -- the exact value of their time." Because I mean, I just think that would be kind of an ironic position to take, given your approach to the attorneys fees.

MR. LIEBERMAN: Sure. But there is a difference in that, you know --

THE COURT: Without them there is no case, correct?

MR. LIEBERMAN: Without them there is no case. Without --- --

THE COURT: No $12, $13 million that your firm is going to collect, right?

MR. LIEBERMAN: That is correct. But without our firm taking a significant risk, and the resources, and manpower, and expenses, that is really what the -- that is why there is a multiplier on time. I think that Your Honor's question is, "Why should we get a multiplier as Plaintiffs' Counsel, as opposed to the lead Plaintiff?" And the reason for that multiplier is the risk inherent, and the resource and expense allocation, given over a number of years.

THE COURT: No, I understand. I mean, I guess I just didn't understand why -- you don't --- the answer to this question. But I mean, you know how much time you spent, don't you? I mean, up to now?

MR. LIEBERMAN: Well, how much time -- Plaintiffs'

Counsel?

THE COURT:  No, the Plaintiffs themselves.

MR. LIEBERMAN:  I honestly don't.  I have some sense but I really -- we typically don't go through that process until we make the application.

THE COURT:  Okay.  Well, obviously, like I -- I don't think it is unfair right now in the agreement.  I am not saying I think it -- the end result will be fair depending on what you would propose.  So, we will do that at the end, I guess.

And then, I did note -- actually, I don't remember which document.  In my notes here, I have at least one of your documents.  It may have been the proposed order.  Although, maybe it doesn't matter since I -- I mean, I have to sign it and it will be docketed again.  I think it was ----- pages were reversed, in terms of the way they were docketed.

So, the last major question I have is on the proposed order, and it is at Page 7, I believe Paragraph 11.  It says, "Lead Counsel, who the claims administrator shall commence a notice and claim form within 20 calendar days after the Court signs this order."

And what I am concerned about is it doesn't say when the mail is going to be completed.  So, you have setup a pretty aggressive schedule for people to provide notices and

then, you know, for the actual hearing to occur.  But to me, in terms of how much -- how many days are needed after that point, it really is when the mailing is done, or actually when things get in people's hands, rather than when you commence the mailing.

So, maybe you can clarify what that means.  Is there something in this order that puts an end date on when all the mail is -- go out?  Because it doesn't read that way right now.

MR. LIEBERMAN:  Yes.  Right.  My understanding is that maybe -- you know, immediately the claims administrator start notifying the brokerages to either provide them with the information to make notice, or to provide notice themselves.

And so, that process, to some degree, is ongoing. Because as the claims administrator gets more information, and additional addresses, and find additional information regarding potential claimants, they send out notices.  You know, I could circle back to try to get a more definitive answer, but my understanding is that it is an [sic] ongoing process, you know, that occurs substantially within 60 days of the notice date going out.  That would mean 60 days, most notices have gone out to class members.

THE COURT:  Okay.  But then, Paragraph 15 says that they need to file something 90 days from the notice date,

which implies people have three months to decide what to do. But you have just noted that if something goes out 60 days out, then they have less than a month.

MR. LIEBERMAN:  Yes, but that -- well, yes.  Well, you should -- and hopefully, you know, a month should be enough time to decide if you -- you know, what do you want to do about a settlement and if you want to participate with -- you know, I think that would be --- --

THE COURT:  It doesn't read that way to me.  I mean, I think this needs to be longer.  Unless you are willing to put an end date on the mailing.  Sixty days is an awful long time to say a mailing is going to go out.  But if you say it takes that long, I am fine with that.  The question is then, you know, 90 days from the end of the mailing.  That is what I would think.  I mean, this really reads as if you have 90 days and you really don't.

MR. LIEBERMAN:  Right.  Why don't we --

THE COURT:  If it --- than 60 days, that is fine. But I mean, you are paying these folks a lot of money.  They can't get this out in 60 days?

