**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE 2U, INC. SECURITIES CLASS ACTION | Consolidated Case No. 8:19-cv-03455-TDC |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND APPROVAL OF PLAN OF ALLOCATION OF**
**THE NET PROCEEDS OF THE SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
       ADEQUATE, AND WARRANTS FINAL APPROVAL. .................................. 5

       A.     The Law Favors and Encourages Settlement of Class Action Litigation. .. 5

       B.     The Standards for Final Approval. ................................................. 5

       C.     The Rule 23(e)(2) and *Jiffy Lube* Factors Support Approval. .................... 7

III.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE. ...................... 20

IV.    THE NOTICE SATISFIED RULE 23 AND DUE PROCESS. ......................... 22

V.     CERTIFICATION OF THE SETTLEMENT CLASS REMAINS
       WARRANTED. ........................................................................................ 23

VI.    CONCLUSION .......................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)......................................................................................12

*Deem v. Ames True Temper*,
  No. 6:10-CV-01339, 2013 WL 2285972 (S.D.W. Va. May 23, 2013)...................10

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)...............................................................................................15

*Feinberg v. T. Rowe Price Grp., Inc.*,
  No. JKB-17-0427, 2022 WL 2529545 (D. Md. July 6, 2022)....................14, 20, 23

*Hicks v. Stanley*,
  No. 01-cv-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...........................12

*In re BankAtlantic Bancorp, Inc.*,
  No. 07-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd*, 688 F.3d
  713 (11th Cir. 2012)..............................................................................................17

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ............................................................5, 6, 20

*In re Jiffy Lube Securities Litigation*,
  927 F.2d 155 (4th Cir. 1991) ......................................................................... *passim*

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales
  Practices & Prod. Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020) ...................................................................................7

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ............................................................ *passim*

*In re Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ...........................................................6, 10, 12, 21

*In re Neustar Inc. Sec. Litig. ("Neustar I")*,
  No. 1:14cv885, 2015 WL 5674798 (E.D. Va. Sept. 23, 2015).................8, 9, 10, 13

*In re Neustar, Inc. Sec. Litig. ("NeuStar II")*,
  No. 1:14CV885, 2015 WL 8484438 (E.D. Va. Dec. 8, 2015)...............................10

*In re Nissan Radiator/Transmission Cooler Litig.*,
  No. 10-cv-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) .............................11

*In re Peanut Farmers Antitrust Litig.*,
  No. 19-cv-1963, 2021 WL 3174247 (E.D. Va. July 27, 2021)................................................7

*In re Sinus Buster Prods. Consumer Litig.*,
  No. 12-cv-2429, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ...........................................10

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
  No. 08-1310, 2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ....................................................5

*Lucey v. Paucek*,
  No. 20-cv-02424-GLR (D. Md.)...............................................................................................4

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .............................................................................................16

*S. C. Nat'l Bank v. Stone*,
  749 F. Supp. 1419 (D.S.C. 1990).............................................................................................5

*Shumacher v. Paucek*,
  No. 2020-1019-LWW (Del. Ch.).............................................................................................4

*Solomon v. Am. Web Loan, Inc*,
  No. 4:17cv145, 2020 WL 3490606 (E.D. Va. June 26, 2020)..................................................8

*Theis v. Paucek*,
  No. 20-cv-3360-PAC (S.D.N.Y.)..............................................................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
  396 F.3d 96 (2d Cir. 2005)......................................................................................................22

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)......................................................................................................22

*Winingear v. City of Norfolk*,
  No. 2:12cv560, 2014 WL 3500996 (E.D. Va. July 14, 2014) ..........................................10, 16

**Statutes**

15 U.S.C. §77k ..........................................................................................................................21

15 U.S.C. §78j(b).......................................................................................................................21

15 U.S.C. § 78u-4(a)(4) .............................................................................................8, 14, 19, 22

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Federal Rule of Civil Procedure 23(c)(2)(B) .......................................................................22, 23

**Other Authorities**

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis* (Cornerstone Research 2022)...............................................................14

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Fiyyaz Pirani ("Pirani" or "Lead Plaintiff") and Additional Named Plaintiff Oklahoma City Employee Retirement System ("OCERS" or "Additional Named Plaintiff") (together, "Plaintiffs"), on behalf of themselves and all other members of the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement of the above-captioned class action (the "Action") and approval of the proposed plan of allocation of the net proceeds of the Settlement (the "Plan of Allocation").[1]

## I.    INTRODUCTION

As detailed in the Stipulation, Plaintiffs and Defendants[2] have agreed to a settlement of all claims asserted in the Action, the dismissal with prejudice of the Consolidated Class Action Complaint filed on July 30, 2020 (ECF No. 92) (the "Complaint"), and the release of all Released Claims, in exchange for a payment of $37,000,000, to be paid or caused to be paid by 2U.  The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court. ECF No. 224-3.

