**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

|  |  |
|---|---|
| IN RE 2U, INC. SECURITIES CLASS ACTION | Consolidated Case No. 8:19-cv-03455-TDC |

**LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES, PAYMENT OF**
**LITIGATION EXPENSES, AND REIMBURSEMENT TO PLAINTIFFS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE........................ 6

    A.    The Settlement Creates a Common Fund from Which a "Percentage-of-the-Fund" Fee Would be Appropriate........................................................... 6

    B.    A Fee Equal to 33.4% of the Settlement Fund is Appropriate.................... 8

    C.    Plaintiffs' Counsel's Fee Request is Fair and Reasonable Under Fourth Circuit Authority......................................................................................... 9

    D.    A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Fee Request is Reasonable............................................................................... 18

III.  PLAINTIFFS' COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES IS REASONABLE. ................................................ 20

IV.   THE REQUESTED PSLRA AWARDS TO PLAINTIFFS ARE REASONABLE. ............................................................................................. 22

V.    CONCLUSION............................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  14-cv-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) ..........................................23

*Archbold v. Wells Fargo Bank, N.A.*,
  No. 3:13-CV-24599, 2015 WL 4276295 (S.D. W. Va. July 14, 2015) ...................................7

*Barber v. Kimbrell's, Inc.*,
  577 F.2d 216 (4th Cir. 1978) ..................................................................................10, 16

*Blum v. Stenson*,
  465 U.S. 886 (1984).................................................................................................6

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).................................................................................................6

*Camden I. Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ....................................................................................7

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank N.A.*,
  No. 0:10-cv-04372 (D. Minn. Aug. 18, 2014), ECF No. 686....................................................8

*Deem v. Ames True Temper, Inc.*,
  No. 6:10-CV-01339, 2013 WL 2285972 (S.D. W. Va. May 23, 2013)...................................8

*Earls v. Forga Contracting, Inc.*,
  2020 2020 WL 3063921 (W.D. N.C. June 8, 2020) ................................................................8

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2nd Cir. 2000)...................................................................................6, 9

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) .....................................................................................7

*Grae v. Corrections Corp. of Am.*,
  No. 3:16- cv-02267 (M.D. Tenn. Nov. 8, 2021), ECF No. 478.................................................9

*Heien v. Archstone*,
  837 F.3d 97 (1st Cir. 2016)........................................................................................6

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)................................................................................................10

*Hicks v. Stanley*,
No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................22

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
No. 09 MDL 2058 (PKC), 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013), *aff'd*,
772 F.3d 125 (2d Cir. 2014)...................................................................................................23

*In re Buspirone Antitrust Litig.*,
No. 1:01-md-01410 (S.D.N.Y. Apr. 11, 2003) .........................................................................9

*In re Celebrex (Celecoxib) Antitrust Litig.*,
No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018).......................................8, 9

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001)................................................................................................9, 10

*In re Comput. Sci. Corp. Sec. Litig.*,
No. Civ. A. 1:11-cv-610-TSE-LDD, 2013 WL 12155436 (E.D. Va. Sept. 20,
2013) ..................................................................................................................................22, 23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...............................23

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ........................................................................... *passim*

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3rd Cir. 1995) ....................................................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009).......................................................................................8

*In re Linerboard Antitrust Litig.*,
No. CIV.A. 98- 5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004), amended,
No. CIV.A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004)........................................12

*In re Massey Energy Co. Sec. Litig.*,
C. A. No. 5:10-cv-00689-ICB (S.D. W. Va. June 4, 2014), ECF No. 203............................23

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................................17

*In re MicroStrategy, Inc. Sec. Litig.*,
172 F. Supp. 2d 778 (E.D. Va. 2001) ........................................................................... *passim*

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009).................................................................................... *passim*

iii

*In re Neustar, Inc. Sec. Litig.*
No. 1:14cv885, 2015 WL 8484438, (E.D. Va. Dec. 8, 2015) ...................................................12

*In re Prudential Ins. Co. Am. Sales Litig.*,
148 F.3d 283 (3d Cir. 1998)........................................................................................................8

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. CIV.03- 0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005)..................................17, 18

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)........................................................................................16

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006) ....................................................................................10, 19

*In re Schering-Plough. Corp. Enhance Sec. Litig.*,
Nos. 08-397, 08-2177, 2013 WL 5505744 (D.N.J. Oct. 1, 2013) ...........................................22

*In re Titanium Dioxide Antitrust Litig.*,
2013 WL 6577029 (Dec. 13, 2013) .............................................................................................9

*In re Tronox, Inc. Sec. Litig.*,
No. 09-cv-6220 (SAS) (S.D.N.Y. Nov. 26, 2012), ECF No. 202.............................................23

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) .......................................................................................16

*Jones v. Dominion Res. Servs., Inc.*,
601 F. Supp. 2d 756 (S.D. W. Va. 2009)...............................................................7, 17, 18, 19

*Kruger v. Novant Health, Inc.*, 2016,
U WL 6769066 (M.D. N.C. Sept 29, 2016)................................................................................9

*Landmen Partners, Inc. v. The Blackstone Grp., L.P.*,
No. 1:08-cv-03601 (S.D.N.Y. Dec. 18, 2013), ECF No. 191.....................................................8

*Lucey v. Paucek*,
No. 20-cv-02424-GLR (D. Md.).................................................................................................4

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
No. 3:14CV238 (DJN), 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ......................................7

*Missouri v. Jenkins*,
491 U.S. 274 (1989)....................................................................................................................8

*Nieman v. Duke Energy Corp.*,
No. 3:12-cv-00456 (W.D.N.C. Nov. 2, 2015) ...........................................................................23

*Phillips v. Triad Guar. Inc.*,
No. 1:09CV71, 2016 WL 2636289 (M.D.N.C. May 9, 2016)..................................................14

*Rawa v. Monsanto Co.*,
934 F.3d 862 (8th Cir. 2019) .................................................................................................7

*Rawlings v. Prudential- Bache Props., Inc.*,
9 F.3d 513 (6th Cir. 1993) .....................................................................................................7

*Ret. Sys. v. Bank of Am. Corp.*,
318 F.R.D. 19 (S.D.N.Y. 2016) ............................................................................................23

*Reynolds v. Fidelity Invs. Institutional Operations Co., Inc.*,
No. 1:18- CV-423, 2020 WL 92092 (M.D.N.C. Jan. 8, 2020) .................................................21

