**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE 2U, INC. SECURITIES CLASS ACTION | Consolidated Case No. 8:19-cv-03455-TDC |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**AUTHORIZING DISTRIBUTION OF CLASS ACTION SETTLEMENT FUNDS**

Lead Plaintiff Fiyyaz Pirani ("Lead Plaintiff") and Additional Named Plaintiff Oklahoma City Employee Retirement System ("Additional Named Plaintiff") (collectively, "Plaintiffs"),[1] on behalf of themselves and all other members of the Settlement Class, respectfully submit this memorandum of law in support of their Motion for Distribution of Class Action Settlement Funds ("Motion") in the above-captioned Action. If entered by the Court, the [Proposed] Order Authorizing Distribution of Class Action Settlement Funds (the "Distribution Order") will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in this action; and (ii) direct distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Declaration of Bradford Amann in Support of Plaintiffs' Motion for Order Authorizing Distribution of Class Action Settlement Proceeds (the "Amann Declaration" or "Amann Decl.") and the exhibits thereto.

## I.    BACKGROUND

On June 23, 2022, the Court entered the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 229). On December 9, 2022, following a fairness hearing at which no Settlement Class Members objected to the Settlement, the Court entered the Final Judgment and Order of Dismissal with Prejudice, approving the plan of allocation and settlement of this Action (ECF No. 258) (the "Judgment").

The Court-appointed Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), has advised Lead Counsel that it completed all analyses and accounting procedures in

---

[1] All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 31, 2022 (the "Stipulation") (ECF No. 224-3).

1

connection with the Claim Forms submitted by those persons who responded to the Notice, and has determined which of those persons are, subject to Court approval, Authorized Claimants. Amann Decl. ¶32. All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants. Thus, the Court should authorize the distribution of the Net Settlement Fund to Authorized Claimants, as identified in Exhibits C-1 and C-2 to the Amann Declaration.

## II.   DETERMINATION OF AUTHORIZED CLAIMANTS

All Claims were to be submitted to the Claims Administrator no later than October 29, 2022. Amann Decl. ¶26. The Claims Administrator continued processing all claims received through April 5, 2023. *Id*. As a result of an effective notice program, through April 5, 2023, Epiq received 16,696 Claim Forms. *Id.* ¶32.

After reviewing, analyzing, and processing all 16,696 Claim Forms received through April 5, 2023, Epiq has finalized its determination of which claims are authorized and which are ineligible. *Id.* ¶¶32-35.

### A.  Valid and Properly Documented Claims

Epiq analyzed the 16,696 Claim Forms received through April 5, 2023 and determined that 9,524 of them are valid and properly documented claims. Amann Decl. ¶ 35. These 9,524 claims represent Recognized Losses of $1,471,903,729.21, nearly all of which relate to claims that were timely, *i.e.*, received or postmarked no later than the October 29, 2022 deadline established by the Court ("Timely Eligible Claims"). *Id*. There are Recognized Losses of $1,464,725,187.00 for Timely Eligible Claims and Recognized Losses of $7,178,542.21 for claims received after the October 29, 2022 deadline but before the Claim's Administrator's cut-off date of April 5, 2023 ("Late But Otherwise Eligible Claims"). *Id*.

The Court should accept all 9,524 valid and properly documented claims received through April 5, 2023, including the Late But Otherwise Eligible Claims. The Late But Otherwise Eligible Claims have not caused delay to the distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant, and Plaintiffs believe that it would be unfair to prevent otherwise valid claimants from participating in the Net Settlement Fund solely because their claims were submitted after the October 29, 2022 deadline but while claims were still being processed. *Id.* ¶26; *see also In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) (stating that the "determination of whether to allow the participation of late claimants in a class action settlement is essentially an equitable decision within the discretion of the court," and allowing late claims postmarked within one month and four days of original deadline to participate in the distribution of settlement funds); *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, Order Approving Distribution of Net Settlement Fund at p.2, Dkt. No. 102, No. 1:19-cv-00982-CMH-MSN (E.D. Va. Apr. 14, 2022) (including late-filed claims in distribution of securities class action settlement proceeds); *In Re Comput. Scis. Corp. Sec. Litig.*, Order Approving Distribution of Net Settlement Fund at p.1, Dkt. No. 343, 1:11-cv-00610-TSE-IDD (E.D. Va. Jun 03, 2011) (same).