MR. LIEBERMAN:  Right.  No, fair enough.  So, what would be ---, Your Honor?  Let me -- and then we can, you know, work with the claims administrator to get that accomplished.  And what would be the -- Your Honor is saying that they would like -- within 60 days of the preliminary

bek                                                                    19

approval order being granted, or within the notice date?

THE COURT:  Well, you have defined the notice date as the date they commenced mailing, which to me is not a particularly useful date.  Because again, if you are one of the last people to get the mailing, that doesn't really -- that is not -- nowhere your actual date of notice.

MR. LIEBERMAN:  Right.

THE COURT:  So, you could turn the notice date into the date that either mailings are completed.  Or you could say, "Here's a notice date.  Mailings will be completed by X date."  Let's say, you know, 14 days or 21 days after the notice date.  And then we will -- whatever the last date of mailing is, we can then do the rest of the dates off of that.

MR. LIEBERMAN:  Right.  I think it is -- there is definitely --- be a last date of mailing.  I think it is -- but I think there is -- it could be substantially complete, if --- --

THE COURT:  Well, I don't understand that.  I mean, if you are trying to give notice to everyone, and you saying that some people won't get notice -- substantially complete.  So then, there is going to be somebody else who has perhaps not even any time within this 90 day period.  So, I guess I don't understand that.

(Simultaneous discussion.)

MR. JOHNSON:  Your Honor, this is James Johnson

from Labaton Sucharow, also one of the Counsel for Plaintiffs.  And if I might also explain how the notice procedure works.  There are really two stages.  The first is the company generally provides transfer records to the claims administrator, and the claims administrator will mail notice to everyone on those transfer records, within 7 to 10 days, after receipt.

The issue becomes that in addition to that, the claims administrator notices brokerage firms.  And the claims administrator has no authority over the brokerage firms to respond within the period of time.  They are requested to do it within 10 days.  But frequently, the brokerage firms will take longer than that.  And as soon as the claims administrator receives that information they will mail out notices.

So, it is difficult to say that all notices have to be completed by X date, because we don't have control over the brokerage firms.  I think it is fair to say that the majority of class members will be on the transfer records and will receive the notice promptly, after the claims administrator begins the mailing process.

THE COURT:  Well, but there is still nothing in here that puts any deadline on the claims administrator to finish the mailing process.  Just says commence.

(Whereupon, a telephone rings.)

(Simultaneous discussion.)

THE COURT:  --- just -- even if the brokerages respond to them quickly, they could just send those out, you now, six months later.  There is nothing here saying -- putting an end date on it.

MR. LIEBERMAN:  Well, we could think of is to come up with a substantially complete day, whereby -- you know, most of the relevant mailings will have been sent out by X day.  --- --

THE COURT:  Okay.  So, you want to do substantially complete within 60 days?

MR. LIEBERMAN:  Yes.  Yes.

THE COURT:  Okay.  And I mean, that -- you can add that to Paragraph 11, but then that means then that, you know, Paragraph 15, it is 90 days from the date of substantial completion.

MR. LIEBERMAN:  Okay.  I mean --

THE COURT:  And then --

MR. LIEBERMAN:  Because Your Honor feels it would be 90 days from -- to decide what to do?

THE COURT:  I mean, there are some people, including myself, who don't even read my mail for 14 days.

MR. LIEBERMAN:  Right --

THE COURT:  Some things slip through.  You know, there is all of this other junk mail coming in.  I mean, if

the goal here is actually to provide notice to people, then I think you need more time.  If the goal here is just to check boxes to get to the end of the case, then that is a different thing.  So, that was my question about the timing.  And then, if you want to make a case for something shorter than 90, I mean, I am willing to listen to it.  I don't think 30 sound reasonable to me, but something in between is ---.

MR. LIEBERMAN:  Perhaps you work backwards and determine what -- you know, when was the Court available for a final approval hearing, then we could figure out what could be -- you know, how the -- you know, how quickly this process could be done in a way that --

THE COURT:  Honestly, I think it really -- that doesn't sound right to me at all.  It sounds to me like a process has to take as long as it needs to take.  I mean, I can do hearings at various times.  But I mean, if I said I could do a hearing tomorrow that doesn't mean we do the whole thing between now and tomorrow, right?