As detailed in the accompanying Declaration of Jeremy A. Lieberman (the "Lieberman Declaration") filed herewith, Plaintiffs' Counsel have:

(i)     conducted a robust investigation concerning the allegedly fraudulent misrepresentations and omissions;

---

[1] All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 31, 2022 (the "Stipulation" or "Settlement"), previously filed with the Court (ECF No. 224-3).

[2] Defendants are 2U, Inc. ("2U"), Christopher J. Paucek, Catherine A. Graham, Harsha Mokkarala, Paul A. Maeder, Robert M. Stavis, Gregory K. Peters, Timothy M. Haley, Valerie B. Jarrett, Earl Lewis, Coretha M. Rushing, Sallie L. Krawcheck, John M. Larson, Edward S. Macias, and Mark J. Chernis (with 2U, the "2U Defendants"), and Goldman Sachs & Co. LLC, Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Compass Point Research & Trading, LLC, KeyBanc Capital Markets Inc., and Macquarie Capital (USA) Inc. (collectively, the "Defendants," and with Plaintiffs, the "Parties").

1

(ii)     prepared and filed a detailed, 164-page consolidated class action complaint;

(iii)    researched, prepared, and drafted an opposition to Defendants' fifty-page motion to dismiss the complaint, after which the Court entered an Opinion and Order substantially denying Defendants' motion;

(iv)    completed significant fact discovery that included subpoenaing twenty-three third parties, analyzing approximately 285,000 pages of documents produced by Defendants and third parties, and preparing for depositions, including the noticed depositions of Plaintiffs, which did not take place due to the Settlement;

(v)     prepared and filed a motion for class certification, and

(vi)    filed an expert report addressing market efficiency and damages.

At the time the Settlement was reached, Plaintiffs' Counsel had a keen understanding of the strengths and weaknesses of the claims and defenses.[3]

The Settlement, which is over four times the median recovery in securities class actions in 2021, is the product of extensive arm's-length negotiations between the Parties, which included a full-day mediation session before Gregory Lindstrom of Phillips ADR Enterprises, P.C., prior to which the Parties submitted multiple, extensive mediation statements.  Following the mediation, the Parties agreed, in principle, to the terms of the Settlement, subject to the negotiation of a mutually acceptable long form stipulation of settlement.

The Settlement is a very favorable result in light of the risks of continued litigation.  While Plaintiffs and Plaintiffs' Counsel believe that the claims asserted against Defendants are strong, they recognize that the Action presented several obstacles to establishing both liability and damages, including the challenges posed by summary judgment given Defendants' likely

---

[3] The Lieberman Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action, the nature of the claims asserted, the negotiations leading to the Settlement, and the risks and uncertainties of continued litigation, among other things. Unless otherwise noted, citations to "¶" in this memorandum refer to paragraphs in the Lieberman Declaration.  All exhibits referenced below are attached to the Lieberman Declaration.

arguments that Plaintiffs could not prove falsity, scienter, and loss causation, among other things. While Plaintiffs would advance credible counterarguments to Defendants' liability defenses, they nonetheless recognize that there were significant risks that Defendants' anticipated summary judgment motions might be granted in whole or in part.  These risks are in addition to the genuine risk of a much smaller recovery, or no recovery at all, at the conclusion of trial.  Indeed, even if Plaintiffs prevailed at trial, that victory could be extinguished on appeal.

The Settlement is all the more substantial in light of 2U's severely diminished financial condition, which raises serious doubts that Company could satisfy a trial verdict for the full extent of damages in this Action.  2U's cash position and stock price have declined drastically since the Class Period.  As of the end of 2018, during the Class Period, 2U reported $450 million of cash and cash equivalents on hand.[4]  As of March 31, 2022, that figure had fallen to $217 million,[5] and it declined to $220.8 million as of June 30, 2022.[6]  The Company has reported massive net losses in 2019, 2020, and 2021, and that trend has continued this year, with the Company incurring over $188 million in net losses for just the first six months of 2022.[7]  In addition to the precipitous stock

---

[4] 2U, Inc., Annual Report for year ending December 31, 2018 (Form 10-K), filed Feb. 26, 2019, at 38 (available at https://www.sec.gov/Archives/edgar/data/1459417/000110465919010491/a19-30045_410k.htm).

[5] 2U, Inc., Quarterly Report for period ending March 30, 2022 (Form 10-Q), filed May 10, 2022, at 4 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1459417/000145941722000018/twou-20220331.htm).

[6] 2U, Inc., Quarterly Report for period ending June 30, 2022 (Form 10-Q), filed July 28, 2022, at 4 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1459417/000145941722000021/twou-20220630.htm).