*Seaman v. Duke Univ.*,
No. 1:15-CV-462, 2019 WL 4674758 (M.D. N.C. Sept. 25, 2019) ...................................19, 20

*Shumacher v. Paucek*,
No. 2020-1019-LWW (Del. Ch.)..............................................................................................4

*Singleton v. Domino's Pizza*,
LLC, 976 F. Supp. 2d 665 (D. Md. 2013) ...........................................................................19, 21

*Spell v. McDaniel*,
852 F.2d 762 (4th Cir. 1988) ................................................................................................21

*Sponn v. Emergent Biosolutions, Inc.*,
No. 8:16-cv-02625-RWT, 2019 WL 11731087 (D. Md. Jan. 25, 2019) .................................23

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
890 F. Supp. 499 (E.D. Va. 1995) ..........................................................................................7

*Sullivan v. DB Invs., Inc*,
667 F.3d 273 (3d Cir. 2011).................................................................................................22

*Swedish Hosp. Corp v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993).................................................................................................7

*Theis v. Paucek*,
No. 20-cv-3360-PAC (S.D.N.Y.)..............................................................................................4

*Thomas v. FTS USA, LLC*,
No. 3:13cv825(REP), 2017 WL 1148283 (E.D. Va. Jan. 9, 2017)......................................7, 18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ..................................................................................................6

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................................7

**Statutes**

15 U.S.C. § 78u- 4 .............................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23(h) ...................................................................................................6

**Other Authorities**

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2021
    Review and Analysis* (Cornerstone Research 2022) ...............................................10

Lead Counsel respectfully submits this memorandum of law in support of their motion for an Order: (1) awarding Plaintiffs' Counsel[1] attorneys' fees of 33.4% of the Settlement Amount and litigation expenses of $198,380.16; and (2) awarding Plaintiffs $35,121.65, in the aggregate, pursuant to 15 U.S.C. § 78u-4(a)(4), for reimbursement of the time they expended on behalf of the Settlement Class, to be paid from the Settlement Fund.[2]

## I.    INTRODUCTION

Plaintiffs and Defendants[3] have agreed to a settlement of all claims asserted in the Action, the dismissal with prejudice of the Consolidated Class Action Complaint filed on July 30, 2020 (the "Complaint"), and the release of all Released Claims, in exchange for a payment of $37,000,000.

In awarding fees, courts consider several factors, including the quality and quantity of work as reflected in the results obtained. Here, Plaintiffs' Counsel devoted over 12,000 hours to obtain an excellent Settlement for the Settlement Class. The Settlement Fund consists of $37 million, plus any interest thereon. For all the reasons set forth herein and in the accompanying Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action

---

[1] "Plaintiffs' Counsel" means Pomerantz LLP ("Pomerantz"), Labaton Sucharow LLP ("Labaton"), Bronstein Gewirtz & Grossman LLP, and Goldman & Minton, P.C. ("G&M"). All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 31, 2022 (the "Stipulation" or "Settlement"), previously filed with the Court (ECF No. 224-3).

[2] "Plaintiffs" means Lead Plaintiff Fiyyaz Pirani ("Pirani" or "Lead Plaintiff") and Additional Named Plaintiff Oklahoma City Employee Retirement System ("OCERS" or "Additional Named Plaintiff")

[3] Defendants are 2U, Inc. ("2U"), Christopher J. Paucek, Catherine A. Graham, Harsha Mokkarala, Paul A. Maeder, Robert M. Stavis, Gregory K. Peters, Timothy M. Haley, Valerie B. Jarrett, Earl Lewis, Coretha M. Rushing, Sallie L. Krawcheck, John M. Larson, Edward S. Macias, and Mark J. Chernis (with 2U, the "2U Defendants"), and Goldman Sachs & Co. LLC, Credit Suisse Securities (USA) LLC, Citigroup Global Markets Inc., Compass Point Research & Trading, LLC, KeyBanc Capital Markets Inc., and Macquarie Capital (USA) Inc. (collectively, the "Defendants," and with Plaintiffs, the "Parties").

1

Settlement and Approval of Plan of Allocation of the Net Proceeds of the Settlement, the Settlement is an outstanding result and supports the current application.

Plaintiffs' Counsel have successfully resolved this securities class action in exchange for payment of $37 million, which is over four times the median recovery in securities class actions in 2021—an excellent result for the Settlement Class.  This recovery was only possible through the skill, experience, and effective advocacy of Plaintiffs' Counsel, which undertook this Action on a contingent basis and pursued it aggressively. As set forth in the accompanying Declaration of Jeremy A. Lieberman (the "Lieberman Declaration"), the $37 million recovery was possible only after Plaintiffs' Counsel: (i) conducted a thorough and wide-ranging investigation concerning the allegedly fraudulent misrepresentations made by Defendants, which included a review and analysis of publicly available information, interviews with numerous witnesses who were former 2U employees that were familiar with the Company's student enrollment operations and other potentially relevant information, and consultation with experts on market efficiency, loss causation, and damages; (ii) prepared and filed a detailed Consolidated Class Action Complaint (ECF No. 92); (iii) researched and drafted an opposition (ECF No. 155) to Defendants' comprehensive motion to dismiss the Complaint (ECF No. 144), which the Court granted in part and denied in part; (iv) moved for class certification (ECF No. 210); (v) engaged in fact discovery efforts, which led to the analysis of approximately 285,000 pages of documents produced by Defendants and third parties; and (vi) conducted vigorous settlement negotiations conducted at arm's length in mediation overseen by Gregory Lindstrom, which included the preparation of mediation briefs, a full-day mediation session, and extensive subsequent negotiations.  Lieberman Decl., ¶4.

With respect to discovery, Plaintiffs' Counsel served written discovery on Defendants, served document subpoenas on—and met and conferred with—twenty-three third parties, analyzed over 50,000 documents totaling approximately 285,000 pages produced by Defendants and third parties, and prepared for noticed depositions that did not occur due to the stay and ultimate resolution of this Action. *Id.*, ¶¶ 39-47.

While fact discovery was ongoing, Plaintiffs' Counsel prepared and filed a motion for class certification, supported by a memorandum of law and an expert report concerning the efficiency of the market for 2U common stock, as well as damages. *Id.*, ¶37.