The Court should also enter an Order directing that no claims received after April 5, 2023, or any responses to deficiency and/or rejection notices received after May 9, 2023, be included in the distribution. To facilitate the efficient and proportional distribution of the Net Settlement Fund, there must be a final cut-off after which no other claims may be accepted. *In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) ("[A]t some point in the distribution of a large class action settlement, such as this one, 'a cutoff date is essential and . . . the matter must be terminated.'"); *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001) ("Drawing a line is essential to achieve certainty and finality in such a large class action."); *GTT*

*Commc'ns*, Order Approving Distribution of Net Settlement Fund at p.3, Dkt. No. 102, No. 1:19-cv-00982-CMH-MSN (E.D. Va. Apr. 14, 2022) (barring claims and responses received after cut-off date determined by claims administrator of securities class action settlement); *In Re Comput. Scis. Corp. Sec. Litig.*, Order Approving Distribution of Net Settlement Fund at p.2, Dkt. No. 343, 1:11-cv-00610-TSE-IDD (E.D. Va. Jun 03, 2011) (same).

### B.  Deficient and Ineligible Claims

To be eligible for a payment from the proceeds of the Settlement, Settlement Class Members must submit a Claim Form with adequate supporting documentation. *See* Preliminary Approval Order ¶15. Likewise, Settlement Class Members must evidence transactions that result in a Recognized Loss under the Court approved Plan of Allocation. *See* Notice ¶34 (ECF No. 224-3 at 91 of 129). If a Proof of Claim was determined to be deficient or ineligible, Epiq mailed a letter ("Deficiency Notice") to the claimant (in the case of paper Proofs of Claim) or sent a "Transaction Report" (in the case of electronic Proofs of Claim) describing the defect(s) or condition(s) of ineligibility of the Proof of Claim and advising what, if anything, was necessary to cure the defect(s) in the Proof of Claim. Amann Decl. ¶18. A sample Deficiency Notice is attached as Exhibit A to the Amann Declaration. *Id.* To date, Epiq has mailed 561 Deficiency Notices and sent Transaction Reports to 48 filers who submitted 6,728 deficient or ineligible electronic Claims. *Id.* ¶20.

### 1.    One Disputed Claim

Epiq received four (4) requests for Court review of the administrative determination made by Epiq. *Id.* ¶23. In an attempt to resolve the issues without the Court's intervention, Epiq contacted all of the claimants requesting Court review in order to answer their questions, explain Epiq's determination of the claim's status, and facilitate the submission of missing information or

documentation, where applicable. *Id.* As a result of these efforts, three requests for Court review were retracted or rendered moot by the curing of the deficiency. *Id.*

Therefore, only one request for Court review remains unresolved. *Id.* ¶24. The Claim Form for this Claim represents that the claimant purchased 100 shares of 2U common stock on May 23, 2018 and sold those shares on December 20, 2018, prior to any of the stock price declines used in the Plan of Allocation (the first of which occurred on May 23, 2018). *Id.* ¶25. Therefore, the Recognized Loss Amount for this claim is zero. *Id.* On January 26, 2023, Epiq mailed a Deficiency Notice to the claimant advising them of this determination, the reasons for the determination, and of their rights to dispute, cure, or seek Court review of the determination. *Id.* The claimant responded via a letter postmarked on February 2, 2023, and requested Court review of Epiq's administrative determination. *Id.* Epiq then attempted to contact this claimant by telephone, since no email address was provided. *Id.* Though Epiq left several voicemail messages at the telephone number provided by the claimant, the claimant did not respond. *Id.*

Exhibit B to the Amann Declaration consists of copies of the correspondence relating to this disputed claim, including copies of the Proof of Claim and supporting documentation, the Deficiency Notice sent by Epiq with respect to the Disputed Claim and the letters and documentation received by Epiq in response to the Deficiency Notice.

This Claim should be rejected because, under the Plan of Allocation, the Recognized Loss Amount for the Claim is zero. *Id.* ¶ 25.