MR. LIEBERMAN:  No, but we could work backwards as to then whether or not the notice process can be done in sufficient or not, but from that date.  But I mean, I think we can see the claims administrator -- we would think that 60 days from date of preliminary approval is a date that could be -- we could be substantially complete with the notice process.

THE COURT:  Right.  And my point is that since you cannot guarantee completion by any known date, that is why 90 makes sense to me.  I understand that that is more than 90 for people who got the first wave.  So, perhaps if you are telling me these are really only institutional shareholders and not individuals or otherwise, then perhaps we could go with something less than 90, given that the bulk will have, you know, those 60 days from the beginning -- I don't know. I mean, so, I am open to other suggestions.  I just don't think, you know, someone gets something, you know, mailed out 60 days out.  It gets there maybe 70 days out.

MR. LIEBERMAN:  Right.  And I actually --

THE COURT:  Think about it.  All of the sudden, you have got no time at all.

MR. LIEBERMAN:  Right.  So, would Your Honor be amenable to 60 days from preliminary approval is the substantial completion date of the notice.  And then, 60 days thereafter is when they have to file any -- is that when we have the final approval hearing?

THE COURT:  So, substantial completion within 60 days.  And then, the notice and claim form needs to be mailed no later than 60 days after the substantial completion date, right?

MR. LIEBERMAN:  Yes.

THE COURT:  As opposed to the notice date?

bek                                                                      24

MR. LIEBERMAN:  Correct.  Well, and what I am saying is don't -- let's not use the notice date, let's use preliminary approval.  So, basically, 120 days in total to file your claim form from the date of preliminary --- --

THE COURT:  Well, wait a minute.  Wait a minute, wait a minute.  Why are we going back to preliminary approval?  Right now, it is the notice date.

MR. LIEBERMAN:  Oh, because --- --

THE COURT:  Preliminary approval is before the notice date, right?  And then --

MR. LIEBERMAN:  No, exactly.  We think the claims administrator can start the process quite quickly after preliminary approval.  It doesn't necessarily need 20 days.  But --

THE COURT:  But --

MR. LIEBERMAN:  -- would Your Honor --- --

(Simultaneous discussion.)

THE COURT:  -- 20 days right here.  So, I don't understand that.  That is basically just removing any additional time by -- you know, we make it -- we add time for substantial completion, but then we subtract it on the front end because of the -- I mean, why are you in such a hurry to resolve this?  I understand that.

MR. LIEBERMAN:  That is no --- -- Your Honor would like to keep the 20 -- we can keep the 20 days.  That is

fine.  We will keep the 20 days.

THE COURT:  I mean, if you want to change that, you know, they will start within five days, I am fine with that. But if you are giving them the 20 days, I am assuming they are going to take it.  That is how most people operate.

MR. LIEBERMAN:  Right.  Well, I would propose 10 days as a notice date, and then 60 days for substantial completion from the notice date, and then there is file claim form, thereafter.

THE COURT:  And you are sure the claims administrator can do 10 days?

MR. LIEBERMAN:  We are not going to propose it until we are sure of that.

THE COURT:  So, the notice date is 10 days after preliminary approval.

MR. LIEBERMAN:  Yes.

THE COURT:  And then, substantial completion is 60 days after the notice date, correct?

MR. LIEBERMAN:  Correct.

THE COURT:  And then 60 days after that, everything needs to be filed, correct?

MR. LIEBERMAN:  Correct.

THE COURT:  So, let's not use the preliminary approval date.  I think that is just confusing.  So, postmark no later than 60 days after the substantial completion date,

bek                                                                    26

which would be, again, 60 days after the notice date.  And

then, I am not sure what the next date is with --- there is

-- you want to be excluded.  There are 21 days before the

settlement fairness hearing, which we haven't set yet.  And

then, what other dates are there?  There are is --

        MR. LIEBERMAN:  Objection is the same day as the

exclusion deadline.

        THE COURT:  And wasn't there a 35 day issue of the

attorney's fees, 35 days before the hearing?

        MR. LIEBERMAN:  Correct, correct.