[7] 2U, Inc., Annual Report for year ending December 31, 2021 (Form 10-K), filed March 1, 2021, at 17 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1459417/000145941722000004/twou-20211231.htm) ("We incurred net losses of $194.8 million, $216.5 million and $235.2 million during the years ended December 31, 2021, 2020 and 2019, respectively."); 2U, Inc., Quarterly Report for period ending June 30, 2022 (Form 10-Q), filed July 28, 2022, at 5 (available at

price declines during the Class Period—at the end of which 2U's stock price was $12.80 per share, down from a Class Period high of $98 per share—the stock has continued to tumble, closing at $6.15 per share on October 27, 2022, yielding a market capitalization of only $477 million.  This represents a massive decline from the Company's $2.9 *billion* market capitalization as of the end of 2018.  Further, applicable insurance coverage would be depleted by defense costs if Plaintiffs continued to prosecute this Action, as well as by the three related derivative actions.[8]

In light of the substantial recovery for the Settlement Class and the risks of continued litigation, as discussed further below and in the Lieberman Declaration, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court. *See* Lieberman Decl., Ex. 1 (Declaration of Fiyyaz Pirani); Ex. 2 (Declaration of OCERS). Additionally, Plaintiffs request that the Court approve the proposed Plan of Allocation, which was set forth in full in the Notice to Settlement Class Members. The Plan of Allocation, which was developed by Plaintiffs' Counsel in consultation with Plaintiffs' damages expert, provides a reasonable and equitable method for allocating the Net Settlement Fund among Settlement Class Members who submit valid claims. The Plan of Allocation is fair and reasonable and should likewise be approved.

As detailed in the accompanying declaration of the Claims Administrator, the Court-approved Notice was sent to over 45,000 potential Settlement Class Members and their nominees beginning on July 1, 2022.  Ex. 3. ¶ 12.  To date there have been no objections to any aspect of the Settlement and only two requests for exclusion from the Settlement Class.  *Id.*, ¶¶18, 20.[9]  Given

---

https://www.sec.gov/ix?doc=/Archives/edgar/data/1459417/000145941722000021/twou-20220630.htm) (net loss for six months ending June 30, 2022).

[8] The derivative actions are: *Lucey v. Paucek*, No. 20-cv-02424-GLR (D. Md.); *Theis v. Paucek*, No. 20-cv-3360-PAC (S.D.N.Y.); and *Shumacher v. Paucek*, No. 2020-1019-LWW (Del. Ch.).

[9] Any objections, the deadline for which is November 10, 2022, will be addressed in Plaintiffs' reply papers, which are due by November 25, 2022.

this positive response by the Settlement Class, and the merits of the result achieved in the face of numerous obstacles to recovery, Plaintiffs request that the Court approve the Settlement and the Plan of Allocation.

## II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL.

### A.    The Law Favors and Encourages Settlement of Class Action Litigation.

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class-action settlement must be presented to the Court for approval and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016).  Courts have long recognized that public and judicial policy favor the settlement of disputed claims among private litigants, particularly in class actions. *See Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at \*10 (E.D. Va. Sept. 28, 2009) ("There is an overriding public interest in favor of settlement, particularly in class action suits."); *S. C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate in class actions.").[10]

### B.    The Standards for Final Approval.

Pursuant to the amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering whether:

(A)    class representatives and counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

---

[10] Internal quotation marks and citations within quotations are omitted throughout unless otherwise specified.

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23 amendments, which became effective in December 2018, have not changed the overall standard for approving a settlement, *i.e.*, whether the settlement is fundamentally fair, adequate, and reasonable.

When evaluating a class action settlement, the Fourth Circuit has held that district courts should consider the factors set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158 (4th Cir. 1991). *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 839-41; *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). The *Jiffy Lube* factors are used to assess a settlement's "fairness" and "adequacy" and are consistent with the Rule 23(e)(2) factors. Under *Jiffy Lube*, to assess the threshold factor of the "fairness" of a settlement, courts consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation." *Jiffy Lube*, 927 F.2d at 159. Analyzing these factors enables the Court to determine that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion . . . ." *Id*.

For the additional *Jiffy Lube* threshold factor of the "adequacy" of the proposed settlement, courts consider: "(1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the

6

defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159. The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously considered by courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendments.

The discussion below addresses the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four factors set forth in Rule 23(e)(2). By doing so, it necessarily addresses the *Jiffy Lube* factors since, as courts recognize, the Rule 23(e)(2) factors largely overlap with the Jiffy Lube factors. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020) (noting that the *Jiffy Lube* "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors"); *In re Peanut Farmers Antitrust Litig.*, No. 19-cv-1963, 2021 WL 3174247, at *2 (E.D. Va. July 27, 2021) ("Taking this substantial overlap into consideration, the Court will examine Plaintiffs' Motion for Settlement based upon the Rule 23(e)(2) factors."). Each of the Rule 23(e)(2) and *Jiffy Lube* factors readily support approval of the proposed Settlement.