Plaintiffs' Counsel were aware that Plaintiffs faced substantial risks in pleading and proving their claims and their damages. While Plaintiffs believe that the claims asserted against Defendants were strong and that substantial evidence existed to prove Plaintiffs' claims and damages, the continuation of the litigation through summary judgment and trial presented multiple risks that could result in little or no recovery for the Settlement Class. *Id.*, ¶¶61-73.

The $37 million Settlement is particularly noteworthy in light of 2U's financial condition. As detailed in the Lieberman Declaration (*Id.*, ¶62) and discussed below, Plaintiffs' Counsel closely monitored and analyzed the Company's financial condition. Plaintiffs have serious doubt whether the Company could satisfy a trial verdict for the full extent of damages in this case. 2U's cash position and stock price have fallen drastically since the Class Period. As of the end of 2018, during the Class Period, 2U reported $450 million of cash and cash equivalents on hand.[4] As of March 31, 2022, that figure had fallen to $217 million,[5] and it declined to $220.8

---

[4] 2U, Inc., Annual Report for year ending December 31, 2018 (Form 10-K), filed Feb. 26, 2019, at 38 (available at
https://www.sec.gov/Archives/edgar/data/1459417/000110465919010491/a19-30045_410k.htm).
[5] 2U, Inc., Quarterly Report for period ending March 30, 2022 (Form 10-Q), filed May 10, 2022, at 4 (available at

million as of June 30, 2022.[6]  The Company has reported massive net losses in 2019, 2020, and 2021, and that trend has continued this year, with the Company incurring over $188 million in net losses for just the first six months of 2022.[7]  In addition to the precipitous stock price declines during the Class Period—at the end of which 2U's stock price was $12.80 per share, down from a Class Period high of $98 per share—the stock has continued to tumble, closing at $6.15 per share on October 27, 2022, yielding a market capitalization of only $477 million.  This represents a massive decline from the Company's $2.9 *billion* market capitalization as of the end of 2018.  Further, applicable insurance coverage would be depleted by defense costs if Plaintiffs continued to prosecute this Action, as well as by the three related derivative actions.[8]  Courts recognize that counsel's ability to maximize recovery in the face of solvency issues demonstrates the quality of the result achieved and supports the award of attorney's fees. *See, e.g.*, *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) ("Balanced with the risk of losing at trial and the risk that a greater award could result in [the company's] insolvency, the Settlement total provides an excellent result for the class and supports the Court's award of substantial attorneys' fees.").

---

https://www.sec.gov/ix?doc=/Archives/edgar/data/1459417/000145941722000018/twou-20220331.htm).

[6] 2U, Inc., Quarterly Report for period ending June 30, 2022 (Form 10-Q), filed July 28, 2022, at 4 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1459417/000145941722000021/twou-20220630.htm).

[7] 2U, Inc., Annual Report for year ending December 31, 2021 (Form 10-K), filed March 1, 2021, at 17 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1459417/000145941722000004/twou-20211231.htm) ("We incurred net losses of $194.8 million, $216.5 million and $235.2 million during the years ended December 31, 2021, 2020 and 2019, respectively."); 2U, Inc., Quarterly Report for period ending June 30, 2022 (Form 10-Q), filed July 28, 2022, at 5 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1459417/000145941722000021/twou-20220630.htm) (net loss for six months ending June 30, 2022).

[8] The derivative actions are: *Lucey v. Paucek*, No. 20-cv-02424-GLR (D. Md.); *Theis v. Paucek*, No. 20-cv-3360-PAC (S.D.N.Y.); and *Shumacher v. Paucek*, No. 2020-1019-LWW (Del. Ch.).

As compensation for their efforts, Plaintiffs' Counsel respectfully request an award of attorneys' fees of 33.4% of the Settlement Amount, or $12,358,000, and reimbursement of litigation expenses of $198,380.16, plus interest on both amounts at the same rate and for the same period of time as that earned on the Settlement Fund. Plaintiffs' Counsel's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved.

Since fee awards are designed to encourage counsel to achieve the best possible result for the class, the amount requested in this case is warranted given the exceptional recovery obtained and the significant obstacles and risks Plaintiffs' Counsel faced in bringing and prosecuting this case. As discussed herein, the requested fee award of 33.4% of the Settlement Amount is an amount that is well within the range regularly approved by courts for similar class action settlements.   Moreover, Plaintiffs actively supervised this litigation and recommend that Plaintiffs' Counsel's application be approved. *See* Lieberman Decl., Ex. 1 (Pirani Decl.); Ex. 2 (OCERS Decl.).   Plaintiffs' Counsel respectfully request that this Court approve the requested fees and litigation expenses as justified under the particular facts of this case.

Separately, Plaintiffs Pirani and OCERS seek awards of $30,000 and $5,121.65, respectively, pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class. Plaintiffs support their applications with declarations setting forth the basis for the awards.  *See* Lieberman Decl., Exs. 1-2.  Plaintiffs respectfully request that the Court approve the requested awards.

## II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.

### A.    The Settlement Creates a Common Fund from Which a "Percentage-of-the-Fund" Fee Would be Appropriate.

Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As the Supreme Court has recognized, a "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This common fund doctrine is based on the inherent powers of the federal court to "prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.*

The two methods of calculating attorneys' fees in class actions are the percentage-of-the-fund method and the lodestar method. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009). The percentage-of-the-fund method involves an award based on a percentage of the class's recovery, set by the court based on several factors. *Id.* The lodestar method requires multiplying the number of hours worked by a reasonable hourly rate, the product of which the court can then adjust by employing a "multiplier." *Id.* The Supreme Court has suggested that the percentage-of-recovery is the appropriate method for awarding fees under the common fund doctrine. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."). Most federal courts of appeals have also endorsed the percentage-of-recovery method as an appropriate method for determining an award of attorneys' fees in common fund cases.[9]

---

[9] *See, e.g.*, *Heien v. Archstone*, 837 F.3d 97, 100 (1st Cir. 2016); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2nd Cir. 2000); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3rd Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d

"While the Fourth Circuit has not definitively answered this debate, other districts within this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees in common fund cases." *Mills*, 265 F.R.D. at 260; *see also Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238 (DJN), 2016 WL 1070819, at *5 (E.D. Va. Mar. 15, 2016) ("District Courts within this Circuit have also favored the percentage method."); *Archbold v. Wells Fargo Bank, N.A.*, No. 3:13-CV-24599, 2015 WL 4276295, at *5 (S.D. W. Va. July 14, 2015) ("[T]here is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery."); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("Although the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases."); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases.").