### 2.    Rejected Proofs of Claim

Epiq recommends the complete rejection of 7,172 claims. *Id.* ¶33. The reasons for rejection are the following:

(a) 2,426 Proofs of Claim had no purchases or acquisitions of 2U Securities during the

Class Period;

   (b) 4,111 Proofs of Claim did not result in a Recognized Loss pursuant to the Court-approved Plan of Allocation;

   (c) 143 Proofs of Claim had uncured conditions of ineligibility;

   (d) 134 Proofs of Claim were duplicates; and

   (e) 358 Proofs of Claim were withdrawn or voided.

*Id.* A list of these claims is attached as Exhibit C-3 to the Amann Decl. *Id.* ¶ 34.

**III.   PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND**

Lead Counsel now seeks to distribute the Net Settlement Fund to the Settlement Class Members whose claims have been accepted. Consistent with the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Authorized Claimants on a pro rata basis, where distribution payments calculate to $10.00 or more. Amann Decl. ¶ 37(a); Notice (Dkt. No. 224-3 ¶45, at 94 of 129). Based on the experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel proposes that all the distribution checks bear a notation "DEPOSIT PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION." Amann Decl. ¶37(b). The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. *Id.* ¶37(b) and n.3. If, however, after six months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a redistribution. *Id.* ¶37(c)-(d). During the redistribution, any amounts remaining in the Net Settlement Fund after the initial distribution, after

payment of amounts mistakenly omitted from the initial distribution to Authorized Claimants, and after payment of Notice and Administration Costs incurred in administering the Settlement (including costs or fees of such redistribution), will be redistributed to all Authorized Claimants in the initial distribution who cashed their distribution checks and would receive at least $10.00 from the second distribution. *Id.* ¶37(d). If further re-distribution of the funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance of the Net Settlement Fund shall be distributed pursuant to a method approved by the Court. *Id.* ¶37(e); see also Stipulation ¶33 (when redistribution is determined not to be economically feasible, "any balance that still remains in the Net Settlement Fund shall be donated to a 501(c)(3) non-profit organization unaffiliated with the Parties or their counsel, and approved by the Court").

## IV.    RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Fund, the Court must bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, the Court should release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Plaintiffs or Lead Counsel in connection with the

7

administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them under the terms of the Distribution Order. *See GTT Commc'ns*, Order Approving Distribution of Net Settlement Fund at p.3, Dkt. No. 102, No. 1:19-cv-00982-CMH-MSN (E.D. Va. Apr. 14, 2022) (granting release); *In Re Comput. Scis. Corp. Sec. Litig.*, Order Approving Distribution of Net Settlement Fund at p.3, Dkt. No. 343, 1:11-cv-00610-TSE-IDD (E.D. Va. Jun 03, 2011) (same).

## V.    RECORDS RETENTION AND DESTRUCTION

The Court should order that: (i) in no less than one year after the initial distribution of the Net Settlement Fund, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation.

## CONCLUSION

Based on the foregoing, the Court should approve and enter the [Proposed] Order Granting Motion for Distribution of Class Action Settlement Funds, submitted herewith.

DATED: May 17, 2023                     Respectfully submitted,


**POMERANTZ LLP**

*By:* /s/ *Jeremy A. Lieberman*

Jeremy A. Lieberman (admitted *pro hac vice*)
Emma Gilmore (admitted *pro hac vice*)
Villi Shteyn (admitted *pro hac vice*)
Jonathan D. Park (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com

8

egilmore@pomlaw.com
vshteyn@pomlaw.com
jpark@pomlaw.com

*Counsel for Lead Plaintiff Fiyyaz Pirani and Lead Counsel for the Class*

**GOLDMAN & MINTON, P.C.**

Thomas J. Minton – No. 03370
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
Telephone: (410) 783-7575
Facsimile: (410) 783–1711
Email: tminton@charmcitylegal.com

*Counsel for Lead Plaintiff Fiyyaz Pirani*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for Lead Plaintiff Fiyyaz Pirani*

**LABATON SUCHAROW LLP**

James W. Johnson (admitted *pro hac vice*)
Michael H. Rogers (admitted *pro hac vice*)
Lara Goldstone (admitted *pro hac vice*)
James T. Christie (admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
lgoldstone@labaton.com
jchristie@labaton.com

*Counsel for Additional Named Plaintiff Oklahoma City Employee Retirement System*

9

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2023, I caused the foregoing to be electronically filed with

the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: */s/ Jeremy A. Lieberman*
Jeremy A. Lieberman