        THE COURT:  Yes.  Okay.  Well, obviously, he would

want this hearing date to be sometime after -- I mean, if you

go under my same theory that people need 60 days after

substantial completion to decide if they are going to opt in,

you know, they need at least that amount of time for -- to

opt out, and then for -- to object, once they know what the

situation is.

        And then, it does seem as if -- wouldn't it behoove

all of us to have some time to deal with an objection, if

there is one, or to plan to -- how to deal with it?  So, you

are saying, from your side, if -- and I guess this is all

parties on the call.  I mean, if 21 days before the hearing

there is enough time for you to plan how to argue against the

objection?

        MR. LIEBERMAN:  Sure, sure.

bek                                                                27

THE COURT:  If they were to file an objection you wouldn't want to file a brief of any kind or anything in writing?  You just want to show up at the hearing and talk about it?

MR. LIEBERMAN:  Oh, no, no.  We would -- I assume we have seven days before the hearing for any reply briefs, and that is where we would address any objections.

THE COURT:  Yes.  See, I need more than seven days to review your brief.  I mean, if you want it to be --

MR. LIEBERMAN:  Okay.

THE COURT:  -- considered in a --

MR. LIEBERMAN:  So, we can do it ---.  We can do 14 days.

THE COURT:  So, they basically have -- well, let me see.  And what is 14 days before that?  Which paragraph is that in here?  I don't see.  Where is the four -- the seven day or 14 day --- reply brief or response to the objection paragraph?

MR. LIEBERMAN:  That might be just in the memo in support.  We put a purposed time-line.

THE COURT:  So, it is seven days before file a list of people who have submitted request for exclusion.  That is probably not that big a deal.  The issue of an objection is -- in Paragraph 21.  And that is really just they are objecting -- they are letting everyone -- they are letting

bek                                                                    28

you all know.  But then, in terms of being able to respond to that -- I don't think it is in here, specifically --

MR. LIEBERMAN:  Yes.  It may not be in the preliminary approval letter.  I see it in the memo in support, where we have proposed schedule.

THE COURT:  I am not sure I know --- what is the ECF number ---.

MR. LIEBERMAN:  I think I can chime in and help.  I am looking at a file version, but it is not on ECF.  I think Paragraph 23 of the proposed order.  Actually, my address is.

THE COURT:  Oh, here we go.  So, you are going to file a brief with the attorneys fees, but also why this whole thing should be approved 35 days before the hearing.

MR. LIEBERMAN:  Yes.

THE COURT:  The assumption is the objections will be filed 21 days before, if there are any.  And then, you would file your brief, right, seven days before.  I think I would like to have another -- at least another seven days to consider a reply brief, if there is one, just to be fair given that this -- so, if we built that in, I don't know how that changes the agreement.

I guess it changes that date, but it also means that I do think -- I mean, I think the problem here -- so, if we can add -- in Paragraph 23, we can amend that to say, you know, --- are due -- well, really, I guess the whole thing

have to move back a little bit, right?  Forty-two, twenty-eight, and fourteen.

MR. LIEBERMAN:  Isn't too bad.  Forty-two days before the final approval.

THE COURT:  Right.  And then, that way -- and that goes for the attorneys fee thing, too.  That way, we get everything 14 days before.

MR. LIEBERMAN:  Sure.

THE COURT:  And then, in terms of when a hearing date would be.  I guess, the question really is the math of how much time actually -- we said that the -- I mean, the problem is when we say objections are due 21 days before -- really, in this case, 28 days before the hearing, I am trying to figure out how much time they actually have to consider their objections.  Because I would want to put the hearing date at a point where they have had sufficient time to do that.

MR. LIEBERMAN:  Yes.

THE COURT:  And so, we said people need to opt-in 120 days -- I am sorry -- 60 days after the substantial completion, right?  So --

MR. LIEBERMAN:  Yes.

THE COURT:  -- when would you envision, if it were up to you, would be the right time to do a hearing, just in terms of the sequence of how much time there is from ---.

And with that revised deadline to opt-in, from that point forward.  Again, everyone has had 60 to 120 days to consider what to do about opting in.