### C. The Rule 23(e)(2) and *Jiffy Lube* Factors Support Approval.

#### 1. Plaintiffs and Plaintiffs' Counsel Have Zealously Represented the Settlement Class.

In determining whether to approve a class action settlement, the Court should consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This requirement is "met when: (1) the named plaintiff does not have

interests antagonistic to those of the class; and (2) plaintiff's attorneys are 'qualified, experienced and generally able to conduct the litigation.'" *Solomon v. Am. Web Loan, Inc*, No. 4:17cv145, 2020 WL 3490606, at *2 (E.D. Va. June 26, 2020) (quoting *In re Neustar Inc. Sec. Litig. ("Neustar I")*, No. 1:14cv885, 2015 WL 5674798, at *4 (E.D. Va. Sept. 23, 2015)).

When appointing Lead Plaintiff and Lead Counsel to their positions, the Court found that each was adequate to lead the Action under the PSLRA. *See* ECF No. 43. Lead Plaintiff and Lead Counsel, as well as Additional Named Plaintiff and other Plaintiffs' Counsel, have continued to adequately represent the Settlement Class by vigorously prosecuting the Action and negotiating the Settlement. Plaintiffs have been active and informed participants in the litigation efforts and were consulted on, and approved, the terms of the Settlement.

Fulfilling their obligations, Lead Counsel and other Plaintiffs' Counsel have developed a deep understanding of the facts of the case and the merits of the claims through a comprehensive investigation, substantial motion to dismiss briefing, zealous and significant discovery efforts, consultation with numerous experts, and the filing of a motion for class certification accompanied by an expert report addressing market efficiency and the potential to calculate damages on a classwide basis. Lieberman Decl., ¶¶19-49. Based on this deep understanding of the strengths and weaknesses of the case, and in consultation with damages experts, Lead Counsel and other Plaintiffs' Counsel evaluated the potential damages in the case and negotiated vigorously at arm's length to secure the $37 million recovery. As previously determined by the Court during the lead plaintiff process, Lead Plaintiff's interests are not antagonistic to those of the Settlement Class. Neither are the interests of Additional Named Plaintiff OCERS antagonistic to the Settlement Class. Plaintiffs, Lead Counsel, and all Plaintiffs' Counsel have adequately represented the Settlement Class.

### 2. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel.

In weighing a class action settlement at final approval, the Court considers whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Similarly, under the *Jiffy Lube* "fairness" factors, the Court's analysis of whether the settlement was reached through good faith bargaining at arm's length includes considering the following four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class actions litigation."' *Neustar I*, 2015 WL 5674798, at *10 (quoting *Jiffy Lube*, 927 F.2d at 159). Consideration of all of these factors demonstrates that the Settlement here was reached through arm's-length negotiations after vigorous litigation and with no hint of collusion. Lieberman Decl., ¶¶ 48-54.

#### a. The Posture of the Case and Extent of Discovery

The first and second *Jiffy Lube* fairness factors support approval. In particular, the advanced posture of this case and the significant amount of discovery that was conducted before the Parties' agreement in principle dispel any concerns of possible collusion. *Cf. Jiffy Lube*, 927 F.2d at 159 (a settlement reached "at a very early stage in the litigation and prior to any formal discovery, rais[es] questions of possible collusion"). Here, the Settlement was not reached until the litigation had advanced well into discovery. Under the schedule that governed the Action until the Court entered a temporary stay to permit the Parties to pursue mediation (ECF No. 220), fact discovery was due to be complete by February 28, 2022 (ECF No. 195 at 2). The mediation stay was requested (and entered) only a matter of days before that deadline. ECF Nos. 219, 220. Plaintiffs obtained and analyzed several thousand pages of documents from Defendants and third parties, had filed a notice concerning a motion to compel additional documents from Defendants

9

(ECF No. 215), and were preparing for depositions, including the noticed depositions of both Plaintiffs.  Lieberman Decl., ¶¶ 39-47.  In addition, Plaintiffs filed a motion for class certification supported by an expert report concerning market efficiency and damages methodology (ECF No. 210).  *See Winingear v. City of Norfolk*, No. 2:12cv560, 2014  WL 3500996, at *2 (E.D. Va. July 14, 2014) (citing *Mills*, 265 F.R.D. at 254) ("When discovery has been largely completed, this factor weighs in favor of approving the settlement.").  "These adversarial encounters dispel any apprehension of collusion between the parties."  *In re Neustar, Inc. Sec. Litig. ("NeuStar II")*, No. 1:14CV885 (JCC/TRJ), 2015 WL 8484438, at *3 (E.D. Va. Dec. 8, 2015) (quoting *NeuStar I*, 2015 WL 5674798, at *10).  "Absent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Deem v. Ames True Temper*, No. 6:10-CV-01339, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013).