These courts recognize that the percentage-of-the-fund method is "more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases." *Strang*, 890 F. Supp. at 503. It also "'better aligns the interests of class counsel and class member[s] because it ties the attorneys' fee award to the overall result achieved, rather than hours expended by the attorneys.'" *Thomas v. FTS USA, LLC*, No. 3:13cv825(REP), 2017 WL 1148283, at *3 (E.D. Va. Jan. 9, 2017) (quoting *Jones*, 601 F.

_____

632, 644 (5th Cir. 2012); *Rawlings v. Prudential- Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993)

Supp. 2d at 758), *report and recommendation adopted*, No. 3:13cv825, 2017 WL 1147460 (E.D. Va. Mar. 27, 2017); *see also Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *5 (S.D. W. Va. May 23, 2013) ("The percentage method 'is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.'") (quoting *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)).

Plaintiffs' Counsel's application based on the percentage-of-fund method is therefore consistent with the law in this and other circuits. As explained below, the factors courts consider when assessing percentage-of-fund requests demonstrate the reasonableness of Plaintiffs' Counsel's requested fee, which is further confirmed by cross-checking the requested amount against Plaintiffs' Counsel's calculated lodestar.

### B.    A Fee Equal to 33.4% of the Settlement Fund is Appropriate.

The Supreme Court has observed that it has "consistently looked to the marketplace as our guide to what is 'reasonable.'" *Missouri v. Jenkins,* 491 U.S. 274, 285 (1989). "Within the Fourth Circuit, contingent fees of roughly 33% are common." *Earls v. Forga Contracting, Inc.*, No. 1:19-CV-00190-MR-WCM*, 2020 WL 3063921 at *4 (W.D.N.C. June 8, 2020). Courts in this District and elsewhere routinely award attorneys' fees of 33.33% of a settlement fund for similar and even higher recoveries. *See, e.g., In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) (awarding 33% of $94 million settlement fund); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.33% of $510 million settlement fund); Final Judgment and Order, *Landmen Partners, Inc. v. The Blackstone Grp., L.P.*, No. 1:08-cv-03601 (S.D.N.Y. Dec. 18, 2013), ECF No. 191 (awarding 33.33% of $85 million settlement fund); Final Order and Judgment, *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank N.A.*, No. 0:10-cv-04372 (D. Minn. Aug.

18, 2014), ECF No. 686 (awarding 33.33% of $62.5 million settlement fund); Order Awarding Attorneys' Fees and Expenses, *Grae v. Corrections Corp. of Am.*, No. 3:16-cv-02267 (M.D. Tenn. Nov. 8, 2021), ECF No. 478 (awarding 33.33% of $56 million settlement fund); *In re Buspirone Antitrust Litig.*, No. 1:01-md-01410 (S.D.N.Y. Apr. 11, 2003) (awarding 33.3% of $220 million settlement fund); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318(RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding 33.33% of $163.5 million settlement fund); *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) (awarding 33.33% of $32 million settlement fund).

In light of the foregoing, Class Counsel's request for 33.4% percent of the $37 million Settlement is consistent with a substantial body of case law in this Circuit and elsewhere.

## C. Plaintiffs' Counsel's Fee Request is Fair and Reasonable Under Fourth Circuit Authority.

In determining the reasonableness of a fee that is a percentage of the fund, courts in the Fourth Circuit apply the factors articulated by the Third Circuit in *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001).  *See Genworth*, 210 F. Supp. 3d at 843.  These *Cendant* factors include: "(1) the result obtained for the class; (2) the presence or absence of substantial objections by members of the class to the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by the plaintiffs' counsel; and (7) awards in similar cases." Some district courts in this Circuit have applied a slightly different version of this standard, replacing the sixth factor with public policy considerations. *See, e.g., In re Celebrex*, 2018 WL 2382091, at *4; *Mills*, 265 F.R.D. at 261 (citing, *inter alia*, *Goldberger*, 209 F.3d at 50).

9

When evaluating the lodestar, courts use the factors set by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). *See Genworth*, 210 F. Supp. 3d at 843; *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 387 (D. Md. 2006); *In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 786 n.23 (E.D. Va. 2001). The *Barber* factors include (1) the time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill required to properly perform the legal services; (4) attorney's opportunity costs in pressing the litigation; (5) customary fee for like work; (6) attorney's expectations at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) amount in controversy and results obtained; (9) experience, reputation, and ability of the attorney; (10) undesirability of the case within the legal community in which the suit arose; (11) nature and length of the professional relationship between the attorney and client; and (12) fee awards in similar cases. *See Genworth*, 210 F. Supp. 3d at 843 (citing *Barber*, 577 F.2d at 226 n.28).

Both the *Cendant* and *Barber* factors "reference . . . essentially the same case-specific factors" to evaluate reasonableness. *MicroStrategy*, 172 F. Supp. 2d at 786-87. As set forth below, each of these factors supports the reasonableness of the requested fee in this case.

### 1. Plaintiffs' Counsel Obtained an Exceptional Result.

"The first and most important factor for a court to consider when making a fee award is the result achieved." *Genworth*, 210 F. Supp. 3d at 843 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained.")).

Here, Plaintiffs' Counsel achieved an excellent result. The Settlement provides $37 million in cash for the benefit of the Settlement Class, which is over four times the median recovery in securities class actions in 2021. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, at 4 (Cornerstone Research 2022) (finding that the median securities class action settlement in 2021 was $8.3 million).

Plaintiffs' Counsel obtained this recovery as a result of their effective advocacy on behalf of the Settlement Class and efficient prosecution of this case through an extensive investigation, robust pleading, hard-fought motion to dismiss briefing, and vigorous and substantial discovery. Lieberman Decl., ¶¶ 18-47.  Plaintiffs' Counsel overcame Defendants' motion to dismiss and, while securing discovery from Defendants and from numerous third parties, prepared and filed a motion for class certification.  *Id.*, ¶ 37.  The decline in 2U's financial condition and stock price, and the danger that this and related actions would deplete applicable insurance coverage, provides additional evidence that the $37 million Settlement is a superb result.  *Id.*, ¶ 62.