The opt-out list I think is due later, but in theory, people probably can make that decision in the same amount of time.  If [sic] they wanted to object, they could perhaps make that decision in the same amount of time but they might need more time, certainly if they wanted to figure out what their objections are and how to articulate that.  So, I would want to give them some time for that.

MR. LIEBERMAN:  And it says 130 days just to --- to make a decision, then we are.

THE COURT:  Maybe the better way to do this is just to look at the calendar and get a sense of what we are dealing with here.  So --

MR. LIEBERMAN:  Sure.

THE COURT:  -- if this gets approved pretty soon -- today is what, June 17th?  So, this gets approved pretty soon.  Then, right now you are saying 10 days to get the notices out.  Which let's say it gets approved on Monday.  So, 10 days takes us out to the 30th.  And then, we said 60 days for substantial completion, which would take us out to --

MR. LIEBERMAN:  ---

THE COURT:  Then, 60 days to respond.  So, 120 days

as opposed to 90, but we have shaved the 10 days off. So, --- 30th. So, July, August, September, October. That is four months. And at that point, the next date that shows up actually counts backward from the hearing date, it is 42 days, right?

MR. LIEBERMAN: Right.

THE COURT: But I assume -- so, I mean, at what point would you be in a position to file your brief? You know, to the extent that -- knowing the side of the class, and so forth?

MR. LIEBERMAN: Oh, but I mean, I think that is, you know, any time, you know -- for as far as we are concerned, any time within that 60 days, we are prepared to file that brief.

(Simultaneous discussion.)

THE COURT: --- they would have that all -- that entire notice period --- below. Let's assume they are late in the notice game, they --- --

MR. LIEBERMAN: Yes.

THE COURT: -- that four month period. And then, they have -- you know, at some point, they will see your brief, and then they have the 14 days only to respond. So, I would say, if we set it -- again, July, August, September, October. So, let's say your filing your brief some time in October or November, then they start doing their thing. So,

bek                                                                   32

with that schedule of the 60 plus 60, which takes us to the

end of October, when would you be in a position to file your

brief?  --- right --- --

          MR. LIEBERMAN:  Well, we could file -- we can file

a brief -- as far as from our perspective, we could file it

even some time in October, if that is -- if the Court feels

that --

          THE COURT:  Well, what if I were to say how am I

supposed to decide if it's fair if I don't know the size of

the class?  You won't know that in October --

          MR. LIEBERMAN:  Well, Your Honor, I mean, you won't

know the size of the class -- even all the claims -- you

would have to get all of the claims in, and you would have to

process them.  That on its own is a -- you know, the size of

the class we had based on the float.

          THE COURT:  Yes.

          MR. LIEBERMAN:  And based on the share of the trade

and not --

          THE COURT:  And at least --- having a good idea.

          MR. LIEBERMAN:  The claims administrator would have

to process -- unfortunately, that is a number of months.  You

know, we typically don't do that because that is -- the

claims administrator has to go through each claim, how many

shares are represented in claim, are they legitimate, are

they not, put them into the program.  Because it is not --

THE COURT:  Well, --- give us a general sense.  Not an exact number, but a ballpark number and what --- --

MR. LIEBERMAN:  They could probably, you know, within -- whatever claims then -- you know, they can give some sense as to the level of claims that come in.  You know, typically, we get that, you know, a few weeks before the hearing date.  So, some time -- again, I think that is really going to depend on what the claim filing deadline is.

You know, within -- if you have the claim filing deadline a week before the hearing, then you can come to the hearing having a sense as to what, you know, what -- how many claims can then -- and what total number of share are, et cetera.  Like, 10 days -- you have 10 days -- claims are done 10 days before the hearing.  You can probably get some sense.  It really doesn't crystalize for, unfortunately, months.  That is just.

THE COURT:  If I had that question how would I get that information?  Because it wouldn't be in your brief because you would have already filed your brief.