As noted above, the Parties had already litigated Defendants' motion to dismiss and Plaintiffs had filed a motion for class certification.  When "several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." *Mills*, 265 F.R.D. at 254.  Indeed, courts in this District and throughout the country have granted final approval of class action settlements that have reached this or even earlier stages of litigation. *See, e.g.*, *NeuStar II*, 2015 WL 8484438, at *3 (granting final approval where parties had "vigorously contested a motion to dismiss"); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 664 (E.D. Va. 2001) (granting approval of settlement where "although the partial settlement was reached relatively early in the litigation, it was reached only after the Settling Parties vigorously contested a motion to dismiss"); *see also In re Sinus Buster Prods. Consumer Litig.*, No. 12-cv-2429, 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) ("The parties 'need not have engaged in extensive

discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make an appraisal' of the settlement.'") (citation omitted); *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-7493, 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (finding the stage-of-the-proceedings factor weighs in favor of approval where "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement"). The significant discovery and motion practice in this case provided each side with the necessary insight to evaluate the merits and, as discussed below, laid the groundwork for the arm's-length negotiations that ultimately resulted in the Settlement.

### b.      The Circumstances Surrounding The Negotiations

The third *Jiffy Lube* "fairness" factor supports approval. The settlement negotiations were lengthy and conducted at arm's-length by experienced class-action litigators with the assistance of an experienced mediator. On April 5, 2022, the Parties participated in a full-day mediation session before Gregory Lindstrom, a seasoned and accomplished former partner at Latham & Watkins, and now a mediator at Phillips ADR Enterprises, P.C., one of the preeminent mediation firms for complex litigation. Lieberman Decl., ¶ 50. The Parties provided detailed mediation statements and exhibits to Mr. Lindstrom, which addressed issues of both liability and damages. *Id.* During the mediation sessions, counsel for Plaintiffs and Defendants zealously negotiated on behalf of their clients and advanced their interests. While the mediation that day was ultimately unsuccessful, the Parties continued to engage in settlement negotiations thereafter as the Action proceeded. *Id.* The Settlement was only reached after Mr. Lindstrom presented the Parties with a "mediator's recommendation" to settle the Action for $37 million. *Id.*, ¶ 51. Plaintiffs and

11

Defendants each accepted this proposal and reached an agreement in principle to settle the Action on April 21, 2022, two days after the temporary stay expired.  *Id.*

The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator support the conclusion that the Settlement is fair and free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  The fact that the Parties did not reach agreement at the first mediation session, and required additional negotiations, further demonstrates that the Settlement was the product of arm's-length negotiations. *See, e.g.*, *Hicks v. Stanley*, No. 01-cv-10071, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.") (citation omitted).

### c.    The Experience of Counsel

The final *Jiffy Lube* fairness factor supports approval. Lead Counsel are among the most highly qualified securities class action firms in the country.  Plaintiffs' Counsel's firms have many years of experience in complex securities class actions, and have prosecuted and resolved dozens of complex securities cases, including some of the largest recoveries in securities class actions ever.  Lieberman Decl. ¶92-93 and Exs. 4-D and 5-D.  Courts recognize that the opinion of experienced and informed counsel favoring a settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See MicroStrategy*, 148 F. Supp. 2d at 665.

The quality of opposing counsel is also important in evaluating the quality of Plaintiffs' Counsel's work. *See MicroStrategy*, 148 F. Supp. 2d at 665 (noting "counsel for both sides are nationally recognized members of the securities litigation bar" when considering the fairness of the settlement); *Mills*, 265 F.R.D. at 255.  Defense counsel in this case—Latham & Watkins LLP;

12

Skadden, Arps, Slate, Meagher & Flom LLP; and Paul Hastings LLP—are some of the most experienced and sophisticated firms in securities litigation. Despite this impressive opposition, Plaintiffs' Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to accept a mediator's recommendation to settle for $37 million.

Moreover, Plaintiffs closely supervised, carefully monitored, and were actively involved in all material aspects of prosecuting and settling the Action. For example, Plaintiffs regularly communicated with Plaintiffs' Counsel regarding the progress of the case; reviewed court filings and other material documents throughout the case; participated in discussions regarding litigation strategy and significant developments in the Action; worked with counsel to respond to discovery; and participated in the mediation session that preceded the proposed Settlement. Exs. 1, 2.

### 3. The Relief Provided by the Settlement Is Adequate.

The proposed Settlement readily satisfies Rule 23(e)(2)(C) (and the *Jiffy Lube* "adequacy" factors).[11] Under Rule 23(e)(2)(C), the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. *See, e.g., Neustar I*, 2015 WL 5674798, at *11 (the *Jiffy Lube* adequacy analysis "weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in the settlement"). The $37 million recovery—which is over four times the median recovery in securities

---

[11] This Rule 23(e)(2)(C) factor encompasses four of the five factors in the traditional *Jiffy Lube* adequacy analysis: "(1) The relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, [and] (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment." *Jiffy Lube*, 927 F.2d at 159.

class actions in 2021—is an excellent result for the Settlement Class. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, at 4 (Cornerstone Research 2022) (finding that the median securities class action settlement in 2021 was $8.3 million); *see also Feinberg v. T. Rowe Price Grp., Inc.*, No. JKB-17-0427, 2022 WL 2529545, at *6 (D. Md. July 6, 2022) (observing that "[t]he Fourth Circuit has 'never required [ ] an estimate' of what the class members would have received had they prevailed at trial," and finding settlement reasonable given doubts "regarding Plaintiffs' ability to recover the extent of the damages they were seeking or to establish liability at all"). !In light of the risks of continued litigation and potential outcomes at trial, the Settlement provides adequate relief to the Settlement Class. As discussed below and in the Lieberman Declaration (¶¶ 61-73), the hurdles faced by Plaintiffs would be substantial if the litigation continued.   While Plaintiffs' claims against Defendants were strong and Plaintiffs had developed substantial supporting evidence, they nonetheless faced significant risks on liability and damages.