Weighed against the significant challenges presented by continued litigation and 2U's diminished financial condition, and compared to many other securities class action settlements, the Settlement provides an exceptional result for the Settlement Class and supports Plaintiffs' Counsel's request for attorneys' fees.

### 2.   No Settlement Class Members Have Objected to the Fee Request.

"A lack of objections by class members as to fees requested by counsel weighs in favor of the reasonableness of the fees." *Genworth*, 210 F. Supp. 3d at 844; *see also Feinberg v. T. Rowe Price Grp., Inc.*, No. JKB-17-0427, 2022 WL 2529545, at *8 (D. Md. July 6, 2022) ("[T]hat no class members have objected—either to the proposed settlement as a whole or to the requested fees—confirms that, from the class members' perspective, counsel has achieved a good result and the fees are reasonable.").  On the Notice Date of July 1, 2022, the Court-appointed Claims Administrator sent notification of the Settlement to all 2U shareholders of record as well over one thousand banks, brokers, and other nominees (reflecting the fact that the large majority of Settlement Class members are expected to be beneficial purchasers whose securities are held in "street name").  Lieberman Decl., Ex. 3 ("Mailing Decl."), ¶¶ 4-12.

11

To date, not a single Settlement Class Member has objected to the Settlement or to Lead Counsel's fee request.  *Id.*, ¶ 20.   The deadline for objections is November 10, 2022, and Plaintiffs' Counsel will update the Court as to any objections in their reply papers, which are due on November 25, 2022.

### 3.   Plaintiffs' Counsel Are Skilled and Efficient Litigators.

The quality of the representation is another significant factor supporting Lead Counsel's fee request. *See Genworth*, 210 F. Supp. 3d at 844 ("The skill required in complex cases such as this involving massive discovery efforts and complicated issues of fact and law also weighs in favor of supporting the substantial attorneys' fees award in this case."). Plaintiffs' Counsel's experience in litigating securities actions was vital to the success achieved. Plaintiffs' Counsel are among the nation's preeminent law firms in the area of securities class action litigation with long and successful track records in such cases. *See* Lieberman Decl., ¶¶91-92 and Exs. 4-D and 5-D.  As in *In re Neustar, Inc. Sec. Litig.*, "[c]ounsel in this case are affiliated with national law firms recognized for their experience in securities litigation and class representation," and their respective firm resumes include pages "of notable securities class action successes demonstrating counsel's competency." No. 1:14cv885, 2015 WL 8484438, at *4 (E.D. Va. Dec. 8, 2015).

And, of course, "the result achieved is the clearest reflection of petitioners' skill and expertise."  *In re Linerboard Antitrust Litig.*, No. CIV.A. 98- 5055, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), amended, No. CIV.A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004).  The Settlement here reflects Lead Counsel's skill and expertise.

The high quality of the opposition faced by Plaintiffs' Counsel is also relevant. *See Genworth*, 210 F. Supp. 3d at 842; *Mills*, 265 F.R.D. at 262. Here, Defendants are ably represented by highly skilled and experienced securities litigators from some of the leading defense law firms in the United States: Latham & Watkins LLP; Skadden, Arps, Slate, Meagher

& Flom LLP; and Paul Hastings LLP.  It was in the face of such skilled and vigorous opposition that Plaintiffs' Counsel obtained the benefits for the Settlement Class that they did.  This factor weighs in favor of the requested fee award.

### 4.  The Complexity and Duration of the Litigation Support the Request.

"[S]ecurities fraud cases require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentations are notoriously difficult to establish.'" *Genworth*, 210 F. Supp. 3d at 844 (citing *Mills*, 265 F.R.D. at 263).  Due to the inherent complexity of securities litigation and the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, 15 U.S.C. § 78u-4(f)(7) ("PSLRA"), prosecution of securities class action litigation is inherently complex and lengthy.  Since this case was filed, and during the COVID-19 pandemic, Plaintiffs' Counsel:

(i)      conducted a robust investigation concerning the allegedly fraudulent misrepresentations and omissions that involved, among other things, a review of publicly available information regarding 2U;

(ii)     identified approximately 441 former 2U employees and other persons believed to have relevant knowledge, contacted 267 of them, and interviewed 82 of them;

(iii)    prepared and filed a detailed 164-page consolidated class action complaint;

(iv)     consulted with damages experts to evaluate recoverable losses;

(v)      researched and drafted an opposition to Defendants' motion to dismiss the complaint, which included 50 pages of briefing and 23 exhibits;

(vi)     served and responded to document requests;

(vii)    served subpoenas on twenty-three third parties for documents relevant to the litigation, and held extensive meet-and-confer sessions with those third parties;

13

(viii)   analyzed approximately 285,000 pages of documents produced by Defendants and third parties;

(ix)   prepared and filed a motion for class certification;

(x)   prepared and filed an expert report on market efficiency and damages;

(xi)   prepared for noticed depositions of Plaintiffs that, due to the beginning of settlement talks, did not occur;

(xii)   prepared and submitted multiple mediation statements; and

(xiii)   prepared for and participated in a full-day mediation session.

Lieberman Decl., ¶ 18-52.

This case's complexity and duration strongly support the reasonableness of Plaintiffs' Counsel's request.

### 5.   The Risk of Nonpayment Supports the Fee Request.

The risk of receiving little or no recovery is a factor courts in this Circuit recognize when considering an award of attorneys' fees. *See, e.g.*, *Mills*, 265 F.R.D. at 263 ("'[C]ounsel bore a substantial risk of nonpayment . . . [t]he outcome of the case was hardly a foregone conclusion, but nonetheless counsel accepted representation of the plaintiff and the class on a contingent fee basis, fronting the costs of litigation.'"); *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *6 (M.D.N.C. May 9, 2016) (finding fee award justified where "[l]ead [c]ounsel bore the risks involved with surviving dispositive motions, obtaining class certification, proving liability, causation, and damages, prevailing with experts, and litigating through trial and possible appeals" knowing "'that the only way [they] would be compensated was to achieve a successful result'"). In addition to the risk of non-recovery at trial, "any victory at trial in this case would have to withstand appeals which could reverse or limit any award by a jury." *Genworth*, 210 F. Supp. 3d at 844.