MR. LIEBERMAN:  We could update the Court prior to the hearing as to how many claims have come in, how many shares are represented by those claims, et cetera.  We do anticipate that it will be, you know, a number of weeks after the claims deadline to have that crystalize.  I mean, typically, it is even longer than that.  But what we know is

bek                                                            34

based on the -- we know how many shares have traded.  We know the float and that gives us the ability to work through how many shares are damaged, you know, whether -- what is the recovery per share, et cetera.

THE COURT:  You know how many shares but you don't know how many people have opted-in, right?  I mean --

MR. LIEBERMAN:  You won't know that until all the claims processed.  That is correct.

THE COURT:  But you won't even know -- I mean, you can't get a running total from these guys as they are doing it because --

MR. LIEBERMAN:  Yes, sure.  We can definitely get a running total.  We can definitely get something to the Court prior to the hearing.

THE COURT:  I would hope so because again, that is one of my questions.

MR. LIEBERMAN:  Sure I understand --

THE COURT:  --- covered that topic, but it is one of my questions.

MR. LIEBERMAN:  Yes.

THE COURT:  I mean, wouldn't we want to know if everyone is getting, like $.02, or if they are getting more than that?

MR. LIEBERMAN:  Some of that stuff is -- that is a legitimate question for the Court, so.

THE COURT:  I mean, I am not signing off on this, I mean, until I know basically -- at least some general number as to what each claimant is getting.  Because you know, if you are saying, "Well, sign off on this because we get $12 million and we can't tell you what each person gets," I am not doing that.

MR. LIEBERMAN:  I understand --

THE COURT:  When will I have that information?

MR. LIEBERMAN:  It all depends on when the claims deadline is.  We can give you that -- within a few weeks of the claims deadline we can give the Court more information on that.  And then, also, it will all be teed off on.  Getting that information is -- will be teed off on when is the -- when there is a claims deadline.

THE COURT:  Well, right now the claims deadline is basically the end of October.

MR. LIEBERMAN:  Right.

THE COURT:  So, we are talking about mid-October. So, if your brief is filed in mid-October with that information -- again, I don't mean precise, but if it at least gives a general -- a fair approximation, then that is 42 days before, or thereabouts.  In which case, then are approximately 30 -- so then, we are talking sort of early December for a hearing, would be comfortable --- --

MR. LIEBERMAN:  Yes.

bek                                                                    36

THE COURT:  And maybe some of my 14 days review ---
might be in Thanksgiving but that is probably what we are
talking about.  Now again, you can speed this up if you can
get your claims administrator to move faster, but if you are
going to say it takes them 60 days to get everything out,
that is really where the extra time is coming out of, as far
as I see it.

MR. LIEBERMAN:  Okay.  Well, we will talk to the --
we will see what we can get from the claims administrator and
if we can get a shorter time-frame then we -- you know, we
will advise the Court.  But were are looking right now --
that we are looking at a, you know, late November, early
December hearing.

THE COURT:  Right.  So, if you wanted to I could
give you, like, a provisional hearing date now.  But again --

MR. LIEBERMAN:  Yes.

THE COURT:  -- it sort may depend on these other
dates that I have tried to lay out for you, which hopefully
you could perhaps put into an amended order, or a revised
draft in the order.  And then, that would take us to, like I
said, probably the week after Thanksgiving, until something
like, let's say, December 1st, or around, like December --
the week of December 5th, something like that.

MR. LIEBERMAN:  Okay.  So does the Court -- let me
just look at my calendar.  Does the Court have availability

on December 5th?

THE COURT:  You know, maybe -- could we do, like, 9th?  Because I don't have a trial scheduled then, but if we schedule a trial, since we probably will end up needing that time for a trial, then Fridays we don't usually sit.  So, it is less of a conflict.

MR. LIEBERMAN:  Okay.  Would it be able to do in the morning?

THE COURT:  Yes.  I think so.  So, you know, 9:00 o'clock, 9:30, something like that?

MR. LIEBERMAN:  9:30 will be great, if that works for defense Counsel.

MR. WORD:  This is Christian Word from Latham and Watkins.  Yes, 9:30 on the 9th works for us.

THE COURT:  And again, --- --

MR. BROUGHEL:  And Kevin Broughel from -- sorry -- works for Kevin Broughel --- as well.  Sorry, Your Honor.