**a.      Risks of Establishing Liability and Damages Support Approval of the Settlement.**

Plaintiffs would have faced challenges in proving to the ultimate fact finder that the statements made by Defendants were materially false and misleading and, with respect to claims under the Securities Exchange Act of 1934, that Defendants acted with scienter.  Defendants collectively would have advanced many arguments at summary judgment and trial—as they did in their motion to dismiss—that a jury could have found persuasive, including (i) that the alleged misstatements were not forward-looking, and thus protected by the PSLRA safe harbor, (ii) that the alleged misstatements are inactionable as puffery or opinion statements, (iii) that Defendants sufficiently cautioned investors concerning the allegedly misrepresented facts, so investors were not misled, and (iv) that Defendants genuinely believed that 2U would be able to grow in line with

14

their projections and that the pipeline of incoming students was strong enough to support that growth, and thus that they lacked scienter. Lieberman Decl., ¶¶ 66-68.

Even if Plaintiffs succeeded in overcoming these arguments to establish liability, they would also have continued to confront considerable challenges in establishing loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Defendants likely would have asserted that Plaintiffs cannot prove loss causation or damages because they cannot identify a correction of an alleged misstatement that caused 2U's stock price to decline. In particular, Defendants likely would have argued, *inter alia*, that: (i) the announcements of disappointing financial results and lowered financial guidance did not reveal that any prior statement of Defendants was materially false or misleading; and (2) that the alleged corrective disclosures were materializations of risks that were fully known to investors prior to their purchases of 2U common stock during the Settlement Class Period. Lieberman Decl., ¶¶ 61-72.

Further with respect to scienter, which is generally the most difficult element of a securities fraud claim for a plaintiff to prove, Defendants likely would have advanced several arguments, any one of which, if accepted at summary judgment or trial, could have limited or extinguished Plaintiffs' claims. For instance, Defendants likely would have argued that: (i) Plaintiffs cannot prove that any Defendants were motivated to commit fraud; (ii) that 2U's internal data supported its public projections of continued enrollment growth and was consistent with its public revenue guidance until shortly before 2U proactively alerted the market in mid-2019, when it began to see a material divergence; (iii) that 2U was optimistic that any enrollment declines were due to short-term issues in certain of its largest programs; (iv) that Plaintiffs' only evidence of enrollment issues

15

consisted of isolated incidents of individual programs increasing and decreasing in enrollments throughout the Class Period, which were beyond 2U's control; and (v) that neither of the two FEs that the Court relied upon heavily at the pleading stage (FE-1 and FE-2) support Plaintiffs' claims, including arguing that FE-1 later recanted her allegations. *Id.*, ¶¶ 63-65.

The fact that Plaintiffs defeated Defendants' motion to dismiss was not a guarantee of ultimate success. Plaintiffs faced ongoing risks associated with their pending motion for class certification as well as Defendants' forthcoming summary judgment motions, *in limine* motions, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery, or even no recovery at all. The Court's denial of class certification or granting of summary judgment in Defendants' favor would have resulted in zero recovery for the Settlement Class.

> **b.      Costs and Delay of Continued Litigation Support Approval of the Settlement.**

The Settlement avoids the potential impact of each of these challenges and other risks and achieves a fair and certain result. In addition to the substantial risks and uncertainty inherent in continued litigation, Plaintiffs faced the certainty that further litigation against well-financed defendants would be expensive, complex, and time-consuming. The fact that the Settlement eliminates substantial delay and expense of summary judgment motions, *in limine* motions, trial, and likely appeals, a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all, strongly weighs in favor of approval. *See Winingear*, 2014 U WL 3500996, at *2.

Indeed, even surviving summary judgment in full and prevailing at trial would not have guaranteed a recovery larger than the $37 million Settlement. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm

16

reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following jury verdict for plaintiffs on liability, district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence of loss causation), *aff'd*, 688 F.3d 713 (11th Cir. 2012).

Further, 2U's current financial condition makes it all but certain that it would be unable to satisfy a verdict for the full amount of damages, and the prosecution of the Action through summary judgment, trial, and the exhaustion of appeals would deplete applicable insurance proceeds. *See supra* at 2-3; *see also* Lieberman Decl., ¶ 62. 2U's weakened financial condition provides further evidence that the Settlement is a fair, reasonable, and should receive final approval. *See MicroStrategy*, 148 F. Supp. 2d at 667 ("[E]ven were plaintiffs ultimately to recover damages of up to $711 million, it is highly unlikely that such a judgment would be collectible.") (citation omitted).