14

Plaintiffs' Counsel undertook this Action on a contingent fee basis. *See* Lieberman Decl., ¶57. Plaintiffs' Counsel thus assumed the risk that the litigation would yield no, or little, recovery and would leave them uncompensated for their significant investment of time and expenses. Plaintiffs' Counsel faced challenges pleading and proving the merits of the case, resulting in a further risk of non-recovery. Both Plaintiffs and Defendants were strongly convinced of their legal and factual arguments, a resolution of this matter without trial was not certain, and at trial either side could potentially prevail. *See* Lieberman Decl. ¶¶ 63-73. Throughout the Action, Defendants argued that the alleged false statements were not materially false or misleading, and that even if false, the statements were not made with scienter. Although Plaintiffs and Plaintiffs' Counsel believe strongly in the merits of the case they would have presented at trial, they recognized that Defendants would have attempted to present credible non-fraudulent alternative explanations for Defendants' conduct. *Id.* ¶¶ 63-68. As discussed in the accompanying brief in support of Plaintiffs' motion for final approval of the Settlement, Defendants advanced arguments concerning standing, falsity, scienter and loss causation throughout the litigation. While Lead Counsel believe they had meritorious responses to Defendants' arguments, there was no guarantee the Court would agree. Indeed, the Court dismissed a significant portion of the claims asserted in the Complaint, leaving only a subset of claims for potential recovery. Further, the Company's weakened financial condition raises doubts as to whether it could satisfy a judgment larger than the $37 million Settlement. *Id.* ¶ 62.

.Despite these headwinds, Plaintiffs' Counsel devoted over 12,000 hours to prosecuting the case on behalf of the Settlement Class knowing that there was a very real risk that they could receive no payment for their substantial time and effort. Lieberman Decl. ¶ 89. Additionally, Plaintiffs' Counsel incurred $198,380.16 in litigation expenses and charges to prosecute the

litigation (*id.*), which would not have been recovered absent a successful result. *See Mills*, 265 F.R.D. at 263 (noting uncertainty of the case outcome, defendants' rigorous defense, and that "[l]ead [c]ounsel devoted thousands of hours on the case and fronted nearly $3 million in costs in the process" to conclude that factor weighed in favor of awarding the requested fee); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ("Aside from investing their time, counsel had to front copious sums of money . . . . Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award."). The risk of nonpayment weighs in favor of the requested fee award.

### 6.   Plaintiffs' Counsel Necessarily Devoted Over 12,000 Hours to the Action.

Plaintiffs' Counsel devoted considerable time and effort to researching, investigating, and litigating this case. *See* Lieberman Decl., ¶¶4, 18-54.  As set forth in the Lieberman Declaration and Plaintiffs' Counsel's Fee and Expense Declarations, Plaintiffs' Counsel devoted 12,395.67 hours prosecuting this case, resulting in a total lodestar of $6,863,624.30.  Lieberman Decl., ¶ 89 and Exs. 4-6 thereto.  Plaintiffs' Counsel could have spent those attorney hours litigating other matters, which weighs in favor of awarding the requested fees. *See Barber*, 577 F.2d at 226 n.28 (considering as supportive of a fee request "the attorney's opportunity costs in pressing the instant litigation"); *see also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 523 (E.D.N.Y. 2003) ("hardship" and "risk" of litigation "weigh[] in favor of higher compensation" when "investment of resources substantially impacted the firm's ability to staff other matters and to accept new profit-generating matters"). The extensive time and resources Plaintiffs' Counsel committed to this case similarly weigh in favor of the requested fee.

### 7.   Public Policy Considerations Support the Requested Fee.

A "central factor in fixing the amount of attorneys' fees is 'to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of

representing a class." *Mills*, 265 F.R.D. at 260. In complex securities cases, fee awards have been enhanced by courts "to provide an incentive for competent lawyers to pursue such actions in the future." *MicroStrategy*, 172 F. Supp. 2d at 788.  Public policy "generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves but also will not create an incentive to bring unmeritorious actions." *Jones*, 601 F. Supp. 2d at 765 (citing *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 142 (S.D.N.Y. 2008); *MicroStrategy*, 172 F. Supp. 2d at 789 n.36). "The cost and difficulty [of bringing a meritorious complex class action] naturally stands as a deterrent from doing so, and one object of an award of attorneys' fees should be to counteract this deterrence and incentivize competent attorneys to pursue these cases when necessary." *Mills*, 265 F.R.D. at 263.  Indeed, "meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

Public policy considerations support awarding the requested fee.

### 8.  33.4% of the Settlement Amount Is a Reasonable Fee Award.

Courts look "to fee awards in analogous cases to determine the reasonableness of the percentage requested." *Mills*, 265 F.R.D. at 263-64.  Here, Plaintiffs' Counsel's 33.4% fee request is eminently reasonable when considering the customary awards in similar cases in this District and the Fourth Circuit. *See* § II.B., *supra*.

Additionally, "[t]he percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee which would be negotiated if the lawyer were offering his or her services in the private marketplace." *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03- 0085 FSH, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005), *judgment entered*, No. 03-

17

CV-0085 (FSH), 2005 WL 8181042 (D.N.J. Nov. 9, 2005). "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *Id*; *see also Thomas*, 2017 WL 1148283, at \*5 ("[A]ny discussion of percentage awards should acknowledge the age-old assumption that a lawyer receives a third of his client's recovery under most contingency agreements."). Consideration of the awards in similar cases strongly supports the requested award of 33.4% of the Settlement Amount.

### D. A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Fee Request is Reasonable.

Courts often supplement their analysis of the percentage-of-fund method with a lodestar cross-check. "A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case," and "then compares that figure with the attorneys' fees award, typically resulting in a positive multiplier." *Genworth*, 210 F. Supp. 3d at 845. When using the lodestar as a cross-check, courts "take a somewhat truncated approach to the lodestar analysis" and "generally do not apply the same scrutiny in a lodestar cross-check as they do when using the lodestar method to calculate the fee." *Thomas*, 2017 WL 1148283, at \*6; *see also Jones*, 601 F. Supp. 2d at 765 (explaining that when "using the lodestar method as a cross-check," the court "need not apply the 'exhaustive scrutiny' normally required by that method").