MR. O'BRIEN:  And Your Honor, the same for the Director Defendants ---.

THE COURT:  All right.

MR. O'BRIEN:  ---

THE COURT:  And that assumes, of course that, you know, the schedule is as I have outlined it.  I mean, obviously, if you can get the claims administrators to move faster then I think we can still keep that date.  If you

bek                                                                    38

wanted me to move it up a week or two I could, but then we

are bumping up on Thanksgiving.

If for some reason this schedule just basically --

again, as you have described it, 10 days to do the -- start

the notice at the notice date.  And then, 50 days for

substantial completion, and then another 60 days, they are

going to file their papers, then this works.  If for some

reason they need more time than that, we might need to push

the hearing date back, you know?  --- --

MR. LIEBERMAN:  I am just ---.

THE COURT:  Okay.  So, how about this then?  My

substantive issues, I think you have answered my questions.

Just on this scheduling issue, I think we just talked that

through.  Perhaps you could submit a revised proposed order.

MR. LIEBERMAN:  Yes.

THE COURT:  And maybe you can send me a clean

version in, a track changes version.  And then, if you don't

mind, I would probably suggest -- you could docket that as an

additional filing.  But then if there is a way to send a soft

copy in case I want to make a few technical changes and --

MR. LIEBERMAN:  Sure.  We can send that by email.

And I guess, when we send the email we will confirm that the

claims administrator has, you know -- yes, advised that they

can within the schedule we discussed.

THE COURT:  Yes.  I mean, I would still prefer that

you docket this as -- like, in a proposed amended order. That way, it is all in the same place, and if anybody wanted to see what --

MR. LIEBERMAN:  Sure.

THE COURT:  -- that -- what your proposal was after this, we could do that.  The only change I would ask you maybe to just make right now beyond the dates we just discussed would be Page 11, Paragraph 21, "That the Plaintiffs are required to indicate in their written objection whether they intend to appear."  I would just make that a little more clear that they will state in their written objection whether they intend to appear, so there is no ambiguity about what they are telling us.

Other than that, I think it is just really just the dates.  And so, if you can docket a proposed final version plus a track changes, and then send me the soft copy by email.  That way, in case, you know, I look at the dates and I feel like math is off by a day or two, or something like that, then we can ---.

You can put in, if you want, that proposed hearing date.  And that way, we have that.  But again, if I get a soft copy as well, for some reason we need to address the date a day or two in some direction, then we can do that. And I can always confer with you if there is a need for an adjustment of the date.  Right now, it looks like we will be

fine.

MR. LIEBERMAN:  Okay.  That sounds great, Your Honor.

THE COURT:  Anything else anybody else wants to offer, particularly defense Counsel since the conversation has largely been with the Plaintiff's Counsel?

MR. WORD:  Your Honor, this is Christian Word from Latham Watkins.  I have nothing else.  Thank you.

THE COURT:  Okay.  So, if you could send me that, and or docket it today, or probably Monday at the latest, that would be helpful because all these dates are teed off of a preliminary approval date of early next week.  Which, obviously I will try to do based on what we have discussed.  So --

MR. LIEBERMAN:  We will file --

(Simultaneous discussion.)

MR. LIEBERMAN:  We will file today, Your Honor.

THE COURT:  Okay, perfect.

MR. LIEBERMAN:  Okay --

THE COURT:  Okay.  Okay.  Well, thank you very much for the -- responding to questions and obviously, we will likely get this approval out early next week and then be off and running with the schedule.  Thank you very much.  Have a good rest of the day.

MR. LIEBERMAN:  Thank you.  Have a nice weekend.

bek                                                                            41

THE COURT:  Thank you.

MR. LIEBERMAN:  Thank you, Your Honor.

MR.        :  Thank you, Your Honor.

(Whereupon, at 10:54 a.m., the proceeding concluded.)

bek                                                                                    42

<u>C E R T I F I C A T E</u>

I certify that the foregoing is correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Brenda Khan*   7/22/2022
Brenda Khan                         Date
Transcriber, CompuScribe