In sum, the proposed Settlement satisfies Rule 23(e)(2)(C)(i).

### c. The Effective Process for Distributing Relief to the Settlement Class

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The Net Settlement Fund, as in the vast majority of securities class action settlements, will be distributed to Authorized Claimants with the assistance of an established and experienced claims administrator. Here, the Court-appointed Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), is employing a well-tested protocol for the processing of claims in securities class actions. Namely, a potential Settlement Class Member will submit, either by mail or online, the Court-approved Claim Form.

Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective Claims based on the Court-approved Plan of Allocation, and ultimately determining each Authorized Claimant's pro rata portion of the Net Settlement Fund. *See* Stipulation at ¶¶25-33. Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to remedy any deficiencies or contest the rejection of their claims. *Id.* at ¶31. Any claim disputes that cannot be resolved will be presented to the Court for a final determination. *Id.* at ¶31(e).

After the Settlement reaches its Effective Date (*id.* at ¶38) and the claims process is completed, Authorized Claimants will be issued payments. If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a subsequent distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). *Id.* at ¶33. Additional distributions will proceed in the same manner until it is no longer economical to make further distributions. *Id.* Thereafter, any de minimis amount remaining will be donated to an appropriate non-profit organization unaffiliated with any of the parties or their counsel, and subject to the approval of the Court. *Id.* Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).

### d. The Settlement Does Not Excessively Compensate Lead Counsel.

As discussed in the accompanying memorandum of law in support of Plaintiffs' Counsel's fee and expense application, the requested fee award of 33.4% of the Settlement Amount is an amount that is well within the percentages that courts in the Fourth Circuit and elsewhere have approved in class actions with comparable recoveries. Lead Counsel is also seeking payment of

litigation expenses incurred during the prosecution of the Action of less than the maximum reported in the Notice. Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(iii).

> **e.      The Relief Provided by the Settlement Is Adequate Taking into Account All Agreements Related to the Settlement.**

Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. On April 28, 2022, the Parties entered into a settlement memorandum of understanding, and on May 31, 2022, they entered into the Stipulation and a confidential Supplemental Agreement regarding requests for exclusion (the "Supplemental Agreement"). Stipulation at ¶39. The Supplemental Agreement provides that 2U has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. *Id.* Pursuant to its terms, the Supplemental Agreement may be submitted to the Court in camera or under seal. The Supplemental Agreement, Stipulation, and the memorandum of understanding that preceded the Stipulation are the only agreements concerning the Settlement entered into by the Parties.

> **4.    Settlement Class Members Are Treated Equitably Relative to One Another.**

The Settlement treats members of the Settlement Class equitably relative to one another. As set forth above, eligible claimants will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court. Plaintiffs will receive the same type of pro rata recovery under the Plan of Allocation as all Authorized Claimants.[12]

---

[12] Plaintiffs are seeking reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action, pursuant to the PSLRA. This does not constitute preferential treatment. See 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a pro rata portion of the recovery).

### 5. Reaction of the Settlement Class to Date Supports Approval of the Settlement.

"The degree of opposition to the settlement" should also be considered on final approval of a settlement. *See Genworth*, 210 F. Supp. 3d at 842 ("A lack of objections to settlement by class members and opt-outs from the class demonstrates low opposition and weighs in favor of approving a settlement."); *see also Feinberg*, 2022 WL 2529545, at *6 ("Significantly, there have been no objections by class members.").  Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq, mailed copies of the Postcard Notice to record holders identified in the Company's transfer records and potential Settlement Class Members and their nominees. Declaration of Bradford Amman Regarding: (A) Mailing of the Notice and Proof of Claim; (B) Publication of The Summary Notice; and (C) Report on Requests for Exclusion ("Mailing Decl."), Ex. 3 at ¶¶ 3-13.  As of October 27, 2022, Epiq has mailed 45,753 copies of the Notice Packet to nominees and potential Settlement Class Members.  *Id.* at ¶ 12. In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over the internet via *PR Newswire* on July 11, 2022.  *Id.* at ¶ 14 and Ex. 3-C.

While the deadline set by the Court for Settlement Class Members to object or request exclusion (November 10, 2022) has not yet passed, to date, no objections and only two requests for exclusion have been received.  *Id.* at ¶¶ 18, 20.  Plaintiffs will file reply papers no later than November 25, 2022, addressing any objections and any other requests for exclusion.

### III. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.

In addition to seeking final approval of the Settlement, Plaintiffs seek approval of the proposed Plan of Allocation for the net proceeds of the Settlement. Approval of a plan of allocation for settlement proceeds is governed by the same standards of fairness and reasonableness applicable to the settlement as a whole.  *See, e.g.*, *MicroStrategy*, 148 F. Supp. 2d at 668 ("To

warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate."). "The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Mills*, 265 F.R.D. at 258.