Since fee awards are designed to encourage efficient litigation and great results, courts recognize that the fee award should "include a reward or enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors." *Id*. Multipliers are appropriate to encourage efficiency and to compensate for the delay in payment and additional risks because, unlike defense firms who are guaranteed payment win or lose and paid immediately, Plaintiffs' Counsel are only paid at the end of the

18

case and only if the case is successful. *See, e.g., id.* at 788 (noting that because PSLRA cases are essentially contingent fee cases, "there is no fee unless there is a recovery and the fee awarded must bear a reasonable relation to the size of the recovery").

Plaintiffs' Counsel and their professionals have expended 12,395.67 hours prosecuting this Action with a resulting lodestar of approximately $6,863,624.30. Lieberman Decl., ¶ 89.[10] This results in a 1.8 multiplier on Plaintiffs' Counsel's lodestar based on their 33.4% fee request. *See* Lieberman Decl., ¶90; Ex. 4 ("Pomerantz Fee Decl."), ¶3 and Exs. 4-A and 4-B; Ex. 5 ("Labaton Fee Decl."), ¶4 and Exs. 5-A and 5-B; Ex. 6 ("G&M Fee Decl."), ¶¶6-7. This modest lodestar multiplier confirms the reasonableness of the requested 33.4% fee award, as it is within the range of reasonableness and well below the 2-3x multipliers regularly awarded in the Fourth Circuit. "District courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2-3 times lodestar multipliers." *Genworth*, 210 F. Supp. 3d at 845 & n.5 (citing cases approving lodestar multipliers of 2.6x to 2.9x). *See Royal Ahold*, 461 F. Supp. 2d at 387 (approving a 2.6x lodestar multiplier); *MicroStrategy*, 172 F. Supp. 2d at 787-88 (approving a 2.6x lodestar multiplier); *see also Singleton v. Domino's Pizza*, LLC, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.").

Further, as detailed in the Lieberman Declaration, the number of hours spent by Plaintiffs' Counsel was reasonable given the extensive investigation prior to filing the Complaint, the efforts required to overcome Defendants' fifty-page motion to dismiss, the zealous pursuit of discovery from Defendants and third parties, the filing of a class certification motion, and participation in the arms-length negotiations that led to the

---

[10] This lodestar is based on counsel's current rates, which is "appropriate to account for the delay in payment to counsel." *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 4674758, at *5 (M.D.N.C. Sept. 25, 2019).

Settlement.   The complexity of the legal issues involved, and the intensity and skill of Defendants' Counsel also justify the number of hours spent by Plaintiffs' Counsel. Finally, Plaintiffs' Counsel anticipate expending additional time in connection with administering the Settlement, for which Plaintiffs' Counsel will not seek additional compensation.

Moreover, Plaintiffs' Counsel's hourly rates are "within the range of reasonableness for PSLRA cases, where the market for class action attorneys is nationwide and populated by very experienced attorneys with excellent credentials." *MicroStrategy*, 172 F. Supp. 2d at 788. The hourly rates of Plaintiffs' Counsel are based on periodic analyses of rates used by firms performing comparable work on both the plaintiffs' and defense side.  *See* Pomerantz Fee Decl., ¶4; Labaton Fee Decl., ¶4.[11]

### III.    PLAINTIFFS' COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES IS REASONABLE.

Plaintiffs' Counsel also request an award of reasonable and necessary litigation expenses and charges incurred to prosecute this Action.   Since the inception of the case, Plaintiffs' Counsel have incurred $198,380.16 in expenses and charges.  Lieberman Decl., ¶

---

[11] Plaintiffs' Counsel recognize that, in some instances, these rates may be higher than the prevailing rates in this District. "When fees are awarded based on the lodestar, not as a comparison, a prevailing plaintiff may justify an award of extra-community hourly market rates if 'the complexity and specialized nature of the case . . . mean that no attorney, with the required skills, is available locally, and the party choosing the attorney from elsewhere acted reasonably in making the choice.'" *Seaman*, 2019 WL 4674758, at *5; *see also Feinberg*, 2022 WL 2529545, at *9 ("'[C]ourts have repeatedly recognized [that] complex ERISA class action litigation, such as this, involves a national market' and that 'the relevant market rate for [such cases] is a nationwide market rate.'") (citation omitted).  While there are experienced securities class action practitioners in this District, there are not many local firms both with the expertise and willingness to dedicate the resources necessary to bring a case of this magnitude on a purely contingent basis. *See Seaman*, 2019 WL 4674758, at *5 ("While antitrust lawyers exist locally, as noted above there are not many firms willing to handle a high-risk matter requiring the resources, time, and skill this case demanded."). In addition, it is highly likely that Plaintiffs' Counsel's hourly rates compare favorably with those of Defendants' counsel, where there is no contingency to the payment of fees and expenses. *See* Lieberman Decl., Ex. 7 (listing rates used in bankruptcy fee applications in 2021).

89.[12] "'It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award.'" *Singleton*, 976 F. Supp. 2d at 689. Such costs may include "'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988).

The amount requested is based on the declarations of Plaintiffs' Counsel. *See* Pomerantz Fee Decl., ¶¶4-6 and Ex. 4-C; Labaton Fee Decl., ¶¶5-7 and Ex. 5-C; G&M Fee Decl., ¶9. The expenses/charges are broken down in each declaration by type and amount. The categories of expenses/charges for which an award is sought include expert costs, investigative costs, electronic discovery costs, travel, meals, photocopying, overnight mail, deposition services and transcripts, and electronic research. These are the type of expenses routinely charged to hourly clients in non-contingent private litigation. *See, e.g.*, *Reynolds v. Fidelity Invs. Institutional Operations Co., Inc.*, No. 1:18- CV-423, 2020 WL 92092, at *4 (M.D.N.C. Jan. 8, 2020) (explaining that "mailing costs, online legal research, long-distance telephone use, expert and mediator fees, travel expenses for mediation and court proceedings, and court filing fees. . . . are 'reasonable out-of-pocket expenses . . . which are normally charged to a fee-paying client, in the course of providing legal services'") (quoting *Singleton*, 976 F. Supp. 2d at 689).

Plaintiffs' Counsel's request for the payment of $198,380.16 from the common fund for reimbursement of expenses is reasonable and should be approved. No objections to the payment of these expenses have been filed.

---

[12] This is less than the amount stated in the Notice, *i.e.*, that Plaintiffs' Counsel would request up to $425,000 in litigation expenses. *See* Lieberman Decl., Ex. 3 (Mailing Decl.), Ex. 3-A (Notice), at 2, ¶5.