The proposed Plan of Allocation for the proceeds of the Settlement is set forth in the Notice. *See* Ex. 3-A at 8-12. The proposed plan was developed by Lead Counsel in consultation with Plaintiffs' damages expert. The Plan of Allocation provides for the distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment on a pro rata basis based on the extent of their alleged injuries attributable to the alleged securities law violations. *Id.*

In developing the Plan of Allocation, Plaintiffs' damages expert calculated the estimated amount of alleged artificial inflation in the per share prices of 2U common stock that allegedly was proximately caused by Defendants' false and misleading statements and omissions. The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of 2U common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided by the claimant. *Id*. In recognition of the fact that establishing a violation of section 11 of the Securities Act of 1933 is less difficult than establishing a violation of section 10(b) of the Securities Exchange Act of 1934, the Plan of Allocation provides that Recognized Loss Amounts on stock purchases eligible for Securities Act claims will be increased by 25%. *Id.* at 10; *see also Microstrategy*, 148 F. Supp. 2d at 668-69 (approving plan of allocation that "fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia,* the relative strengths and

weaknesses of class members' individual claims and the timing of purchases of the securities at issue").

Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as result of the alleged misconduct. To date, no objections to the proposed Plan of Allocation have been received.  Ex. 3 (Mailing Decl.) at ¶ 20.

## IV.    THE NOTICE SATISFIED RULE 23 AND DUE PROCESS.

The Notice to the Settlement Class satisfied the requirements of Rule 23, which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable"— *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982).

Both the substance of the notice and the method of dissemination to potential members of the Settlement Class satisfied these standards. The Notice included all the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7). In accordance with the Preliminary Approval Order, Epiq began mailing copies of the Notice to potential Settlement Class Members on July 1, 2022. *See* Ex. 3 at ¶ 6.  As of October 27, 2022, Epiq has disseminated 45,753 copies of the Notice Packet (which includes the Notice) to potential Settlement Class Members and nominees. *See id.* at ¶ 12.  In addition, Epiq caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire* on January 10, 2022.  *Id.* at ¶ 14.  Epic also established a website containing information concerning the

22

Settlement and activated a toll-free number through which potential Settlement Class Members can request information. *Id.* at ¶ 17.

This combination of individual mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, and transmitted over a newswire, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see also Feinberg*, 2022 WL 2529545, at *3 ("[T]he notice was reasonably calculated to apprise absent class members of the action and provide them an opportunity to present their objections."). Plaintiffs' November 25, 2022 reply papers will provide the Court with further information regarding the amount of claims submitted by Class members and their estimated recognized losses.

## V.   CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED.

The Court previously granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Approval of Notice to the Settlement Class which, among other things, certified the Settlement Class for settlement purposes only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. ECF No. 229.  Nothing has changed to alter the propriety of class certification for settlement purposes and, for all the reasons stated in Plaintiffs' preliminary approval brief (ECF No. 224-1), Plaintiffs request that the Court finally certify the Settlement Class pursuant to Rules 23(a) and (b)(3).

## VI.   CONCLUSION

Given the litigation risks involved, the complexity of the underlying issues, and the skill of Plaintiffs' Counsel and of opposing counsel, the recovery obtained is remarkable.  Plaintiffs and Plaintiffs' Counsel respectfully request that the Court grant final approval of the Settlement and of the Plan of Allocation.

23

Plaintiffs will submit for the Court's consideration a form of proposed order approving of the Plan of Allocation and the Parties' agreed-upon form of the proposed Judgment (including a list of exclusion requests) when they file their reply papers on November 25, 2022 in accordance with the previously-entered schedule.

DATED: October 28, 2022                    Respectfully submitted,


**POMERANTZ LLP**

*By:* /s/ *Jeremy. A. Lieberman*

Jeremy A. Lieberman (admitted *pro hac vice*)
Emma Gilmore (admitted *pro hac vice*)
Villi Shteyn (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com
vshteyn@pomlaw.com

*Counsel for Lead Plaintiff Fiyyaz Pirani and Lead Counsel for the Class*

**GOLDMAN & MINTON, P.C.**

Thomas J. Minton – No. 03370
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
Telephone: (410) 783-7575
Facsimile: (410) 783–1711
Email: tminton@charmcitylegal.com

*Counsel for Lead Plaintiff Fiyyaz Pirani*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165

24

Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for Lead Plaintiff Fiyyaz Pirani*

**LABATON SUCHAROW LLP**

James W. Johnson (admitted *pro hac vice*)
Michael H. Rogers (admitted *pro hac vice*)
Lara Goldstone (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
lgoldstone@labaton.com
jchristie@labaton.com

*Counsel for Additional Named Plaintiff*
*Oklahoma City Employee Retirement System*

25

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: */s/ Jeremy. A. Lieberman*

Jeremy A. Lieberman