## IV.   THE REQUESTED PSLRA AWARDS TO PLAINTIFFS ARE REASONABLE.

Lead Plaintiff Fiyyaz Pirani and Additional Named Plaintiff Oklahoma City Employee Retirement System ("OCERS") also request approval of awards in the amounts of $30,000 and $5,121.65, respectively, pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their representation of the Settlement Class.  Exs. 1,2.  The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).

Courts have routinely encouraged "class representatives, by appropriate means, to create common funds and to enforce laws—even approving 'incentive awards' to class representatives." *In re Schering-Plough. Corp. Enhance Sec. Litig.,* Nos. 08-397, 08-2177, 2013 WL 5505744, at *56 (D.N.J. Oct. 1, 2013) (quoting *Sullivan v. DB Invs., Inc*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011); *see also Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) (courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place").

District courts in the Fourth Circuit routinely approve such awards under 15 U.S.C. § 78u4(a)(4) to compensate Lead Plaintiffs for the time and effort related to supervising the action on behalf of the absent class members. *See, e.g.*, *In re Comput. Sci. Corp. Sec. Litig.*, No. Civ. A. 1:11-cv-610-TSE-LDD, 2013 WL 12155436, at *2 (E.D. Va. Sept. 20, 2013) (awarding "[c]lass [r]epresentative reimbursement of its reasonable costs for the time devoted

22

to the matter"); *Sponn v. Emergent Biosolutions, Inc.*, No. 8:16-cv-02625-RWT, 2019 WL 11731087, at *2 (D. Md. Jan. 25, 2019) (same).  This includes time that each of these Plaintiffs spent (a) communicating with Plaintiffs' Counsel by email and telephone calls regarding the progress of the case; (b) reviewing pleadings and briefs filed; (c) working with Plaintiffs' Counsel to respond to document requests and interrogatories; and (d) consulting with Plaintiffs' Counsel with respect to mediations, settlement negotiations, and whether to accept the mediator's recommendation.  Exs. 1, 2.

Courts regularly make similar or more generous awards to lead plaintiffs as the award requested here.  *See Mills*, 265 F.R.D. at 265 (reimbursing lead plaintiffs $42,419.50); *In re Massey Energy Co. Sec. Litig.*, C. A. No. 5:10-cv-00689-ICB (S.D. W. Va. June 4, 2014), ECF No. 203 (reimbursing lead plaintiff $33,889.18); *Comput. Sci.*, 2013 WL 12155436, at *2 (awarding $28,881 for time and $32,024 for expenses); *Genworth*, 210 F. Supp. 3d at 846 (awarding $23,128 for time relating to supervision of the action); *Nieman v. Duke Energy Corp.*, No. 3:12-cv-00456 (W.D.N.C. Nov. 2, 2015), ECF No. 112 (reimbursing lead plaintiff $20,612.50).[13]

---

[13] The requested awards are lower than a number of awards courts have approved in other cases. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 14-cv-7126 (JMF), 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (awarding $50,000 to six named plaintiffs and $100,000 to two of them, in addition to out-of-pocket expenses for three of them finding that "the considerable effort expended by the named Plaintiffs to assist in the litigation renders the awards requested by lead counsel appropriate" and that "in the aggregate they amount to a miniscule portion of the settlement fund."); *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, No. 09 MDL 2058 (PKC), 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013) (awarding $259,610 to one plaintiff and $125,688 to a second plaintiff), *aff'd*, 772 F.3d 125 (2d Cir. 2014); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (awarding $130,323 to sole lead plaintiff); Final Judgment Approving Class Action Settlement, *In re Tronox, Inc. Sec. Litig.*, No. 09-cv-6220 (SAS) (S.D.N.Y. Nov. 26, 2012), ECF No. 202 (awarding $194,460, including $129,804 to two related lead plaintiffs); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV3400 CM PED, 2010 WL 4537550, at *31 (S.D.N.Y. Nov. 8, 2010) (awarding lead plaintiff $100,000).

Plaintiffs and Plaintiffs' Counsel respectfully request that the awards be approved pursuant to the PSLRA.

## V.   CONCLUSION

For the reasons discussed above, Plaintiffs' Counsel respectfully request that the Court: (1) award Lead Counsel 33.4% of the Settlement Amount, or $12,358,000, as attorneys' fees, plus accrued interest; (2) award litigation expenses incurred by Plaintiffs' Counsel in the amount of $198,380.16, plus accrued interest; and (3) grant Plaintiffs Fiyyaz Pirani and Oklahoma City Employee Retirement System awards of $30,000 and $5,121.65, respectively.

DATED: October 28, 2022                Respectfully submitted,

                                       **POMERANTZ LLP**

                                       *By:* /s/ *Jeremy. A. Lieberman*

                                       Jeremy A. Lieberman (admitted *pro hac vice*)
                                       Emma Gilmore (admitted *pro hac vice*)
                                       Villi Shteyn (admitted *pro hac vice*)
                                       600 Third Avenue, 20th Floor
                                       New York, NY 10016
                                       Telephone: (212) 661-1100
                                       Facsimile: (917) 463-1044
                                       jalieberman@pomlaw.com
                                       egilmore@pomlaw.com
                                       vshteyn@pomlaw.com

                                       *Counsel for Lead Plaintiff Fiyyaz Pirani and Lead Counsel for the Class*

                                       **GOLDMAN & MINTON, P.C.**

                                       Thomas J. Minton – No. 03370
                                       3600 Clipper Mill Rd., Suite 201
                                       Baltimore, MD 21211
                                       Telephone: (410) 783-7575
                                       Facsimile: (410) 783–1711
                                       Email: tminton@charmcitylegal.com

24

*Counsel for Lead Plaintiff Fiyyaz Pirani*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for Lead Plaintiff Fiyyaz Pirani*

**LABATON SUCHAROW LLP**

James W. Johnson (admitted *pro hac vice*)
Michael H. Rogers (admitted *pro hac vice*)
Lara Goldstone (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
lgoldstone@labaton.com
jchristie@labaton.com

*Counsel for Additional Named Plaintiff
Oklahoma City Employee Retirement System*

25

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: /s/ Jeremy. A. Lieberman
Jeremy A. Lieberman